```
                  IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA


   UNITED STATES,
           Plaintiff,
                                         Sacramento, California
   vs.                                   No. 2:20-cr-00213-KJM
                                         Friday, March 26, 2021
   CHALONER SAINTILLUS,                  2:20 p.m.
           Defendant.
   _____/

                       TRANSCRIPT OF PROCEEDINGS

                              ARRAIGNMENT

        BEFORE THE HONORABLE KENDALL J. NEWMAN, MAGISTRATE JUDGE


                                ---oOo---


   APPEARANCES:

    For the Government:            U.S. ATTORNEY'S OFFICE
                                   501 I Street, Suite 10-100
                                   Sacramento, CA  95814
                                   By:  SAMUEL E. STEFANKI
                                   Assistant U.S. Attorney


    For the Defendant:             FEDERAL PUBLIC DEFENDER'S
                                   OFFICE
                                   801 I Street, Third Floor
                                   Sacramento, CA  95814
                                   By:  HANNAH ROSE LABAREE
                                   Public Defender


    Official Court Reporter:       Thresha Spencer,
                                   CSR, RPR
                                   501 I Street
                                   Sacramento, CA 95814



    *Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription*
```

1        SACRAMENTO, CALIFORNIA, Friday, March 26, 2021, 2:20 PM
2                              --o0o--
3    (In open court.)
4            THE CLERK:  Calling criminal case 20-213-KJM, United
5    States versus Chaloner Saintillus, on for arraignment and
6    initial appearance.
7            THE COURT:  Before I have appearances, Ms. Labaree,
8    do you need another moment or are you good?
9            MS. LABAREE:  That would be wonderful, yes.
10           THE COURT:  Okay.  Let us know when you're ready, and
11   then we'll recall it at that point, Alex.
12       (Pause.)
13           MS. LABAREE:  Your Honor, I think we're ready to
14   proceed.
15           THE COURT:  All right.  So let's recall it, Alex,
16   please.
17           THE CLERK:  Yes, your Honor.  Recalling criminal case
18   20-213-KJN, United States versus Chaloner Saintillus, on for
19   arraignment and initial appearance.
20           THE COURT:  And if I could have appearances for the
21   record, starting with government's counsel.
22           MR. STEFANKI:  Good afternoon, your Honor.  Sam
23   Stefanki on behalf of the United States.
24           THE COURT:  Mr. Stefanki, good afternoon.
25        And for the defendant?

1               MS. LABAREE:  Good afternoon, your Honor.  Hannah

2    Labaree for Mr. Saintillus who is present in court, in custody.

3               THE COURT:  Ms. Labaree, good afternoon again.

4    Mr. Saintillus, good afternoon.  I know some of this was

5    addressed the other day, but that was without Mr. Saintillus

6    present, so we're going to basically start from the beginning.

7        Mr. Saintillus, we are here because criminal charges have

8    been filed against you in what is known as an indictment.

9    Before we turn to those charges, you have certain rights as a

10   result.

11       First, you have the right to be represented by an attorney.

12   This includes the right to hire an attorney of your own

13   choosing, if you can afford an attorney.  But if you cannot

14   afford an attorney, one will be appointed to represent you.

15       Do I gather, Ms. Labaree, he qualifies for appointment of

16   counsel?

17              MS. LABAREE:  He does, your Honor, and we ask to be

18   appointed.

19              THE COURT:  Based upon that request and

20   representation, the financial affidavit that you have or will

21   be filling out, I find that you qualify for appointment of

22   counsel; therefore, I'm going to appoint Ms. Labaree and the

23   Office of the Federal Defenders to represent you in this

24   matter.

25       Additionally, sir, you have the right to remain silent.

1  You are not required to make any statements here today, and I
2  must caution you if you make any statements, they could be used
3  against you, not only today but in future proceedings in this
4  matter.
5      Ms. Labaree, have you had an opportunity to go over the
6  indictment with your client and would you waive a formal
7  reading?
8          MR. STEFANKI:  Yes, your Honor.  We would waive the
9  full reading.
10         THE COURT:  Thank you.  Consequently, sir, I'm not
11 going to read the entire indictment to you, but I do want to
12 advise you you are charged in count one with conspiracy to
13 distribute controlled substances in violation of Title 21,
14 United States Code Section 846 and 841(a)(1).
15    If convicted of that offense, you face a minimum of ten
16 years in prison up to a maximum of life in prison, a fine of up
17 to $10 million, a term of supervised release of at least five
18 years up to life, and a $100 special assessment.
19    You are charged in counts 2 through 5 with possession with
20 the intent to distribute controlled substances in violation of
21 Title 21, United States Code Section 841(a)(1).  If convicted
22 of any one of those offenses, the maximum possible penalty you
23 face for each offense is up 20 years in prison, a fine of up to
24 $1 million, a three-year term of supervised release, and a $100
25 special assessment.

