PHILLIP A. TALBERT
Acting United States Attorney
SAM STEFANKI
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00213-KJM |
| Plaintiff, | UNITED STATES' OPPOSITION TO MOTION FOR BAIL REVIEW PURSUANT TO 18 U.S.C. § 3142 |
| v. | |
| CHALONER SAINTILLUS, | DATE: April 23, 2021<br>TIME: 2:00 p.m.<br>COURT: Hon. Allison Claire |
| Defendant. | |

The United States of America (the "government") opposes the release of defendant Chaloner Saintillus. Saintillus used the dark web to distribute addictive and dangerous narcotics, including heroin, fentanyl, opioids, and cocaine. He sent thousands of illicit drug shipments over the course of a year. He was arrested with a firearm and thousands of rounds of ammunition in his room. He has a lengthy criminal history involving narcotics and firearms, as well as a record of antagonism toward the country's legal and judicial system. Based on these facts and on the statutory presumption against release in such cases, the United States requests that the Court detain Saintillus pending trial.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Saintillus Sold Controlled Substances on the Dark Web Thousands of Times.

Between August 2019 and August 2020, Saintillus operated a vendor account on the dark web marketplace known as Empire. Compl. ¶ 20, ECF No. 1. He advertised for sale various quantities of a menu of narcotics, including fentanyl, heroin, cocaine, and oxycodone. *Id.* Saintillus accepted digital

GOVERNMENT OPPOSITION TO MOTION FOR BAIL REVIEW

1

currency as payment for the narcotics he sold. *Id.* The Empire marketplace ceased operating in August 2020, by which point Saintillus had completed more than 1,100 sales. *Id.*

Between April and September 2020, undercover law enforcement agents purchased controlled narcotics from Saintillus no less than ten times. *Id.* ¶¶ 22–27. Saintillus accepted digital currency as payment for each of these undercover purchases. *Id.* ¶ 27. For many of these undercover purchases, surveillance cameras at a single United States Post Office in Florida—where Saintillus lives—captured him placing parcels in the mail that contained fentanyl, heroin, and oxycodone. *Id.* Saintillus used a debit card registered in his name to pay for postage to send at least four of these mailings. *Id.* ¶ 28.

**B.     Saintillus Kept Narcotics and a Firearm in His Residence.**

Law enforcement agents executed search and arrest warrants at Saintillus's residence in late October. In Saintillus's bedroom, agents located and seized oxycodone and amphetamine pills, as well as a forty-caliber Sig Sauer firearm and thousands of rounds of ammunition. Saintillus told law enforcement that the firearm belonged not to him, but to his brother. Saintillus also claimed that he had forgotten about the thousands of rounds of ammunition when he moved into his new residence.

Elsewhere in Saintillus's residence, agents located and seized crack cocaine and heroin. Agents also seized digital ledgers containing tens of thousands of dollars in digital currency.

**C.     Saintillus Disputed His True Identity and Lied During His Identity Hearing.**

Saintillus made his initial appearance on the criminal complaint in the United States District Court for the Southern District of Florida on October 28, 2020. *See* ECF No. 7 at 4. An identity hearing occurred in late November in that court. *See* ECF No. 7 at 4–5. A pretrial services report filed in connection with these hearings recommended that Saintillus be detained pending trial because he is both a flight risk and a danger to the community. The pretrial services report recounted Saintillus's lengthy criminal history, including episodes in which Saintillus was disrespectful and disruptive during a criminal proceeding, threatened to shoot and kill his mother and brother, and repeatedly fled from and resisted law enforcement.

The pretrial services report also described Saintillus's most recent prior brush with law enforcement, which occurred less than a month before his arrest in this case. On October 6, 2020, police arrested Saintillus for failing to appear for prior criminal proceedings and violating his probation. At the

GOVERNMENT OPPOSITION TO MOTION FOR BAIL REVIEW

2

time of this October 6 arrest, Saintillus possessed numerous United States Postal Service envelopes and a loaded Smith & Wesson firearm.

During his identity hearing, Saintillus disputed that he is the person named in the criminal complaint. Ex. 1 at 30.[1]  Saintillus told the court conducting the identity hearing that his true name is Shalam Ali El Bey and that he is a Moorish American. Ex. 1 at 30.  Saintillus also told the court that he sends narcotics through the mail because he suffers from two herniated disks, which requires him to mail his prescriptions to Arizona every month. Ex. 1 at 20.  Finally, Saintillus admitted that the digital ledgers recovered from his residence by law enforcement in October belong to him. Ex. 1 at 27.

### D. Saintillus Was Detained Pending Trial in the Eastern District of California.

A grand jury sitting in the Eastern District of California charged Saintillus by indictment with one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841; as well as four counts of distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1).  ECF No. 5.

