**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.  20-mj-08364-DLB**


**UNITED STATES OF AMERICA,**

                    Plaintiff,

        vs.

                                        West Palm Beach, Florida
                                        November 20, 2020
**CHALONER SAINTILLUS,**                 Pages 1-32

                    Defendant.
_____

                **TRANSCRIPT OF REMOVAL HEARING**
            **CONDUCTED VIA ZOOM VIDEOCONFERENCING**
            **BEFORE THE HONORABLE WILLIAM MATTHEWMAN**
                **UNITED STATES MAGISTRATE JUDGE**


**APPEARANCES:**

**FOR THE PLAINTIFF:**
                    *United States Attorney's Office*
                    **BY:  AURORA FAGAN, A.U.S.A.**
                    99 Northeast Fourth Street
                    Miami,  Florida 33132


**FOR THE DEFENDANT:**
                    *Federal Public Defender's Office*
                    **BY:  PETER BIRCH, A.F.P.D.**
                    450 South Australian Avenue
                    Suite 500
                    West Palm Beach, Florida 33401


**TRANSCRIBED BY:        DAWN M. SAVINO, R.P.R., C.R.R.**
                    **Official Federal Court Stenographer**
                    **400 N. Miami Avenue, 10S03**
                    **Miami, Florida  33128**
                    **Telephone:  305-523-5598**

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER—AIDED TRANSCRIPTION

```
1                    P-R-O-C-E-E-D-I-N-G-S
2           THE COURT:  Are we ready to go?
3           COURTROOM DEPUTY:  Yes, Judge.  Calling United States
4    of America versus Chaloner Saintillus, case number 20-8364-DLB.
5           THE COURT:  All right.  Who do we have here for the
6    United States?  Can't hear you, Ms. Fagan.
7           MS. FAGAN:  Good morning, Your Honor.  Aurora Fagan for
8    the United States.
9           THE COURT:  There you are.  All right.  So it's Ms.
10   Fagan for the United States.
11          And for the Defendant, who do we have?
12          MR. BIRCH:  Good morning, Your Honor.  Peter Birch on
13   behalf of Mr. Saintillus.
14          THE COURT:  All right.  And we have Mr. Saintillus
15   appearing here from the Palm Beach County Jail via Zoom video
16   conference.  Let's go ahead and swear him in, Ken.
17          COURTROOM DEPUTY:  Yes, Judge.  Mr. Saintillus, raise
18   your right hand.  You do solemnly swear that the testimony
19   you're about to give will be the truth, the whole truth and
20   nothing but the truth, so help you God?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  And state your name please.
23          THE DEFENDANT:  Shalam Ali El Bey, and I have power of
24   attorney of the all capital petitioner straw-man named Chaloner
25   Saintillus, and I am proclaiming my status forever Moorish
```

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

02

1    American.

2            THE COURT:  Let's -- first of all, before you go on,

3    Ken, can you ask the jail if they could adjust that camera?  All

4    I can see is the top of his head.  All right.  That's better.

5            So I think I asked you your name, Mr. Saintillus, and I

6    heard something but I didn't quite understand it.  So can you

7    tell me what your name is?

8            THE DEFENDANT:  Shalam Ali El Bey.  I have power of

9    attorney of Chaloner Saintillus which is my all-caps fictitious

10   straw-man.

11           THE COURT:  All right.  And we are here today for a

12   removal of a complaint in this case to the Eastern District of

13   California, and we're here for a detention hearing and a removal

14   hearing.

15           The first thing I'll ask, Mr. Birch, does your -- I

16   know there's a form that you filed here, consent to appear by

17   video or audio teleconference.  Does your client agree to appear

18   today by Zoom videoconference and give up his right to be

19   personally present in the courtroom today?

20           MR. BIRCH:  Based on my conversation with him earlier

21   this week, yes, Your Honor.

22           THE COURT:  Okay.  So let me ask you, sir, you have the

23   right to be personally present in the courtroom.  However,

24   because of the COVID-19 pandemic, we are handling as many of

25   these hearings as possible remotely to keep everybody safe.  Do

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

03

1    you give up your right, waive your right for today's hearing to

2    be personally present in the courtroom and agree to appear by

3    Zoom videoconference for today's hearing from the Palm Beach

4    County Jail?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Okay.  Thank you.  And also Mr. Birch has

7    signed for you on this consent to appear by video or audio

8    teleconference form.  Do you give express permission for him to

9    sign on your behalf as to consent to appear by video or audio

10   teleconference?

11             THE DEFENDANT:  Sure.  Yes.

12             THE COURT:  All right.  Thank you.  So I'll go ahead

13   and approve that at this time, and I have signed that form.

14             All right.  So now we're set for two matters today.

15   The first is a detention hearing.  Mr. Birch, how does your

16   client wish to proceed?

17             MR. BIRCH:  Your Honor, having discussed this matter

18   with Mr. Saintillus explaining to him his right to a detention

19   hearing here or in California, he has decided to reserve

20   *(unintelligible)* detention hearing.

