```
                IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF CALIFORNIA


  United States of America,
        Plaintiff,

  vs.                                Sacramento, California
                                     No. 2:20-cr-00213
  Chaloner Saintillus,               Tue., May 04, 2021
        Defendant.                   2:50 p.m.
  _____/

                   TRANSCRIPT OF HEARING VIA ZOOM
       BEFORE THE HONORABLE DEBORAH BARNES, MAGISTRATE JUDGE
                           ---oOo---


  APPEARANCES:

   For the Plaintiff:             United States Attorney
                                  501 I Street, Suite 10-100
                                  Sacramento, California  95814
                                  By:  Samuel E. Stefanki
                                  Assistant U.S. Attorney


   For the Defendant:             Office of the Federal
                                  Defender
                                  801 I Street, 3rd Floor
                                  Sacramento, California  95814
                                  By: Hootan Baigmohammadi
                                  Mia Crager
                                  Assistants Federal Defender


   Official Court Reporter:       Kimberly M. Bennett,
                                  CSR, RPR, RMR, CRR
                                  501 I Street
                                  Sacramento, CA 95814



  Proceedings recorded by mechanical stenography, transcript
  produced by computer-aided transcription
```

1         (Court called to order, 2:50 p.m.)
2              THE CLERK:  Calling case 20-00213-KJM; United States
3    versus Chaloner Saintillus.
4       Your Honor, this matter is on calendar for defendant's
5    motion for bail review.
6              THE COURT:  Thank you, Pete.
7       Appearance for the government, please.
8              MR. STEFANK:  Good afternoon, Your Honor.  Sam
9    Stefanki on behalf of the United States.  And the government
10   consents to conduct today's hearing via Zoom.
11             THE COURT:  Thank you.  And for the defense.
12             MR. BAIGMOHAMMADI:  Good afternoon, Your Honor.
13   Hootan Baigmohammadi and Mia Crager from the Federal Defender's
14   Office on behalf of Mr. Saintillus.  And we consent to appear
15   by Zoom today.
16             THE COURT:  All right.  And who will be speaking
17   primarily for the defendant?
18             MR. BAIGMOHAMMADI:  I will, Your Honor.
19             THE COURT:  All right.  Can you pronounce your last
20   name for me one more time.
21             MR. BAIGMOHAMMADI:  Sure.  It's Baigmohammadi.
22             THE COURT:  Baigmohammadi.  Thank you.
23             MR. BAIGMOHAMMADI:  Got it.
24             THE COURT:  I will also note for the record that
25   Mr. Saintillus is present in court via the Zoom platform.  I

1  will also note that he seems to be resting his head on the
2  table in front of him.
3      I will also note that I have reviewed the transcript from
4  at least one prior court appearance, and that seems to be the
5  manner in which Mr. Saintillus appeared during court at that
6  appearance as well.
7      So I think we're -- unless the defense has an objection, or
8  the government has a concern, that is how we're going to
9  proceed.
10     Mr. Stefanki.
11         MR. STEFANK:  No, Your Honor.  It -- the only thing
12 I'd ask is maybe if the courtroom deputy can confirm that he
13 can hear and see you on behalf of Mr. Saintillus.
14         THE COURT:  All right.  Courtroom deputy, can you
15 hear and see us, assuming Mr. Saintillus won't respond?
16         JAIL STAFF:  Yes, Your Honor, we can see and hear you
17 clearly.
18         THE COURT:  All right.  Thank you, sir.
19         JAIL STAFF:  He's also --
20         THE COURT REPORTER:  I didn't understand.  I didn't
21 hear that.
22         THE COURT:  I know you couldn't hear him.  Give me
23 just a second.
24     Did Mr. Saintillus say something?
25         JAIL STAFF:  No, Your Honor, that was my partner.  He

