UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:20-cr-00213-KJM |
| Plaintiff, | ORDER |
| v. | |
| Chaloner Saintillus, | |
| Defendant. | |

This matter is before the court on several motions and requests by defendant Chaloner Saintillus, also known as Shalam C. Saintillus Bey and Shalam Ali El Bey.[1]  As explained in this order, the court **denies his motions and requests**. Based on his frequent disruptive behavior in the courtroom, the court also reconsiders its decision allowing Mr. Bey to represent himself in this matter and **terminates his self-representation**.

I.   BACKGROUND

According to the criminal complaint in this case Mr. Bey sold opioids and other controlled substances to buyers on the darknet and shipped the drugs in the mail.  See Bauwens Aff. ¶¶ 20–30, ECF No. 1.  He was indicted for possessing and distributing controlled substances under 21 U.S.C. §§ 841(a)(1) and 846.  See generally Indictment, ECF No. 5.  Before his arraignment

---

[1] Mr. Saintillus has previously requested to be addressed as Mr. Bey, see Tr. (June 16, 2021) at 3, ECF No. 32, so the court uses that name in this order.

1

and initial appearance, he filed a pro se motion to dismiss the complaint. ECF No. 8. He argued that the filing of a sealed complaint deprived him of the opportunity to defend himself in violation of his constitutional rights, and also that he had been denied due process and his right to a speedy trial. *See generally id.*

Later the next month, Mr. Bey refused to leave his cell for his arraignment and initial appearance, which was conducted by videoconference in light of this court's general orders and the ongoing coronavirus pandemic. Mins., ECF No. 10; Tr. (Mar. 24, 2021), ECF No. 31. At the hearing, a Magistrate Judge appointed Assistant Federal Defender Hannah Labaree to represent Mr. Bey and set two further hearings: a videoconference hearing the next day and, as a backstop in case Mr. Saintillus again refused to appear by video, a hearing in person two days later. Tr. (Mar. 24, 2021) at 4–6. Mr. Bey refused to appear by video again the next day, Mins., ECF No. 12; Tr. (Mar. 25, 2021) at 3, ECF No. 37, so the Magistrate Judge continued the arraignment and held a hearing in person, which Mr. Bey attended, Mins., ECF No. 13; Arraignment Tr. (Mar. 26, 2021), ECF No. 19. The government argued Mr. Bey should be shackled because he had been disruptive before the hearing. Arraignment Tr. at 14. In addition, according to the pretrial report, in previous proceedings in other courts he had hit a judge's microphone, had lain down, and had refused to leave when instructed. *See* Tr. (Mar. 25, 2021) at 3. The Magistrate Judge in this court warned Mr. Bey against disrupting court proceedings but did not order him to be shackled. Arraignment Tr. at 14. The Magistrate Judge then confirmed Ms. Labaree's appointment, *id.* at 3, took Mr. Bey's not-guilty plea, *id.* at 5, and granted the government's request to detain him given the risk he would flee and be a danger to the community. *Id.* at 5–12.

Soon after Mr. Bey's arraignment and initial appearance, Assistant Federal Defenders Mia Crager and Hootan Baigmohammadi took Ms. Labaree's place as counsel for Mr. Bey, and they moved for bail review on his behalf. *See* Designations for Service, ECF Nos. 20, 23; Mot. Bail Review, ECF No. 21. Before the hearing on that motion, however, Mr. Bey told Ms. Crager and Mr. Baigmohammadi he wanted to represent himself. *See* Tr. (Apr. 23, 2021) at 3–5, ECF No. 38. During the hearing, he advanced arguments based on a claim that he was not a U.S. citizen, but rather "a Moor of America." *See id.* at 4–6. He spoke over and interrupted the Magistrate

Judge, and he attempted to leave the videoconference hearing; officers had to restrain him to prevent him from doing so. *See id.* at 6–8. The Magistrate Judge continued the bail review hearing to a new date and scheduled a *Faretta* hearing to coincide with the upcoming status conference before the undersigned. *See id.* at 7; *see also Faretta v. California*, 422 U.S. 806, 835–36 (1975).