         Additionally, the indictment has a forfeiture allegation. If you are convicted of any one of those underlying offenses, it seeks the forfeiture of anything used in furtherance of the crime or any proceeds obtained as a result of the crime.

    Did I get that right, Mr. Stefanki?

         MR. STEFANKI:  Yes, your Honor.

         THE COURT:  All right.  Ms. Labaree, does your client wish to enter a not guilty plea and demand a jury trial?

         MS. LABAREE:  Yes, your Honor.

         THE COURT:  A not guilty plea and demand for jury trial will be entered on the defendant's behalf.  And I want to take up the issue of the defendant's release or detention.  In that regard, I have received and reviewed the Pretrial Services report from Florida as well as there was a supplemental report, and then I also received another supplemental report from not that long before court began today.

    Let me just start by -- Mr. Stefanki, did you get that most recent supplemental report?

         MR. STEFANKI:  Yes, your Honor, thank you.

         THE COURT:  Ms. Labaree, did you get that most recent supplemental report?

         MS. LABAREE:  I did, yes.

         THE COURT:  Okay.  Mr. Stefanki, is the government moving for Mr. Saintillus' detention?

         MR. STEFANKI:  Yes, your Honor.  The government is

1  moving for detention for the reasons set forth in the Pretrial
2  Services report and based on the fact that this is a
3  presumption case.
4              THE COURT:  And so moving on both grounds, flight and
5  danger?
6              MR. STEFANKI:  Yes, your Honor.
7              THE COURT:  All right.  Ms. Labaree?
8              MS. LABAREE:  Yes, your Honor.  I would like to be
9  heard as to detention.  First, as to the risk of flight.
10 What's very clear from reading the report is that
11 Mr. Saintillus was born and raised in Florida.  The trip out to
12 Sacramento to face this charge -- these charges is, in fact,
13 his first trip outside of the state.  His entire family resides
14 there.  He was born in Boynton Beach and lives currently in
15 Delray, and those are very close together.
16      The residence that he proposes to release to is his
17 mother's residence, which he has lived at in the past.  This
18 was concerned by his sister, by Ms. Zepeda's conversations with
19 his sister.  He has no passport, clearly no international
20 travel.  He has no means to flee the jurisdiction, and he has
21 the support of both his mother and his twin sister.  His twin
22 sister has agreed to sign an unsecured bond.  As noted in the
23 report, it's up to $10,000.
24      I don't think this Court should take a lot of meaning from
25 the fact that she was not willing to sign a secured bond.  When

1  somebody co-owns a piece of property with another person, this
2  complicates the issues there.  She is willing to sign an
3  unsecured bond to secure his release.  So I think it does
4  collectively work to overcome the presumption in this case that
5  he is a risk of flight.
6       As to the dangerousness, looking at his criminal history,
7  it's comprised primarily of possession of marijuana.  By no
8  means is that a violent offense.  It's not possession for sale,
9  it's simply possession that does not pose a danger to the
10 community.
11      The most recent, the open cases are just that, they're
12 open.  These are unresolved charges.  The more serious of the
13 two was -- based on the conduct -- was actually only charged as
14 a misdemeanor, which is clearly not matching the conduct that
15 is written based on the police report.  So I think this Court
16 should not take much importance from the facts written in that
17 police report.
18      And, in fact, not take much import from those two charges
19 at all because they are unresolved as of yet.  This Court can
20 impose a myriad of conditions that are sufficient to mitigate
21 the dangerousness in this case if Mr. Saintillus is released.
22      That includes drug testing.  He was amenable to mental
23 health treatment and evaluation.  He has previously been
24 prescribed anxiety medication, and that was just within the
25 last year.  So mental health treatment likely would be

1  beneficial to him.  He could have a no alcohol condition based
2  on his prior DUIs.  He could also be -- an ankle monitor could
3  be imposed in this case.
4     And, in this district, we only rely on radiofrequency ankle
5  monitoring, which has the effect of only being able to track
6  somebody's movement in and out of the home.  But in many other
7  jurisdictions they rely on GPS monitoring which allows them to
8  track somebody's movement 24 hours a day.
9     So that in combination with a curfew or even a home
10 detention would sufficiently mitigate the risk in this case.
11 There could also be restrictions on his internet use, and that
12 can be enforced by certain software that's put on his phone or
13 in his computer that he has access to.
14    And I think on that I will rest.
15         THE COURT:  My view is, at this juncture, I believe
16 Mr. Saintillus needs to be detained, although you have raised
17 certain points, and that's why I don't think it is without the
18 possibility of some conditions being fashioned down the road.
19    I was struck, as you were, by the fact that when you look
20 at his criminal history, a lot of it, especially early on was
21 just marijuana-related, as you mentioned.  I'm very concerned
22 that that seems to be escalating, both in the criminal history
23 he's got charges pending as well as all the charges in this
24 case.
25    I think before I would be entertaining the package, you're