Magistrate Judge Kendall Newman arraigned Saintillus on the indictment on March 26.  ECF No. 13.  The pretrial services officer recommended, and the government requested, that Saintillus be detained pending trial.  Judge Newman agreed and ordered the defendant detained as a flight risk and a danger to the community.  ECF No. 13.

## II. STATUTORY BACKGROUND

### A. There Is a Presumption Against Release in Cases Involving Certain Violations of the Controlled Substances Act.

Given the nature of the charges against Saintillus, the law presumes that no condition or combination of conditions will reasonably assure his appearance at trial nor assure the safety of the community were he to be released.  18 U.S.C. § 3142(e)(3)(A).  "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in

---

[1] Exhibit 1 consists of a certified transcript of proceedings in this case conducted in the United States District Court for the Southern District of Florida on November 20, 2020.  References to page numbers refer to the Bates stamped pages in the lower right corner of the exhibit.

GOVERNMENT OPPOSITION TO MOTION FOR BAIL REVIEW         3

§ 3142(g).'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

If a defendant proffers evidence to rebut this statutory presumption against release, a court must consider four factors in determining whether the pretrial detention standard is met: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including the defendant's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.* § 3142(g). The government bears the burden of demonstrating that a defendant is a flight risk by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The government bears the burden of showing that a defendant is a danger to the community by clear and convincing evidence. *Id.*

### III.  ARGUMENT

In this case, all factors support the presumption that Saintillus is a flight risk and a danger to the community who should not be released pending trial.

#### A.  The Nature and Circumstances of the Charged Offense Support Detention.

##### 1.  Saintillus Used the Dark Web to Sell Dangerous Narcotics and Shipped Them Through the Mail.

In the year that he operated on the Empire dark web marketplace, Saintillus consummated more than 1,100 sales. The wares he peddled were dangerous—indeed, potentially fatal—amounts of powerful narcotics. Saintillus sold to anyone who would pay him money some of the most addictive substances in existence, including heroin, opioids, and cocaine. Saintillus also sold fentanyl, which is up to 100 times more powerful than morphine and can be up to fifty times more powerful than heroin. *DEA Issues Nationwide Alert On Fentanyl As Threat To Health And Public Safety*, U.S. Drug Enforcement Admin. (Mar. 18, 2015), https://www.dea.gov/press-releases/2015/03/18/dea-issues-nationwide-alert-fentanyl-threat-health-and-public-safety. Ingesting as little as a quarter of a milligram of fentanyl can be fatal. *Id.*

///

During the relatively brief time he unknowingly dealt with law enforcement, Saintillus sold agents over forty grams of fentanyl, more than a gram of heroin, and numerous oxycodone and oxymorphone pills. The scale and effect of the narcotics distribution operation that Saintillus is charged with running weighs against his release pending trial.

### 2. Saintillus Possessed a Firearm in Connection With His Offense.

When law enforcement agents executed a search warrant at his residence in late October, they recovered a Sig Sauer firearm different from the Smith & Wesson that Saintillus was arrested with earlier that same month. In addition to the Sig Sauer, agents recovered thousands of rounds of ammunition in Saintillus's room.

Based on these facts, the Court can infer one of two things. First, Saintillus possessed more than one firearm around the same time he was illegally distributing narcotics. Or second, Saintillus acquired a new firearm in the roughly three weeks between when he was arrested by local police with a Smith & Wesson (on or around October 6, 2020) and the date he was arrested by federal agents with a Sig Sauer (on or around October 27, 2020).

Regardless of which inference is true, Saintillus's ready access to firearms, ammunition, and narcotics supports the conclusion that he would be dangerous if released. Furthermore, under the plain language of the Bail Reform Act, Saintillus's firearm possession at the time of his arrest weighs in favor of detention. *See* 18 U.S.C. § 3142(g)(1).

**B.  Saintillus's History and Characteristics Weigh in Favor of Detention.**

### 1. Saintillus's Criminal History Shows That He Should Be Detained.

Saintillus's criminal history demonstrates that he would be a danger to the community if released pending trial.

In his adult life, Saintillus has been arrested no less than twenty-one times prior to his arrest on the charges in this case. This number alone demonstrates that Saintillus is disinclined to obey the law. Based on his recidivist nature alone, Saintillus would pose a danger to any community into which he is released because his history shows that he cannot or will not conduct himself in a law-abiding manner.

Saintillus attempts to minimize his criminal history as consisting primarily of low-level marijuana offenses. *See* ECF No. 21 at 5. But the facts demonstrate that Saintillus's criminal behavior

is increasing in severity. In 2017, Saintillus was arrested for domestic violence, though no charges were filed after his victim claimed—despite a bruise on her cheek—that Saintillus never hit her. In July 2020, Saintillus pulled a gun on his own mother and brother. Saintillus threatened to kill his two family members over an argument with his brother about which man had a more active sex life. Then in October 2020, Saintillus was arrested while in possession of a firearm for failing to appear in a prior criminal case. Later that month, he was arrested on the instant federal charges after consummating more than 1,000 sales on an illicit narcotics website.