21             THE COURT:  I'm hearing a lot of background -- hold on.

22   I'm hearing a lot of background noise.  Where is that coming

23   from?  Do we know, Ken?  If you could mute --

24             COURTROOM DEPUTY:  Maybe from the Palm Beach County

25   Jail.  I'm not positive.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

04

1          THE COURT:  All right.  Why don't you say it again,

2     Ken.  I mean -- I'm sorry.  Mr. Birch.  If you'll say what you

3     were saying again.

4          MR. BIRCH:  Yes, Your Honor.  Based upon my

5     conversations with Mr. Saintillus explaining to him his right to

6     a detention hearing either here or in California and what that

7     involves, he is at this time reserving his right to have the

8     detention hearing upon arriving in California.

9          THE COURT:  All right.  So Mr. Saintillus, let me --

10          THE DEFENDANT:  I didn't know I could have it here.

11          THE COURT:  Well, let me explain your rights, okay?

12     Then we'll discuss it.  You have a right to an identity hearing

13     to prove that you are the person that the other district is

14     seeking; in this case, the Eastern District of California.  If

15     you waive that hearing, you are not admitting guilt, you are

16     merely saying that they have not arrested the wrong person.

17          You also have a right to a bond or detention hearing in

18     this district or in the other district, which is the Eastern

19     District of California, but not in both districts.

20          You also have the right to explore resolving this case

21     in this district pursuant to Federal Rule of Criminal Procedure

22     20.  Under that rule, the case can be transferred from the other

23     district to this district, but only if you wish to plead guilty

24     and only if both the prosecutor here and the prosecutor in the

25     other district agree.  If you wish to explore that possibility,

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

05

1    you can discuss that with your attorney.

2            So the first issue is the bond or detention hearing.

3    You do have the right to have that bond or detention hearing

4    here or in the other district, but not in both.  Your attorney,

5    Mr. Birch, advises you wish to not have your detention hearing

6    here, but rather have that in the Eastern District of

7    California.  Is that correct?

8            THE DEFENDANT:  The identity hearing you're talking

9    about?

10           THE COURT:  No, no, the detention.  The bond detention

11   hearing.

12           THE DEFENDANT:  California.  Yeah.

13           THE COURT:  Okay.  So do you want to have your

14   detention hearing in the Eastern District of California?

15           THE DEFENDANT:  It doesn't matter to me.  I'll take

16   California.

17           THE COURT:  All right.  So the Defendant -- based on

18   what Mr. Birch said and what the Defendant said, the Defendant

19   is asking that his detention hearing be deferred until he

20   reaches the Eastern District of California.  So that will occur.

21           All right.  Now, we also -- what is that noise I keep

22   hearing?  Mr. Saintillus, are you making noise there or is

23   somebody behind you making noise?

24           THE DEFENDANT:  It's probably the outside.

25           THE COURT:  Is your door closed?

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

06

 1            THE DEFENDANT:  Yes.

 2            THE COURT:  All right.  I don't know what I'm hearing,

 3    but if anybody is rustling papers, please stop it because it's

 4    extremely annoying.

 5            MS. FAGAN:  Your Honor, perhaps anyone who is not on

 6    the hearing can just press their mute button.  That might solve

 7    it.

 8            THE COURT:  Yes, I think so.

 9            So now we have a removal hearing, and I explained your

10    rights to a removal.  So Mr. Birch, is your client asking for an

11    identity hearing here today?

12            MR. BIRCH:  Yes, Your Honor, he is.  And I do think he

13    wants to address the Court regarding his identity.

14            THE COURT:  All right.  So as I told you before

15    Mr. Saintillus, you have a right to an identity hearing.  We are

16    going to start that identity hearing now.  Is there something

17    you wish to tell the Court?  And again, I can only see the top

18    of your head.  So if you slouch down, I can't see you.  If you

19    want me to see you, sit up.

20            THE DEFENDANT:  Yes, I would like to proclaim my

21    nationality as well before we begin.

22            THE COURT:  What does that even mean, sir?

23            THE DEFENDANT:  Well, I am a Moor, being that I'm

24    native to Florida and the right to indigenous people, rights to

25    identify, self-identify, and my inalienable rights, E-T-C.  I do

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

07

1   own a nationality part, I proclaimed it on Palm Beach Post, Sun

2   Sentinel.  I tried several times to go in the courtroom and get

3   it recorded, but I couldn't.  But now that I'm here, I presume

4   that I can.  So I do own power of attorney to the all-capital

5   fictitious name Chaloner, which is Shalam, Saintillus.  I'm not

6   lost at sea.  I'm here today in front of you, Judge Matthewman.

7   I don't have my paperwork with me, but that's all I can say

8   right now.

9          THE COURT:  All right.  Well, it doesn't make a lot of

10  sense to me.  Sounds like a bunch of nonsense.  But if that's

11  what you wish to say, you can certainly say it.

12         Let's go ahead with the identity hearing.  Ms. Fagan,

13  do you wish to proceed with your identity hearing?

14         MS. FAGAN:  Yes, Your Honor.

15         THE COURT:  Go ahead.

16         MS. FAGAN:  So Your Honor, we have Agent Xavier

17  Martinez, he should be in the Zoom room.  Would I be able to

18  proceed by proffer?