1  was just making reference that Mr. Saintillus has his eyes
2  closed while he --
3              THE COURT: All right. Thank you. Thank you.
4       All right. Any objection to us proceeding,
5  Mr. Baigmohammadi?
6              MR. BAIGMOHAMMADI: No, Your Honor, not today.
7              THE COURT: All right. Mr. Saintillus, I'm going to
8  go over your rights with you before we get to the bail review
9  hearing that is on calendar today.
10      Sir, you have the right to an attorney. If you cannot
11 afford an attorney, the Court will appoint one for you. It's
12 obvious that the Court has already -- you've already been
13 appointed both Mr. Baigmohammadi and Ms. Crager to represent
14 you, they're both from the Federal Defender's Office, and I
15 understand that that was confirmed this week -- yesterday
16 morning before District Judge Mueller.
17      Is that correct, Mr. Baigmohammadi?
18             MR. BAIGMOHAMMADI: Yes, Your Honor.
19             THE COURT: All right. So, sir, since --
20 Mr. Saintillus, since you do have court-appointed counsel, I
21 would suggest you let them speak for you, that's because you
22 have the right to remain silent, and anything you say in this
23 proceeding could be used against you in a future proceeding.
24      All right. The Court is in receipt of a supplemental
25 pretrial services report. And I've also had an opportunity

1   over the last two days to look at the prior reports.  And like
2   I said, I did look at a transcript from a prior proceeding.
3       Mr. Stefanki, have you received the April 23, 2021 report?
4       Ms. Sepeda, is that the most current report?
5             PRETRIAL SERVICES OFFICER:  Good afternoon, Your
6   Honor.  Yes, that's the most current report.
7             THE COURT:  All right.  So, Mr. Stefanki, have you
8   received that April report?  And if so, what is the
9   government's position on the bail review at this time?
10            MR. STEFANK:  I have received that report, Your
11  Honor, thank you.  And for the reasons set forth in that report
12  and in the government's written opposition, the government does
13  believe that detention is appropriate in this case on both
14  prongs of the detention analysis.
15            THE COURT:  All right.  Thank you.
16     All right.  Mr. Baigmohammadi, have you received a copy of
17  the April 23rd report, and have you had an opportunity to go
18  over it with your client?
19            MR. BAIGMOHAMMADI:  I have received a copy of the
20  report, Your Honor.  But --
21            THE COURT:  And I have to -- I just don't see a
22  sufficient change of circumstances here to warrant releasing
23  Mr. Saintillus.  I'm -- I have to concur with the reasonings
24  given in the pretrial services report.
25     With that said, do you wish to address the Court at this

1  time, sir?

2           MR. BAIGMOHAMMADI:  Yes, please, Your Honor.

3      So, I'll try and go right to the heart of the issue and

4  address the concerns.

5      So, some of the major concerns, the first one I saw was

6  a -- you know, a concern about family support, and whether

7  Mr. Saintillus had the support of his family.  And that was

8  largely based upon, you know, statements made by his sister to

9  the pretrial officer originally.  And as we've clarified with

10 his sister, a lot of her statements were based upon the instant

11 allegations, and also just misunderstandings that she had.

12     The strength, I think, of Mr. Saintillus' family support is

13 evidenced by the fact that she, the sister, Ms. Morgan, is

14 willing to sign an unsecured bond in the amount of $30,000 on

15 his behalf.  That would be nearly half of her yearly income.  I

16 think that speaks to the fact that she does support her brother

17 strongly.

18     The additional thing that I think is evidence of her -- of

19 family support is that the mother -- his mother,

20 Mr. Saintillus' mother, is willing to have Mr. Saintillus live

21 in her home.  As she mentioned to pretrial services, this is a

22 three-bedroom home, mother is okay with location monitoring,

23 and there are no guns there.

24     And that kind of segues into another concern that was

25 brought up by pretrial, and I believe -- I'm sure the Court has

1   a concern about, which is these past incidents -- alleged
2   incidents at the mother's home.
3      You know, the incidents are just that, they're allegations.
4   You know, the alleged 2017 incident with the girlfriend was a
5   no file, there was no charge as a result of that.  The 2020
6   incident that alleges a physical altercation with a brother was
7   charged down to a pending misdemeanor resisting arrest.  And
8   the 2020 felon in possession case is also pending.
9      You know, I think that the biggest factor here weighing
10  against the idea that Mr. Saintillus was out of control at his
11  mother's house is that she's welcoming him back into the home.
12  That seems inconsistent with somebody who doesn't believe that
13  their son can control themselves in the home.
14     I think the other major concern that I'm imagining the
15  Court has that's mentioned in the reports is Mr. Saintillus'
16  past conduct in the court and under supervision.
17     The government points to this 2013 incident in court.
18  That's also alleged.  I mean, this incident occurred eight
19  years ago allegedly.  The dated nature of -- respectfully, I
20  believe the dated nature of the incident shouldn't be given
21  much weight.
22     You know, there is the identity hearing -- the past
23  identity hearing, which the Court has mentioned that it's --
24  already.  You know, the truth of the matter is, Mr. Saintillus
25  is upset about being charged in this case, he believes that