The status conference proceeded by video as scheduled. Mr. Bey was again represented by Ms. Crager and Mr. Baigmohammadi. *See* Mins., ECF No. 25; Tr. (May 3, 2021), ECF No. 34. They informed the court that Mr. Bey had reconsidered his request to represent himself. Tr. (May 3, 2021) at 3. They asked the court not to rule on Mr. Bey's pending pro se motion to dismiss before they could discuss it with him. *Id.* at 4. The court set a further status conference and excluded time under the Speedy Trial Act to permit the defense to review discovery material from the United States. *See id.* at 4–7.

The next day, a Magistrate Judge held a videoconference hearing on Mr. Bey's motion for bail review. Mins., ECF No. 26; Tr. (May 4, 2021), ECF No. 36. Mr. Bey appeared by zoom from the jail. Tr. (June 24, 2021) at 3. At one point, he "seem[ed] to be resting his head on the table in front of him," his eyes were closed, and he did not respond to the court's questions. *See id.* at 2–4. The Magistrate Judge denied the motion for bail review after hearing arguments from counsel. *See id.* at 10.

Soon before the next status conference, defense counsel informed the court that Mr. Bey had again asked to represent himself. *See* Request, ECF No. 27. Counsel asked the court to specially set a status conference in person to address "issues related to 18 U.S.C. § 4241" and Mr. Bey's representation. *See id.* Section 4241 permits the defense or the government to "file a motion for a hearing to determine the mental competency of the defendant." 18 U.S.C. § 4241(a).

The court held a status conference in person as requested. *See* Mins., ECF No. 29; Tr. (June 16, 2021), ECF No. 32. Ms. Crager represented Mr. Bey again at the hearing, though Mr. Bey believed he was proceeding pro se. *See* Tr. (June 16, 2021) at 2. Despite instructions not to speak unless he was called upon, Mr. Bey constantly interrupted his own counsel, the Assistant United States Attorney, and the court. His interruptions were so intrusive that Ms. Crager could

1  not explain her concerns about his competency. *See id.* at 9–10.  The court terminated the hearing
2  prematurely and directed Ms. Crager to explain her concerns in a declaration, which she did later
3  that day:

> After several meetings with Mr. Bey, I have become concerned that he is unable to assist me with his defense in regards to his federal criminal case, as set forth in 18 U.S.C. § 4241(a).  I have been able to speak with Mr. Bey about a number of other matters that do not relate to his federal criminal case, but I am concerned that he does not understand the nature of the current proceeding in federal criminal court and that he is not able to properly assist.  As a result, I have been unable to make any progress in his defense.

Crager Decl. ¶ 3, ECF No. 30.  Ms. Crager also cited the court's authority "to make its own motion as to competency under section 4241(a)." *Id.* ¶ 4.

After reviewing Ms. Crager's declaration and seeing Mr. Bey's behavior in the status conference, the court ordered him to submit to a competency examination under 18 U.S.C. § 4241(b).  *See* Orders, ECF Nos. 35, 40.  While the examination was ongoing, Ms. Crager moved to withdraw as counsel based on "fundamental disagreements about case strategy" and Mr. Bey's request to proceed pro se.  *See* Notice, ECF No. 49.

The Bureau of Prisons completed a forensic evaluation in November 2021.  *See* Forensic Eval., ECF No. 67 (under seal).  The evaluators did not find evidence of a major mental disorder that would "impair [Mr. Bey's] present ability to understand the nature and consequences of the court proceedings against him, or his ability to properly assist counsel in his defense or to represent himself." *Id.* at 14.  He offered "relevant and meaningful information" about "both historical data and legal matters." *Id.* at 14–15.  Although he was "reluctant to respond" to questions about his competency, "he provided appropriate responses to the questions posed." *Id.* at 15.  Rather than evidence of a mental illness, evaluators believed Mr. Bey's odd statements and behavior were "consistent with several anti-government organizations" and with "sovereign citizen ideology." *Id.*  "His actions [were] suggestive of a deliberate attempt to evade criminal prosecution," and evaluators believed he "will most likely continue to engage in Moorish American sovereign behavior to avoid prosecution and/or sentencing." *Id.*

4

After the report was complete, the court held a status conference in person and asked Mr. Bey about his request to represent himself. *See* Mins., ECF No. 69. Although Mr. Bey's responses to the court's questions were frequently irrelevant and nonsensical, his behavior and answers confirmed the evaluators' assessment: he was acting knowingly and intelligently and wanted to present his own defense without an attorney. The court relieved Ms. Crager and Mr. Baigmohammadi as his counsel. *See id.* The court set a status conference for the next month and permitted Mr. Bey to supplement his pending motion to dismiss. *See id.*; Order, ECF No. 78.