1  going to have to figure out what's happening with any of the
2  other kinds of charges and get those cleared up, but also we
3  have concerns about whether or not he's been totally
4  forthcoming with Pretrial and even family members saying that
5  he just has been -- not been in his right mind and not hanging
6  with the right people.  I don't think the bond that's being
7  proposed is sufficient.  I think there's questions about where
8  he would live, so --
9              PRETRIAL SERVICES:  Your Honor?
10             THE COURT:  I mentioned this -- I'm sorry.  Yes,
11 Ms. Zepeda from Pretrial.
12             PRETRIAL SERVICES:  Yes, good afternoon, your Honor.
13 Margarita Zepeda with Pretrial.  Your Honor, I'm sorry to
14 interrupt, I just wanted to add that just prior to the
15 defendant hearing on this matter, I did have an opportunity to
16 speak with his mother who confirmed her address and also
17 confirmed that she would be willing to have the defendant
18 reside in her home.
19    She indicated that there are no firearms in the home, as I
20 quote, "She stated that law enforcement cleaned up the house at
21 the time that the defendant was arrested."
22    She also indicated that she is willing to have location
23 monitoring equipment installed in the home should it be ordered
24 by the Court; however, I stand by our recommendation that -- we
25 would continue to recommend detention despite the presence of a

1   residential plan.

2           THE COURT:  Okay.  I appreciate that.  So that may
3   be -- may be an answer to where he would live.  But, as I say,
4   but even the sister is not just saying that, "Oh, well, I
5   co-owned this property, you know, I can't put it up without the
6   co-owners."  The sister even says she considers it a "big
7   risk," and so I don't think this is a situation which is really
8   what you want to see in a bond package where the family are
9   saying, "I'm 100 percent behind this person, I'm absolutely
10  confident this person is going to make their appearances."

11      And then the person all of a sudden, "Hey, if I don't make
12  my appearances," for lack of a better term, "I'm screwing over
13  my family members' financial situation for decades to come."

14      None of that is here, but I still also have fundamental
15  questions about Mr. Saintillus, as I say with his criminal
16  histories, failures to appear, failures to comply, and a
17  growing history, I know the presumption in this case.

18      So at this juncture I do find he should be detained as both
19  a flight risk and a danger to the community.  There is
20  currently no condition or accommodation of conditions that
21  would reasonably assure his appearance at future court
22  proceedings or the safety of the community.

23      So then we're going to set it for a status conference
24  before the assigned district judge, Judge Mueller.  Is there
25  thoughts on the timing of that initial status conference,

1  Ms. Labaree?

2          MS. LABAREE:  Your Honor, I would ask for four to
3  six weeks out.

4          THE COURT:  All right.  So any of those that are
5  available, four weeks is April 19th, April 26th, or May 3rd.
6  What would your preference be?

7          MS. LABAREE:  If we could have May 3rd, that would be
8  good.

9          THE COURT:  All right.  And, Mr. Stefanki, that's
10 agreeable with the government?

11         MR. STEFANKI:  Yes, your Honor.

12         THE COURT:  And what about discovery and time between
13 now and then, Mr. Stefanki?

14         MR. STEFANKI:  Your Honor, thank you.  The government
15 is requesting a T4 time exclusion, and the government will be
16 shortly producing a fairly substantial amount of discovery,
17 investigative reports, lab tests, returns from various legal
18 projects that have been multiple hundreds of pages of
19 documents.  And on that basis the government would request a T4
20 time exclusion for the status conference set for May 3rd.

21         THE COURT:  And, Ms. Labaree, do you join in that
22 request?

23         MS. LABAREE:  I do, your Honor, on the government's
24 representation that we will shortly be receiving discovery.

25         THE COURT:  So, Mr. Saintillus, I'm going to order

1   that your next court appearance is May 3rd at 9 a.m. before the
2   assigned district judge, Judge Mueller.  And I'm going to
3   exclude time under the Speedy Trial Act pursuant to Local Code
4   Section T4 between today's date and that date because I find
5   that your interests and the interests of justice outweigh other
6   considerations under the Speedy Trial Act, including the
7   public's right to a Speedy Trial.  Because I want to give you
8   and your counsel time to prepare your case, time to review all
9   of the discovery, but it will be up to Judge Mueller whether or
10  not to exclude time after that May 3rd date.
11       I also want to remind government's counsel of its
12  obligation to comply with *Brady* and its progeny.  And with
13  regard to discovery obligations, failure to do so could result
14  in sanctions and a written order to follow.
15       At this point, sir -- well, let me just ask an initial
16  question.  Is Mr. Saintillus shackled at all today?
17           MS. LABAREE:  He is shackled, yes.
18           THE COURT:  Fully or a lot?
19           MS. LABAREE:  He looks to be just -- yeah, fully
20  shackled, yep.
21           THE COURT:  What I'm going to do is reduce that to
22  legs only when alone, full if there are multiple defendants.
23  But please understand, Mr. Saintillus, this is dependent on you
24  being on your best behavior.  And if there are any reports,
25  whether from the marshals or the jail, that you're acting out,