Saintillus's criminal conduct is becoming more serious and dangerous. His escalating criminal history weighs in favor of pretrial detention.

### 2. Saintillus Is a Flight Risk Because He Does Not Respect the Rule of Law.

Saintillus also poses a risk of nonappearance because his history demonstrates that he cannot be trusted to follow whatever orders the Court might impose upon his release.

First, Saintillus's checkered performance on probation shows that judicial supervision means little to him. He violated the terms of his probation in 2012, at least twice in 2016, and again in 2020. Separately, a court in Florida issued a warrant for Saintillus's arrest based on his failure to appear in a prior criminal case.

Second, in 2013, Saintillus became so disruptive and disrespectful during a judicial proceeding that the presiding judge asked him to sit in the back of the courtroom gallery. Saintillus laid down on a bench in the gallery and then refused commands to get up, and resisted attempts to remove him from the courtroom. Saintillus has not gained any respect for the judicial system as he has aged: During his identity hearing in late 2020, Saintillus repeatedly interrupted the magistrate judge and very nearly found himself held in contempt. Ex. 1 at 21.

Saintillus's behavior toward, and history with, the judicial system should give the Court pause before trusting that he will abide by any pretrial conditions. That Saintillus apparently does not respect the judicial system undermines his promises that he will abide by the Court's orders to appear for further proceedings in this case.

///

///

3.    **Saintillus's Beliefs Are Incompatible With Successful Pretrial Release.**

Furthermore, Saintillus is a self-proclaimed Moorish American (hence his use of the alias Shalam Ali El Bey). Ex. 1 at 02–03. People who identify as Moorish Americans can be akin to sovereign citizens in that they often disavow the authority of the United States' laws. *See Bey v. State*, 847 F.3d 559, 561 (7th Cir. 2017) ("Many of them argue, without any basis in fact, that as a result of eighteenth-century treaties the United States has no jurisdiction over its Moorish inhabitants . . . ."). Indeed, Saintillus stated numerous times during his identity hearing that he is a Moor named Shalam Ali El Bey, and that the identity of Chaloner Saintillus is a fictitious straw man. Ex. 1 at 02–03, 30.

Saintillus's association with the Moor belief system undermines his argument that he will follow the Court's orders and appear for further proceedings if he is released pending trial.

C.    **Saintillus's Release Plan Underscores the Danger He Poses.**

Saintillus's release plan is inadequate because it contemplates that he would reside at his mother's residence in Florida. ECF No. 21 at 2.

Less than a year ago, Saintillus threatened to kill his mother (and his brother) with a gun. This incident occurred at Saintillus's mother's residence—the very location where Saintillus asks the Court to release him.[2] A defendant who brandishes a firearm at his proposed third-party custodian is not a defendant who can be trusted to abide by the Court's pretrial rules while under that custodian's watch. Indeed, a mother-son relationship as apparently volatile as Saintillus's is not a recipe for productive third-party custodianship at all.

D.    **The Weight of the Evidence Against Saintillus Is Strong.**

While the weight of the evidence is the least important of the factors the Court must weigh in determining whether to release Saintillus pending trial, the government notes that the evidence in this case is strong. *Motamedi*, 767 F.2d at 1408. It consists of numerous undercover purchases of illegal narcotics from Saintillus that were conducted and documented by law enforcement officers online and in photographs. Analysis of Internet Protocol addresses, online usernames, financial records, text messages, and email accounts prove Saintillus to be the Empire marketplace vendor who put thousands

---

[2] This same residence was the scene of a domestic disturbance in 2017 involving Saintillus allegedly striking his girlfriend in the face.

of shipments of illegal narcotics into interstate commerce.  Officers seized drugs, firearms, and the digital proceeds of Saintillus's illicit activities in his residence.

The overwhelming weight of the evidence that Saintillus illegally distributed narcotics gives him a strong incentive to flee rather than appear for trial.  He should be detained as a result.

### IV.     CONCLUSION

The United States requests that the Court continue detaining Saintillus pending trial.  He shipped highly addictive narcotics through the dark web thousands of times.  He was arrested with narcotics, firearms, and ammunition in his residence.  He has a concerning and lengthy criminal record that includes episodes highlighting his disregard for the rule of law.  His release plan is inadequate and fails to rebut the statutory presumption that he is a flight risk and a danger to the community.

Saintillus is a poor candidate for pretrial release.  The government opposes his motion and asks that the Court deny it.

Dated:  April 22, 2021

PHILLIP A. TALBERT  
Acting United States Attorney

By:  /s/ SAM STEFANKI  
SAM STEFANKI  
Assistant United States Attorney