19         THE COURT:  Well, I think we're going to need testimony

20  in this case.  Is Agent Martinez here?  If he could raise his

21  hand.

22         AGENT MARTINEZ:  Yes, Your Honor.

23         THE COURT:  All right.

24         AGENT MARTINEZ:  Good morning.

25         THE COURT:  Good morning to you.  I tell you what we'll

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

08

1    do, Ms. Fagan.  I will let you proceed by proffer, but I also

2    will want testimony from the Agent.  All right.  We can do both.

3          Ken, can you go ahead and swear in Agent Martinez

4    please?

5          COURTROOM DEPUTY:  You do solemnly swear that the

6    testimony you're about to give will be the truth, the whole

7    truth, nothing but the truth so help you God?

8          THE WITNESS:  Yes, I do.  Good morning, everybody.

9          THE COURT:  Good morning.  Could you state your name

10   please.

11         THE WITNESS:  Xavier Martinez.

12         THE COURT:  Can you spell that?

13         THE WITNESS:  X-A-V-I-E-R, M-A-R-T-I-N-E-Z.

14         THE COURT:  All right.  And where are you employed,

15   sir?

16         THE WITNESS:  Department of Homeland Security, Homeland

17   Security Investigations here in West Palm.

18         THE COURT:  All right.  So you're with Homeland

19   Security Investigations and you're an agent with HSI?

20         THE WITNESS:  That is correct, Your Honor.

21         THE COURT:  All right.  So thank you.

22         Ms. Fagan, if you want to proceed on the identity

23   hearing.

24         MS. FAGAN:  Yes, Your Honor.  And I'd ask that you take

25   judicial notice of the criminal complaint.  And just for the

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

09

1    record, Mr. Saintillus was indicted by the Eastern District of

2    California.  I can forward that indictment to the Court.

3        THE COURT:  All right.  Hold on just one second.  It

4    looks like the case number in the Eastern District of California

5    for the complaint is 2:20-MJ-0162-JDP, and I will go ahead and

6    take judicial notice of the criminal complaint and affidavit in

7    that case.  And Ken, if you could find the indictment case

8    number for me out there, I'll take judicial notice of the

9    indictment in that case.

10        MS. FAGAN:  I can give you the indictment number.  It's

11    20-CR-00213-KJM, and I can send this to Ken.

12        THE COURT:  All right.  So I'll take judicial notice as

13    well of the indictment in the Eastern District of California

14    20-CR-00213-KJM.

15        All right.  Go ahead, Ms. Fagan.

16        MS. FAGAN:  Thank you, Your Honor.  So as it states in

17    the complaint, this investigation in the Eastern District of

18    California began in April of 2020 when agents out there had

19    identified a vendor on the dark net marketplace called Empire

20    and the vendor name was C-H-L-N saint.  I'll shorten that by

21    saying chlnsaint.  They saw that this vendor, chlnsaint, was

22    offering fentanyl, carfentanyl, heroin, cocaine and a variety of

23    pharmacy pills for sale online under that moniker.  So they did

24    some open research on that chlnsaint moniker, and they actually

25    identified some open internet identities using that same

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

10

1    moniker.  They saw postal service accounts, they saw a Gmail

2    account with the same moniker.

3          The undercover in California purchased oxymorphone and

4    it was shipped out to the undercover in California.  It came

5    from -- it was mailed from Delray Beach, a Delray Beach Post

6    Office.  They then pulled the surveillance photos from the post

7    office for the mailing, and they identified the person who was

8    being mailed.  The chlnsaint moniker that had the postal service

9    account and the Gmail account actually said the real name which

10   was Chaloner Saintillus.  So seeing that it was from Delray

11   Beach, they pulled the DMV photo of Chaloner Saintillus which is

12   the Defendant's photo, and it matched the surveillance photos in

13   the kiosk that was mailing that first undercover buy packages.

14         The undercover then proceeded to buy nine more

15   purchases of drugs between April and October.  Agents were able

16   to pull post office surveillance photos for seven of those nine

17   additional mailings which show images of the Defendant mailing

18   those packages. In addition, undercover purchases one through

19   four were -- the postage was purchased with the Defendant's

20   Wells Fargo debt card, the Wells Fargo records come back to the

21   Defendant.

22         On October 6th, the Defendant was actually arrested on

23   state charges as being a felon in possession, and during that

24   arrest, he was affiliated with an address 245 Northwest 10th

25   Avenue in Delray Beach.  So on October 8th, law enforcement in

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

11

1   Florida were doing surveillance on that address in Delray Beach,

2   and they observed the Defendant entering a white BMW that is

3   registered to him, and he got into that car as a passenger.

4   There was an unknown male driving the car.  They followed that

5   car to a post office where they observed the Defendant again

6   mailing a package.  The postal service seized that package and

7   obtained a search warrant here in the Southern District of

8   Florida for that package, and it was found to contain

9   approximately seven grams of Fentanyl.  And that package had a

10  handwritten return address on that package that matched the

11  return address and the person's name for some undercover

12  packages that were mailed to the agents.