1  he's innocent, and he spoke up about it.  I don't respectfully
2  believe that a person's response to criminal charges is
3  indicative of how seriously they would take being out on bond
4  unnecessarily.
5     The fact that Mr. Saintillus is upset about the case itself
6  doesn't speak to his respect for his sister, that he loves his
7  sister, and that he wouldn't want to hurt her if she signed,
8  you know, a $30,000 bond on his behalf.  This is not just a
9  sister, it's his twin sister, and so he's -- he is very close
10 to her.  He does speak to his mother and sister almost on a
11 daily basis.  And I've had a chance to speak with the sister,
12 and she does support him very much.
13    The other concern I think that the Court would have is
14 there are some failures to appear and probation violations.  I
15 would note that though the -- the priors that are the
16 predicates that underlie those incidents are for misdemeanors,
17 where generally defendants are not actively supervised.  And
18 here we would -- if the Court were to allow Mr. Saintillus out
19 on bond, he would be under active supervision with strict
20 conditions, and that would be different than what has happened
21 in the past.
22    We are proposing mental health treatment if necessary.  We
23 are proposing a curfew or location monitoring.  We are
24 proposing an alcohol restriction, drug testing and treatment.
25 These are all conditions that can address the concerns the

1  Court has in this case.
2      You know, in addition, I think all those -- that addresses
3  all of the concerns about flight.
4      You know, when it comes to whether Mr. Saintillus is a
5  danger to the community, I don't believe the government can
6  meet its burden --
7           THE COURT:  Wait.  Wait.  Wait.  This is a
8  presumption case, is it not, counsel?
9           MR. BAIGMOHAMMADI:  Yes.  But the presumption does --
10 you know, does not mean that the Court automatically meets its
11 burden -- I'm sorry, that the government meets its burden.
12     It is presumed that he is a flight risk, but, you know, we
13 present evidence to rebut that then that burden can be
14 overcome.
15          THE COURT:  Right.  But that's your burden to
16 overcome, not the government's burden to overcome, correct,
17 counsel?
18          MR. BAIGMOHAMMADI:  It is the government's burden to
19 establish by clear and convincing evidence that Mr. Saintillus
20 is a danger, and we have a burden of just producing evidence
21 that he is not a danger, but the government still must meet its
22 burden.
23          THE COURT:  I guess we view the word presumption
24 maybe a little differently.
25     Perhaps, counsel -- I have to say, the main change of

1   circumstance from prior bail hearings for your client has been
2   the -- the $30,000 unsecured bond signed by the sister.  Is
3   that correct?
4           MR. BAIGMOHAMMADI:  That is the main change, Your
5   Honor.
6           THE COURT:  Right.  Everything -- counsel, I --
7   you've done a laudatory job in making your arguments on behalf
8   of your client.  I hope he does realize that he has very
9   experienced and very competent counsel representing him.  But
10  with that said, I'm going to find that the change of
11  circumstance is not sufficient for me to release
12  Mr. Saintillus, and for that -- for the reasons stated in the
13  pretrial services report and the prior reports that have come
14  to this Court's attention, I'm going to deny the motion for
15  bail review.
16     I believe that concludes our business here today.  Is there
17  anything else, Mr. Stefanki?
18          MR. STEFANK:  No, Your Honor.  Thank you.
19          THE COURT:  Mr. -- don't tell -- don't --
20  Mr. Baigmohammadi, is there anything else?
21          MR. BAIGMOHAMMADI:  Not today, Your Honor.
22          THE COURT:  All right.  Thank you.  Thank you.
23          THE CLERK:  Court is in recess.
24              (Proceedings adjourned, 3:02 p.m.)
25                         ---oOo---

1  I certify that the foregoing is a correct transcript from the

2  record of proceedings in the above-entitled matter.

3

4                            /s/ Kimberly M. Bennett
                             KIMBERLY M. BENNETT
5                            CSR No. 8953, RPR, CRR, RMR