During the next few weeks, Mr. Bey filed fifteen motions, notices, and other documents.[2] These documents are difficult to understand. Many include cryptic symbols, oddly juxtaposed legal terms and titles, and repeated references to tenets of a Moorish American belief system. *See, e.g.*, ECF No. 71; *see also, e.g.*, *Bey v. State*, 847 F.3d 559, 559–61 (7th Cir. 2017) (describing this belief system and its origins); *Gravatt v. United States*, 100 Fed. Cl. 279, 282–83 (2011) (same). Among other claims, Mr. Bey contests this court's jurisdiction to hear the criminal charges against him, *see, e.g.*, ECF No. 94, accuses a Magistrate Judge of "Perverting the course of Justice" and "Conspiracy to Defraud" by using an electronic signature, ECF No. 72 at 2–3, requests "to provide the court the ability to Balance its Books and close this Matter in its entirety," ECF No. 73 at 1, and asks the court to return cryptocurrency and an identity card he claims the government has seized, ECF No. 79 at 4. He also names the Assistant United States

---

[2] *See generally* "Notice of: Age of Majority Status (claiming Equity)" (Jan. 14, 2022), ECF No. 71; "Notice of Complaint/Demand of Binding Arbitration" (Jan. 14, 2022), ECF No. 72; "Averment of Jurisdiction 'Challenging Jurisdiction and Status'" (Jan. 21, 2022), ECF No. 73; "Motion for Dismissal" (Jan. 21, 2022), ECF No. 74; "Averment of Jurisdiction" (Jan. 31, 2022) ECF No. 77; "Affidavit Reservation of Rights" (Feb. 9, 2022), ECF No. 79; An untitled letter to a relief Courtroom Deputy (Feb. 14, 2022), ECF No. 81; "Motion: to Compel / Notice of Default" (Feb. 17, 2022), ECF No. 84; "Last Minute Brief Response LOL" (Feb. 22, 2022), ECF No. 86; "Appointment!" (Feb. 22, 2022), ECF No. 87; "Bill of Complaint in Equity Presentment to Void Proceedings and Jurisdiction" (Feb. 22, 2022), ECF No. 88; "Notice of Extention [sic] to Brief Opposition" (Feb. 24, 2022), ECF No. 89; "*Age of Majority* Expressing the Trust Secured Party Creditor and Entitlement Holder" (Feb. 25, 2022), ECF No. 93; "Challenging Proper STATUS And Jurisdiction In Personam (Personal Jurisdiction over The Proper STATUS)" (Feb. 25, 2022), ECF No. 94; "*Motion: Challenging 'In Personam' Personal Jurisdiction over Proper STATUS*" (Feb. 25, 2022), ECF No. 95.

1  Attorney and Ms. Crager as defendants or respondents.  *See, e.g.*, ECF No. 77 at 1.  The United

2  States opposed these motions.  *See* Opp'ns, ECF Nos. 80, 83.

3        At the next status conference, Mr. Bey's disruptive behavior and constant interruptions

4  prompted the court to remove him from the courtroom and delay the matter until the other matters

5  scheduled for that day had been addressed.  *See* Mins., ECF No. 90; Tr. (Feb. 28, 2022) at 2–4.

6  The court warned Mr. Bey twice that if he continued to be disruptive, the court would reconsider

7  its decision to permit him to represent himself.  *See, e.g.*, Tr. (Feb. 28, 2022) at 3, 4.  When his

8  case was called again, he continuously attempted to speak over the court and the prosecutor

9  despite many directions to wait to be called on.  *See id.* at 5–9.  The court again had no choice but

10  to terminate the hearing prematurely after setting a briefing schedule for Mr. Bey's many filings

11  and a further status conference.  *See id.*

12        In the interim, Mr. Bey has continued to file a raft of similar notices, motions, and other

13  documents.[3]  The government has opposed them.  *See generally* ECF Nos. 102, 111, 120.