1  not complying with the requirements, that can quickly, once
2  again, become fully manacled.
3      Ms. Labaree, do you wish to be heard in that regard?
4          MS. LABAREE:  No, your Honor, that's fine.  I did
5  just want to state for the record that in looking through the
6  Pretrial Services report, I don't actually see any failure to
7  appear convictions.  I do see a couple of arrests, but I don't
8  actually see any failure to appear convictions.
9          THE COURT:  No.  And as I mentioned, I just -- and
10 there's been also -- as I mentioned yesterday, there's also
11 just been some conduct as well which has not been helpful to
12 your client in terms of putting things in the best light to
13 convince a Court to release him and take a chance on him.
14     And that's why I also just give him the caution now, and
15 you may want to remind him, if you're going to be back before
16 either myself or one of my colleagues, to make sure he's on his
17 best behavior between now and then.  Fair enough.
18         MS. LABAREE:  Your Honor, sure.  I will note that
19 he's been nothing but a gentleman today in court.
20         THE COURT:  I agree.  I agree, and I want to make
21 sure that that continues into the future.
22     Mr. Stefanki, anything further?
23         MR. STEFANKI:  Thank you, your Honor.  Yes, one brief
24 point, just respectfully.  I have spoken with some members of
25 the U.S. Marshal Service, and it does not appear that he -- the

1  defendant has been a gentleman all day.  He may have been a
2  gentleman here in court, but I have received some reports he's
3  been somewhat disruptive in the hours leading up to today's
4  court appearance.
5      The government's position is, to the extent that it is
6  relevant, that this defendant should remain fully shackled
7  given his history of acting out in court, hitting a judge's
8  microphone, and the manner in which I am given to understand
9  from the marshals he's behaved thus far today.
10           THE COURT:  And as I mentioned -- and I appreciate
11 that -- and I don't mean to put the marshals in a difficult
12 spot either -- but I am going to assume and hope that
13 Mr. Saintillus is listening to me as well as he will be
14 listening to his attorney, and to realize any acting-out
15 behavior, or, again, for lack of a better term, stupid behavior
16 is going to come back to haunt you both in terms of you will
17 then be fully shackled as well as really, really hurt any
18 possibility of Ms. Labaree convincing again, either myself or
19 one of my colleagues, to let you out in the future.  So I'm
20 going to assume that he's going to take those comments to heart
21 and be on best behavior, but I appreciate the heads-up.
22      Anything else today?
23           MR. STEFANKI:  No, thank you, your Honor.
24           THE COURT:  Well, let me ask that.  The hearing on
25 May 3rd, is that something, Ms. Labaree, talking to

1  Mr. Saintillus, can you agree at this juncture, will it be
2  remote, will it need to be in person, or are you going to be
3  talking about that and let Judge Mueller know?
4          MS. LABAREE:  You know, I think at this stage it is
5  better for us to discuss it at another junction and let Judge
6  Mueller know.
7          THE COURT:  And, Mr. Saintillus, I do want to alert
8  you that in my ordering your detention today, I did not take
9  into account the fact that you requested this appearance to be
10 or required this appearance to be in person.  I know it's a
11 significant court proceeding, but again, it doesn't show a
12 great spirit of cooperation when you're the person
13 inconveniencing an awful lot of people here when everything
14 else is proceeding by Zoom, that you now have a lot of people
15 potentially putting their health at risk to comply with your
16 desires.
17    So again, if you're trying to convince either Judge Mueller
18 and myself at future court proceedings, you may want to think
19 what's in the best interests -- your best interests as well as
20 everyone else's health interests.  I just mention it, I want to
21 make clear I wasn't considering it in making my decision today.
22    Anything else, Ms. Labaree?
23          MS. LABAREE:  No, your Honor.  Thank you.
24          THE COURT:  Thank you.  Good luck to you, sir.
25          THE CLERK:  Court is adjourned.

1            (Proceedings adjourned:  2:39 p.m.)

2                           ---oOo---

3    I certify that the foregoing is a correct transcript from the

4    record of proceedings in the above-entitled matter.

5

6                             /s/ Thresha Spencer
                              THRESHA SPENCER
7                             CSR No. 11788, RPR