13         A search warrant was obtained for the 245 Northwest

14  10th Avenue residence in Delray Beach.  When that --

15         THE COURT:  Hold on just a second.  Ken, can you see if

16  you can mute other individuals from the jail and anybody else so

17  there's none of that noise interfering with what I hear Ms.

18  Fagan saying?

19         COURTROOM DEPUTY:  Yes, Judge.

20         MS. FAGAN:  So Your Honor, when the search warrant was

21  executed on October 27th of this year, the Defendant was

22  observed in one of the bedrooms of that home.  That home does

23  not belong to the Defendant.  There was another gentleman there

24  who was either the owner or the lessor of that home.  But in the

25  bedroom in which the Defendant was found were numerous items

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

12

with his name and identification on it.  There was a driver's --
there was a wallet with his driver's license in it, there were
credit cards bearing his name.  There were prescription pill
bottles that also bore his name.  And then he made spontaneous
statements acknowledging that that was his bedroom and asking
for personal items that were in the bedroom, including a ledger
which is actually a little electronic device on which you can
store cryptocurrency.  And it should be noted that these illicit
purchases of drugs over the Empire Market are purchased with
cryptocurrency.  Also the Defendant's BMW keys were in the
bedroom as well.  There were also two phones in the bedroom
which were searched pursuant to the search warrants, and on
those phones were pictures of the Defendant and references to a
number of his e-mail accounts.  Also references to his dark web
vendor account.  And he had admitted he was Chaloner Saintillus.

So based on these facts, the Government believes that
not only is he Chaloner Saintillus, but that he is the person
who was sending the drugs to the agents in California and also
mailing these seven grams of Fentanyl on October 8th.

THE COURT:  All right.  Now I know there's a criminal
complaint, and I have a copy of that in front of me from the
Eastern District of California in 20-0162.  I don't have a copy
of the warrant here in front of me.  Ken, is there a warrant in
the file?

COURTROOM DEPUTY:  I'll check the file right now.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

13

1     THE COURT:  And my second question while you're doing

2     that is has there been a preliminary hearing or is the

3     preliminary hearing waived until the Eastern District of

4     California takes the Defendant?

5     MR. BIRCH:  Your Honor, since Ms. Fagan mentioned that

6     an indictment has been returned, I think that, actually under

7     the rule, negates the need for a preliminary hearing.

8     THE COURT:  That is correct.  If an indictment has been

9     returned, and the case number is 20-CR-00213-KJM, then that

10    would negate the necessity for a preliminary hearing.  But I

11    just want to make sure because under the rule, it states that

12    the judge must transfer the defendant -- and I'm specifically

13    looking at Rule 5, the judge must conduct a preliminary hearing

14    if required by Rule 5.1.  Since there is an indictment, no

15    preliminary hearing is necessary.  And then it states the judge

16    must transfer the defendant to the district where the offense

17    was allegedly committed if the government produces the warrant,

18    a certified copy of the warrant, or a reliable electronic form

19    of either.  So I just want to make sure that I see a warrant, if

20    that has been produced.

21    COURTROOM DEPUTY:  Judge, we do not have a warrant.

22    THE COURT:  All right.  Ms. Fagan?

23    MS. FAGAN:  I have a warrant.  I have a warrant, Your

24    Honor, from the Eastern District of California that I can send

25    to Ken.  However, it doesn't have the back copy, it's just the

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

14

1    front of it.  But I can send this over.

2          THE COURT:  Well, as long as it is -- under the rule if

3    it is a reliable electronic form of the warrant, then it's

4    acceptable under the rule.  So I need you to -- if you have

5    that, I need you to introduce that as an exhibit and then --

6          MS. FAGAN:  Yes, Your Honor.

7          THE COURT:  And then have that filed in the docket.

8          MS. FAGAN:  Yes, Your Honor.  I am on my phone so I

9    can't share screen.

10          THE COURT:  You can always come back -- we can always

11    come back at 2:00 today on this matter if we need to do that.

12          MS. FAGAN:  Yes, Your Honor.  I just sent it to

13    Mr. Zuniga and I can file it as an exhibit, and I'm just showing

14    you on the screen the arrest warrant which matches the case

15    number for the complaint in California.

16          THE COURT:  All right.  I do see that.  That is a

17    reliable electronic form of the warrant.

18          Mr. Birch, do you have any objection for purposes of

19    this hearing to the introduction of the warrant at this removal

20    hearing?

21          MR. BIRCH:  Not for purposes of this hearing, Your

22    Honor.

23          THE COURT:  Okay.  All right.  So that will be

24    admitted, the warrant will be admitted.

25          (Government's Exhibit 1 in evidence)

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

15

1      THE COURT:  So the next issue is the judge must find

2  that the defendant is the same person named in the indictment,

3  information or warrant.  So if you want to put testimony as to

4  that from the agent, Ms. Fagan?

5      MS. FAGAN:  Yes, Your Honor.

6      THE COURT:  Let's unmute the Agent.  All right.

7                     DIRECT EXAMINATION

8  BY MS. FAGAN:

9  Q.  Agent Martinez, were you part of the Southern District of

10  Florida surveillance team that was requested to go to the

11  residence at 245 Northwest 10th Avenue on or about October 8th?