14  Mr. Bey has also threatened the undersigned with litigation in documents he attempted to file

15  under seal.  *See* Order (Mar. 28, 2022), ECF No. 105.

16  **II.    DISMISSAL, SPEEDY TRIAL, BAIL, AND RETURN OF PROPERTY**

17        The court considers first Mr. Bey's many motions and requests.  His arguments for

18  dismissal are largely nonsensical.  He is neither sovereign nor immune from federal criminal

19  liability.  *See, e.g.*, *Bey*, 847 F.3d at 561; *United States v. Boone*, No. 16-0020, 2021 WL 84398,

20  at *2–3 (E.D. Cal. Jan. 11, 2021), *report and recommendation adopted*, 2021 WL 1297557 (E.D.

---

[3] *See* Mins., ECF No. 90; "Enduring Power of Attorney" and "Bill of Complaint in Equity Presentment to Void Proceedings and Jurisdiction" (Feb. 28, 2022), ECF No. 92; "Motion: Motion for Dismissal: Equitable Estoppel By acquiescence, Estoppel by Deed, Void Judgment Ab Nitio" (Feb. 28, 2022), ECF No. 96; "Moorish-Haitian American NATION" (Feb. 28, 2022), ECF No. 97; "Motion: Challenging: In Personam Personal Jurisdiction of the Proper-STATUS or Judgment is void ab Nitio" (Feb. 28, 2022), ECF No. 98; "Notice on Term of Trust" (Mar. 7, 022), Motion (Mar. 10, 2022), ECF No. 99; "Motion Challenging 'IN Personam' Personal Jurisdiction over 'My Proper STATUS AND 'EXPRessing The Trust" (Special Deposit) (Mar. 14, 2022), ECF No. 100; Motion to Compel (Mar. 14, 2022), ECF No. 101; "Motion for IN CAMERA Sitting IN Equity with Judge" (Mar. 31, 2022), ECF No. 108; Motion to Compel (Apr. 28, 2022), ECF No. 109; Notice (May 12, 2022), ECF No. 113; Notice (May 12, 2022), ECF No. 114; Notice (May 12, 2022), ECF No. 115; Motion to Dismiss (May 12, 2022), ECF No. 116; Letter/Notice (May 13, 2022), ECF No. 117; Reply (May 23, 2022), ECF No. 121.

1 Cal. Apr. 7, 2021). This court has jurisdiction over the case against him. *See* 18 U.S.C. § 3231. The criminal complaint against Mr. Bey and the attached affidavit established probable cause to suspect that he had committed the charged offenses, and the complaint was properly signed, filed, and temporarily sealed. *See* Fed. R. Crim. P. 3, 4, 6, 49.1; E.D. Cal. L.R. 141.

Mr. Bey has not been deprived of his right to a speedy trial. The indictment was filed within statutory time limits. *See* 18 U.S.C. § 3161(b). The court has excluded time from accrual under the Speedy Trial Act to permit Mr. Bey and his attorneys to file motions, to prepare a defense, to ensure his competency, and to accommodate his requests for hearings in person during the COVID-19 pandemic. *See, e.g.*, 18 U.S.C. § 3161(c), (h)(1)(A), (h)(1)(D), (h)(7). For the same reasons, his more generic claims to a speedy-trial right fall short. *See Barker v. Wingo*, 407 U.S. 514, 530–33 (1972) (identifying relevant factors); *see also United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982) ("[I]t will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.").

Among his many motions, Mr. Bey also seeks unconditional release to Florida. *See* Notice at 2, ECF No. 93. He has already moved unsuccessfully for bail review. *See* Mot. Bail Review, ECF No. 21; Mins., ECF No. 26. He has not shown the Magistrate Judge's decisions on bail were clearly erroneous, contrary to law, or otherwise incorrect. *See* 28 U.S.C. § 636(b)(1).