12  Was that yes?

13  A.  That is correct, yes.

14  Q.  And were you given any information regarding the individual

15  that you were looking to see if he was located at that address?

16  A.  Yes, I was.

17  Q.  And did you see an individual matching that description at

18  that address on that day?

19  A.  Yes, I did.  When I performed a drive-by in front of the

20  home you mentioned.

21  Q.  And what did you observe him doing?

22  A.  He was just outside near his vehicle with another male that

23  I didn't -- that I -- an unidentified male.

24  Q.  And when you say "his vehicle", is that the white BMW that

25  was registered to him under the Florida DMV records?

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

16

1    A.   That is correct.

2    Q.   Did you or any of your fellow agents follow that vehicle?

3    A.   Yes, we did on that day.

4    Q.   And do you recall if you heard any information from your

5    coworkers, the other surveillance team members, whether they

6    observed the Defendant in that car?

7    A.   Yes, they did.  There was a photo taken of him getting into

8    the passenger's side of that vehicle, and I also have seen a

9    photo, and you'll mention this later, but when he went to the

10   post office, there was a photo of him either getting in or out

11   of that vehicle.

12   Q.   And what was he observed doing at the post office?

13   A.   Going to the kiosk and mailing a parcel.

14   Q.   And was that parcel retrieved?

15   A.   Yes, it was.

16   Q.   To your knowledge, was a search warrant obtained to open the

17   package?

18   A.   That's correct, ma'am.

19   Q.   And to your knowledge, what was found in the package?

20   A.   I can't remember what it tested positive for, but it did

21   test positive for a controlled substance.  I'd have to look.

22   I'm not quite sure what exact -- I know that he was advertising

23   several different controlled substances, but I'm not quite sure

24   right now which one it was that tested positive.

25            THE COURT:  All right.  Hold on just a second.  I'll

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

17

1    tell you what, I have -- as I said, I'm doing three

2    naturalizations today and I have to swear in new citizens.  So

3    we're going to have to take a break now.  I will come back at

4    11:45 and we'll continue the Saintillus hearing.  And as I told

5    everybody else, we're going to go from about 11:45 until about

6    12:15, and then we're going to break until 2:00 if that helps

7    with any of your schedules.  It's just a fairly hectic day.

8            All right.  So I'll be back just as soon as I can, but

9    we can plan on -- I should be back by 11:45.  All right?  We'll

10   stand in recess.  All right.  Thank you.

11           AGENT MARTINEZ:  Yes, Your Honor.  Thank you.

12           THE COURT:  Are we ready to proceed, Ken?

13           COURTROOM DEPUTY:  Yes, Judge.

14           THE COURT:  All right.  Let's call the case again.

15           COURTROOM DEPUTY:  Recalling United States of America

16   and Chaloner Saintillus, case number 20-8634-DLB.

17           THE COURT:  All right.  So we are continuing on with

18   the removal hearing.  Go ahead, Ms. Fagan.  You were asking

19   certain questions.

20           MR. BIRCH:  Your Honor, if I may, I apologize.  Could I

21   just address the Court for one minute?

22           THE COURT:  You sure can.

23           MR. BIRCH:  I spoke with Mr. Saintillus during the

24   recess, and he told me that he does not wish to be present for

25   this hearing.  He's not waiving his identity, but he does not

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

18

1  want to be present for this hearing.  I told him you may wish to

2  hear that from him directly.

3          THE COURT:  Well, Mr. Saintillus?

4          THE DEFENDANT:  You said it backwards.

5          THE COURT:  All right.  Hold on just a second.  I'm

6  talking.  Mr. Saintillus, you have the right to be present at

7  this hearing, and if you want to say anything you can certainly

8  say anything to the Court that you want to.  If you wish to

9  advance a defense to the removal, you can certainly do that, but

10 it's in your best interest to be here.  Anything you wish to say

11 to the Court, understanding that you have the right --

12 understanding you have a right to remain silent and anything you

13 say can and will be used against you in a court of law, you have

14 the right to defend yourself here.

15         So we'll go ahead with the removal hearing and if

16 there's anything you wish to add at the appropriate time, you

17 can make whatever argument you wish against removal, and

18 Mr. Birch is here representing you.

19         All right.  Go ahead, Ms. Fagan.

20 BY MS. FAGAN:

21 Q.  Agent Martinez, you said that on October 8th when

22 Mr. Saintillus was under surveillance at the residence in Delray

23 Beach, he was observed *(unintelligible)* a package at the post

24 office?

25 A.  That is correct, ma'am.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

19

1    Q.  To your knowledge were there surveillance photos taken in

2    the post office of -- mailing the package that was later found

3    to contain fentanyl?

4    A.  Yes, there was.

5    Q.  Did you receive those photos from the case agent?

6          MS. FAGAN:  Your Honor, I'd like to submit a photograph

7    that was taken on October 8th purportedly of the person mailing

8    the package.

9          THE COURT:  All right.  That will be what, Government's

10   Exhibit 1?  Would that be correct?

11         MS. FAGAN:  Yes.  If we don't need to have the arrest

12   warrant as Exhibit 1, this can be Exhibit 1.