Finally, Mr. Bey has not shown the government must return any seized cryptocurrency or other materials to him. A motion to return seized property must be filed "in the district where the property was seized." Fed. R. Crim. P. 41(g). The seizures Mr. Bey contests occurred in Florida. *See* Affidavit Reservation of Rights at 4, ECF No. 79. The relevant factors also weigh against Mr. Bey's request: the government has not "displayed a callous disregard" for his constitutional rights, he has not explained what "individual interest and need" he has for the property, he has not shown that a delay in the return of his property would cause irreparable harm, and he can seek relief in forfeiture proceedings. *See Ramsden v. United States*, 2 F.3d 322, 325 (9th Cir. 1993).

## III. RIGHT TO SELF-REPRESENTATION

Mr. Bey's frequently disruptive behavior and many frivolous filings cast doubt on his ability to continue in this case without counsel. In *Faretta*, the Supreme Court held that the Sixth

7

Amendment "grants to the accused personally the right to make his defense." 422 U.S. at 819. But the Court has recognized two circumstances in which other concerns can override criminal defendants' right to represent themselves. *United States v. Bishop*, 291 F.3d 1100, 1114 (9th Cir. 2002). First, defendants cannot choose to represent themselves if they cannot "knowingly and intelligently" forgo their right to counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). Second, to continue without an attorney, a defendant must be "able and willing to abide by rules of procedure and courtroom protocol." *Id.*

Regarding the first prong, this court has already found that Mr. Bey knowingly and intelligently chose to represent himself based on his answers to questions in open court and the opinions of experts at the Bureau of Prisons. *See* Mins., ECF No. 69. Mr. Bey is mentally competent both to stand trial and to represent himself. *See Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008); *United States v. Johnson*, 610 F.3d 1138, 1146 (9th Cir. 2010). As a result, turning to the second prong, an attorney could be appointed to represent Mr. Bey only if he is unable or unwilling to "abide by rules of procedure and courtroom protocol." *McKaskle*, 465 U.S. at 173, or if he has deliberately engaged in "serious and obstructionist misconduct," *Faretta*, 422 U.S. at 834 n.46.

The Ninth Circuit explained the rationale for the requirement of abiding by rules of procedure and observing protocol in *United States v. Mack*, 362 F.3d 597 (9th Cir. 2004). The Constitution promises a "trial" to those who want one. U.S. Const. amend. VI. "[A] trial is not just any old proceeding . . . . To start with, the proceeding must be conducted with a certain deliberative majesty that is far from a free-for-all or, for that matter, the hurly burly of an academic or political debate." *Mack*, 362 F.3d at 600. The "hallmarks of all court proceedings," including trials, are "dignity, order, and decorum." *Id.* (quoting *Illinois v. Allen*, 397 U.S. 337, 343 (1970)).

The Supreme Court has written similarly. "[P]roceedings must not only be fair, they must 'appear fair to all who observe them.'" *Edwards*, 554 U.S. at 177 (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988)). Defendants forfeit their right to represent themselves if they cannot or will not follow the rules and protocols courts have adopted to ensure proceedings meet

1   these high standards.  *Id.*  "The right of self-representation is not a license to abuse the dignity of
2   the courtroom."  *Faretta*, 422 U.S. at 834 n.46.

3         This is not to say that ignorance or a self-destructive legal strategy will disqualify a person
4   from representing himself.  *See id.* at 836; *United States v. Engel*, 968 F.3d 1046, 1050 (9th Cir.
5   2020).  Defendants can choose to represent themselves even when they are unfamiliar with "the
6   rules of evidence or the specifics of criminal procedure," as long as they are not "severely
7   disruptive."  *United States v. Lopez-Osuna*, 242 F.3d 1191, 1200 (9th Cir. 2000).  Similarly,
8   defendants who follow procedural rules and courtroom protocols can move forward without an
9   attorney even if their pleadings are nonsensical and full of legal "gibberish."  *Johnson*, 610 F.3d
10  at 1140, 1144.  Foolhardiness does not disqualify a person from representing himself.  *Cf.*
11  *Faretta*, 422 U.S. at 82 (Blackmun, J., dissenting) ("If there is any truth to the old proverb that
12  'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a
13  constitutional right on one to make a fool of himself.").