13         THE COURT:  All right.  So we'll make the photograph

14   Government Exhibit 1.  Any objection to that for purposes of

15   today's hearing, Mr. Birch?

16         THE DEFENDANT:  Yes.

17         THE COURT:  I'm sorry, Mr. Saintillus.  What was that?

18         THE DEFENDANT:  I was saying can I defend myself?

19         THE COURT:  Well, you have an attorney here.  I was

20   asking if there's any objection to introduction of that

21   photograph.

22         THE DEFENDANT:  I have two herniated disks.  I mail my

23   prescriptions out to Arizona every month, and that's why I'm at

24   the post office.  And the car, I'm co-owner to that car so most

25   of the belongings, the gun that was found, all of that is under

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

20

1   my brother's name and it's his, and he can be my witness and a

2   testify to all of this.

3           THE COURT:  All right.  Well, you have to understand,

4   Mr. Saintillus, today is a removal hearing.  Today is not the

5   trial.

6           THE DEFENDANT:  I'm saying no to the identity.

7           THE COURT:  Do not interrupt me when I'm talking,

8   Mr. Saintillus.  Do you understand that?  I'm going to give you

9   a warning right now.

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  That if you don't conduct yourself properly

12  at this hearing, I will hold a contempt hearing to see if you

13  should be found in contempt of court.  I don't want you

14  obstructing this hearing, okay?  If you want to say something at

15  the appropriate time, you can.  This is not a hearing about your

16  prescriptions, it's not a hearing about if you're innocent or

17  guilty, this is a hearing about whether you are the same

18  individual that was indicted and an arrest warrant was issued in

19  the Eastern District of California.  So please don't go off on

20  tangents, don't interrupt me and don't disrupt the hearing.  All

21  right?  The only issue before me right now is whether or not --

22  Mr. Birch, if you could unmute your microphone please?

23  Mr. Birch, the Government wants to introduce a photograph of the

24  Defendant.  Is there any objection for today's hearing,

25  Mr. Birch?

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

21

1    MR. BIRCH:  There's no objection, Your Honor.

2    THE COURT:  All right.  So that will be admitted as

3    Government's Exhibit 1.

4    (Government's Exhibit 1 in evidence)

5    Go ahead Ms. Fagan.

6    MS. FAGAN:  Your Honor -- hold on.

7    BY MS. FAGAN:

8    Q.  Agent Martinez, is this the photo of the individual seen

9    mailing the package on October 8th?

10   A.  That is correct, ma'am.

11   Q.  Is there anything distinctive about the tee shirt that this

12   individual was wearing on October 8th?

13   A.  That was the tee shirt I saw him wearing when I saw him

14   earlier that day when I did the drive-by I previously mentioned.

15   Q.  Did you receive other surveillance photos from an agent in

16   California regarding post office surveillance photos that were

17   taken of the individual who mailed the undercover packages to

18   the agents in California?

19   A.  Yes, I did.

20   Q.  Were one of those surveillance photos -- was the individual

21   mailing the drugs that were received by the agents in California

22   wearing the same tee shirt?

23   A.  Yes.

24   MS. FAGAN:  Your Honor, I'd like to submit another

25   photo.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

22

1          THE COURT:  All right.  For the purposes of today's

2    hearing, the removal hearing, any objection, Mr. Birch?

3          MR. BIRCH:  No, Your Honor.

4          THE DEFENDANT:  Yes.

5          THE COURT:  All right.  Mr. Saintillus, the attorney,

6    Mr. Birch, is not objecting, but Mr. Saintillus is objecting on

7    his own.  I am going to overrule Mr. Saintillus's objection.

8          What is your objection, Mr. Saintillus, just out of

9    curiosity?

10          THE DEFENDANT:  I just told you about why I'm at the

11   post office.

12          THE COURT:  All right.  That will be overruled.  The

13   Government's photograph will be admitted as exhibit --

14   Government's Exhibit 2.

15          (Government's Exhibit 2 in evidence)

16          THE COURT:  Go ahead, Ms. Fagan.

17          MS. FAGAN:  Thank you, Your Honor.

18      BY MS. FAGAN:

19   Q.  Agent Martinez, is this one of the surveillance photos that

20   the California agents sent you regarding the person mailing a

21   package of drugs to the undercover agents in California?

22   A.  Yes, ma'am.

23   Q.  And what *(unintelligible)* that package?

24   A.  I'm sorry, I couldn't hear the last portion.

25   Q.  What is significant about the tee shirt being worn by this

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

23

1   individual?

2   A.  It's the same tee shirt he was wearing on October 8th when

3   we conducted surveillance and watched him go from his home to

4   the post office, and send the package which was later found to

5   contain fentanyl.

6           THE DEFENDANT:  Objection.

7           THE COURT:  Overruled.  Go ahead, Ms. Fagan.

8       BY MS. FAGAN:

9   Q.  And Agent Martinez, did you receive other surveillance

10  photos of a person looking like the Defendant mailing the

11  packages that were received by the undercover then which were

12  found to contain drugs?

13          MS. FAGAN:  Your Honor, I'd like to proffer the last --

14  one more photo.

15          THE COURT:  All right.  I will assume that

16  Mr. Saintillus, pro se, objects to that.  I will overrule the

17  objection on those grounds and admit the photograph.

18          (Government's Exhibit 3 in evidence)

19          THE COURT:  Go ahead, Ms. Fagan.  It's Government

20  Exhibit 3.

21          MR. BIRCH:  Talking about the ledger that was tooken

22  (sic) and how much was tooken.  I day trade.

23          THE COURT:  Mr. Saintillus, don't interrupt while we're

24  doing cross-examination -- while we're doing direct examination.

25  If you want to say something later, I will let you say something

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

24

1    later, but don't interrupt this hearing.

2         Go ahead, Ms. Fagan.

3    BY MS. FAGAN:

4    Q.  Agent Martinez, is that one of the surveillance photos you

5    received from the case agent?

6    A.  Yes.

7    Q.  And who is depicted in that photo?

8    A.  Mr. Saintillus.

9    Q.  Just for clarification, you're not personally familiar with

10   Mr. Saintillus outside of this case, are you?

11   A.  No, I'm not.

12   Q.  So how is it that you know that that is Mr. Saintillus?

13   A.  Because of the information that I was provided by other law

14   enforcement.

15   Q.  Does that look like the individual who you observed at the

16   residence and who was arrested on October 27th?

17   A.  That is correct, ma'am.

18        MS. FAGAN:  I have no further questions, Your Honor.

19        THE COURT:  All right.  Mr. Birch, any questions from

20   the defense?

21        MR. BIRCH:  Briefly, Your Honor.

22                        CROSS-EXAMINATION

23   BY MR. BIRCH:

24   Q.  Good morning, Agent Martinez.

25   A.  Good morning, sir.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

25

```
1            THE DEFENDANT:  Can I say something?

2            THE COURT:  Not right now.  Mr. Birch is asking

3    questions.  If you want to say something when he's done, I will

4    let you, but go ahead Mr. Birch.

5       BY MR. BIRCH:

6    Q.  Agent Martinez, were you present when the individual

7    identified as Mr. Saintillus was arrested?

8    A.  Yes, I was.

9    Q.  And that individual you say is the same person that you

10   identified in these photographs; is that correct?  I didn't hear

11   an answer.

12   A.  Yes, that is correct.

13   Q.  Now, how many times -- this individual that you've

14   identified as Mr. Saintillus, how many times did you actually

15   observe him?

16            THE DEFENDANT:  Can I represent myself?

17            THE COURT:  No.  Mr. Saintillus, no.  Not right now.

18   Would you please -- I will let you say something in a moment.

19   Let Mr. Birch ask the questions.

20       BY MR. BIRCH:

21   Q.  How many times did you observe the person that you've

22   identified as Mr. Saintillus mail packages?

23   A.  I observed him on October 8th mailing that package, and then

24   on October 27th the day of the search warrant at his home.

25   Q.  When the search warrant was conducted, you made reference to
```

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

26

1   one of the tee shirts that he purportedly was wearing in the

2   photograph allegedly depicting him.  Was that tee shirt found

3   during the course of the search warrant?

4   A.  I do not know.  I did not search his room.

5   Q.  Okay.  But there's no doubt in your mind that the person in

6   the photographs was the same person that was arrested on October

7   27th?  I'm sorry.  I didn't hear it.

8   A.  That is correct.

9           MR. BIRCH:  That's all I have, Your Honor.

10          THE COURT:  All right.  Agent, is that the same person

11  who is appearing on video at the hearing today?

12          AGENT MARTINEZ:  Yes, Your Honor?

13          THE DEFENDANT:  Can I say something?

14          THE COURT:  Yeah, one moment.

15          Ms. Fagan, did you have any further questions for the

16  Agent?

17          MS. FAGAN:  No, Your Honor.

18          THE COURT:  All right.  Mr. Saintillus, what would you

19  like to say?

20          THE DEFENDANT:  Now, now with this agent, with the

21  ledger that was tooken, exactly how much was taken out of that

22  ledger.  And I told my public defender that I day trade.  How

23  much funds was taken out of the ledger?

24          THE COURT:  All right.  Mr. Saintillus --

25          THE DEFENDANT:  Because I had 30 to 35,000 on there.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

27

```
1          THE COURT:  Okay.  Mr. Saintillus, let me just explain
2    something to you for about the fourth time.  This is a removal
3    hearing.  The only issue here today is if you are the same
4    person that the Eastern District of California is seeking.  This
5    is not a hearing today to determine if you are guilty or
6    innocent.  You've been charged by way of a complaint and an
7    indictment.  All this is, this hearing today, is a removal
8    hearing to see if there's an appropriate warrant, to see if
9    there's a complaint or an indictment, to see if the Eastern
10   District of California is seeking you and to see if you are the
11   same person, the same individual, that the Eastern District of
12   California is seeking.  Once you go out to the Eastern District
13   of California, if I order you removed, you can make whatever
14   defense to the merits of the case that you want to do.  You can
15   go to trial, you can do whatever you want to do.  But today's
16   hearing is only about whether you are the same person that is
17   charged out in the Eastern District of California.  Do you
18   understand?
19          THE DEFENDANT:  Can I say one more thing?
20          THE COURT:  Well, do you understand that before you say
21   anything?
22          THE DEFENDANT:  Yes.
23          THE COURT:  What would you like to say that's relevant
24   to this hearing.
25          THE DEFENDANT:  Under the treaty of peace and
```

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

28

1   friendship, I am a Moor, also known as Moorish American to

2   Europeans.  I am indigenous to this land mass, and that's it.

3           THE COURT:  Okay.  Thank you.

4           THE DEFENDANT:  And I am saying no to the identity.

5           THE COURT:  All right.  I understand you are saying no

6   to the identity.

7           Any other questions you have, Ms. Fagan, for the

8   (unintelligible)?

9           MS. FAGAN:  No, Your Honor.

10          THE COURT:  Any other questions you have, Mr. Birch?

11          MR. BIRCH:  No, Your Honor.

12          THE COURT:  All right.  Thank you.

13          Now, I have received a copy of the arrest warrant in

14  case 20-MJ-0162-JDP from the Eastern District of California.  It

15  is a reliable electronic copy.  I have also received a copy of

16  the indictment from the Eastern District of California and

17  that's in case 20-CR-0213-KJM.  Both of those documents, both

18  the arrest warrant and the indictment, will be made court

19  exhibits for today's hearing, and I have reviewed those and they

20  are proffered.

21          All right.  So Ms. Fagan, anything else that you wish

22  to address on the removal hearing or any argument you wish to

23  make?

24          MS. FAGAN:  No, Your Honor.

25          THE COURT:  All right.  Mr. Birch, any argument or

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

29

1    anything you wish to address as to the removal hearing regarding

2    Mr. Saintillus?

3            MR. BIRCH:  Your Honor, very briefly.  On

4    Mr. Saintillus's behalf to make sure it's understood, he

5    obviously feels he has a defense to the charge itself, but we

6    are not pursuing that today.  Hopefully it will be pursued in

7    California.

8            As to the issue of removal, or -- excuse me identity,

9    he takes the position that he is not the person charged in the

10    complaint and he objects to the identity, and I will just leave

11    it to the Court's discretion.

12            THE COURT:  All right.  Thank you.

13            Mr. Saintillus, anything you want to say?

14            THE DEFENDANT:  I am Shalam Ali El Bey.  I am power of

15    attorney to my straw-man fictitious all-capital name, and I am a

16    Moor, which to you guys would be a Moorish American.  I am

17    indigenous to this land mass, a native to Florida.

18            And the ledger, I want to know how much was taken out

19    because they said -- I don't know.  I'm not going to say

20    nothing.  I plead that.  I plead the 5th to that.  But I know

21    exactly that I had 30 to 35,000 on there, and I day trade.

22            And as far as me going to the post office, I have a

23    herniated disk, I have two, and I've been going to my pharmacies

24    which is Walgreens, Alliance Rx in Arizona which I ship it to.

25            And that's that.

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

30

1          THE COURT:  All right.  Thank you.

2          So pursuant to Rule 5 *(unintelligible)* Federal Rule of

3     Criminal Procedure 5C3B, it states that the magistrate judge

4     must transfer the defendant to the district where the offense

5     was allegedly committed if, number one, the government produces

6     the warrant, the certified copy of the warrant, or a reliable

7     electronic form of either.  That warrant has been produced and

8     it is filed in this case.

9          Two, the judge finds that the defendant is the same

10    person named in the indictment, information or warrant.  I do

11    find that this Defendant here, Mr. Saintillus, is the same

12    person named in the warrant in the Eastern District of

13    California.  So at this time, what I am going to do is I am

14    going to sign a warrant of removal, and I am going to order that

15    the Defendant be removed to the Eastern District of California.

16    I'm signing that at this time.  The Marshal will remove the

17    Defendant to the Eastern District of California.  His bond and

18    detention hearing will be held out there, and all further

19    hearings will be held out in the Eastern District of California.

20         This hearing is concluded.  Let's go to the next

21    matter.

22         MS. FAGAN:  Thank you.  Have a good day.

23         MR. BIRCH:  Thank you, Your Honor.

24         THE COURT:  Thank you.

25         (PROCEEDINGS CONCLUDED)

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

31

1                          * * * * *

2                  **C E R T I F I C A T E**
   I certify that the foregoing is a correct transcript from the
3  digital audio recording of proceedings in the above-entitled
   matter.

4

5  4/9/2021_____        /s/ Dawn M. Savino, R.P.R., C.R.R.
   Date                   DAWN M. SAVINO, R.P.R., C.R.R.

6

7

8                       **I N D E X**

9                       **WITNESSES**

10 ALL WITNESSES:                               PAGE:

11 For Government:

12   Xavier Martinez:
       Direct Examination by Ms. Fagan        16:7
13     Cross-Examination by Mr. Birch          25:22

14                       **EXHIBITS**

15 NO.:     DESCRIPTION:                        PAGE:

16 For Government:

17 1        :
            In Evidence                        22:4
18
   2        :
19          In Evidence                        23:15

20 3        :
            In Evidence                        24:18
21

22

23

24

25

PROCEEDINGS RECORDED BY ZOOM VIDEOCONFERENCING
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

32