14        In addition, the Supreme Court's and Ninth Circuit's decisions make clear the focus must
15  remain on the courtroom and the trial, not pretrial litigation.  In *Faretta*, for example, the Court
16  wrote about the disruption of "trials" and "the dignity of the courtroom."  *Id.* at 834 n.46.  And in
17  *Illinois v. Allen*, the Court held that a judge does not run afoul of the Constitution by removing a
18  "noisy, disorderly, and disruptive" defendant from the courtroom.  397 U.S. at 338.  At the same
19  time, a defendant's failure to prepare for trial does not show he cannot represent himself.  *United*
20  *States v. Flewitt*, 874 F.2d 669, 674 (9th Cir. 1989).  "Pretrial activity is relevant only if it affords
21  a strong indication that the defendants will disrupt the proceedings in the courtroom."  *Id.*

22        Here, Mr. Bey's behavior in the courtroom has been consistently disruptive and strongly
23  indicates he will continue to deliberately frustrate and obstruct future courtroom proceedings,
24  including trial proceedings.  As described above, he has often spoken over the court, the
25  prosecutor, and his own attorneys.  *See generally, e.g.*, Tr. (June 16, 2021).  He has used insulting
26  and contemptuous language.  *See, e.g., id.* at 4 (to Ms. Crager: "That doesn't even make sense.
27  Where did you come [up] with that?"); Tr. (Feb. 28, 2022) at 4 (to Mr. Hemesath: "Could you
28  show me your bar card and number . . . Are you supposed to be here? . . . Do you have the

professional capacity?"). He has shown disrespect for court proceedings. *See, e.g.*, Tr. (May 4, 2021) at 2–4 (memorializing resting his head on the table, closing his eyes, being not responsive). He has responded to simple factual questions with irrelevant and confusing discursions. *See, e.g.*, Mins., ECF No. 69; Tr. (June 24, 2021) at 2–4; Tr. (June 16, 2021) at 3–4. Mr. Bey's behavior has required officers at times to restrain him, to prevent him from leaving remote proceedings prematurely; has required the court to mute his microphone in remote proceedings; and has disrupted in-person proceedings so severely that the court was twice forced to terminate hearings prematurely and once remove him temporarily from the courtroom in an effort to maintain order. *See* Mins., ECF No. 90; Tr. (Mar. 23, 2022) at 6–7; Mins., ECF No. 29; Tr. (June 16, 2021. Mr. Bey also has threatened the Magistrate Judge and the undersigned with litigation and motions. *See* Notice at 2–3, ECF No. 72; Order (Mar. 28, 2022), ECF No. 105.

This behavior leaves little doubt Mr. Bey will continue to prevent the court from maintaining proper decorum and order at future proceedings and at trial by disregarding the court's legal and evidentiary rulings, making inappropriate disclosures and arguments to the jury, showing disrespect to the court and the prosecutor, and causing delays and disruptions. *See, e.g.*, *Mack*, 362 F.3d at 600; *Badger v. Cardwell*, 587 F.2d 968, 972 (9th Cir. 1978).

**IV.   CONCLUSION**

"[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. Mr. Bey has done just that. His conduct "affords a strong indication" that he "will disrupt the proceedings in the courtroom" at trial. *Flewitt*, 874 F.2d at 674. For that reason, **the court reconsiders its decision that Mr. Bey may represent himself and terminates his self-representation**. The court will consult with the Office of the Federal Defender to identify and appoint counsel who can accept an appointment to represent Mr. Bey. If in the future Mr. Bey's behavior changes consistently for the better, and for a meaningful period of time, the court will consider a renewed motion to proceed without counsel.

1   A status conference is set for **Monday, July 11, 2022 at 9:00 a.m.** in courtroom 3 before the undersigned.  Time is excluded through that date to avoid a miscarriage of justice and to obtain counsel for Mr. Bey.  See 18 U.S.C. § 3161(h)(7)(B)(i), (iv).

   Mr. Bey's motions and other requests in ECF Nos. 71, 72, 73, 74, 75, 77, 79, 81, 83, 84, 86, 87, 88, 89, 88, 89, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 108, 113, 114, 115, 116, and 117 are **denied**.  The court will not act on any further pro se motions until counsel is appointed, at which point it will review the status of those motions with counsel.

   IT IS SO ORDERED.

DATED:  May 25, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE