PHILLIP A. TALBERT
United States Attorney
SAM STEFANKI
FRANK J. RIEBLI
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>             v.<br><br>CHALONER SAINTILLUS,<br><br>                              Defendant. | CASE NO. 20-CR-213 KJM<br><br>UNITED STATES' MOTION *IN LIMINE* NO. 2 (SUMMARY CHARTS)<br><br>DATE: January 23, 2023<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

The government moves the Court in limine to admit the two attached summary charts, pursuant to Federal Rules of Evidence 611(a) and 1006, to simplify the presentation of the evidence to the jury and help avoid confusion.

I.   **Facts**

The Superseding Indictment charges the defendant, Chaloner SAINTILLUS, with unlawfully distributing controlled substances on 12 separate occasions. He sold the drugs over the internet and then shipped them to his customers, including two undercover law enforcement agents. Those two agents purchased fentanyl, heroin, oxymorphone, and oxycodone from SAINTILLUS between April and October 2020. SAINTILLUS sent the drugs to three different post office boxes in the Eastern District of California. The drugs were all tested by the U.S. Postal Inspection Service's laboratory in Dulles, Virginia. The tests confirmed that the drugs were controlled substances, though not always what the agents had ordered. For example, on two occasions, the agents ordered carfentanil, but the substance

they received was fentanyl, not carfentanil.  On two other occasions, they ordered what SAINTILLUS had advertised as heroin, but tests later revealed that the substance they received was a mixture of heroin and fentanyl.

A U.S. Postal Inspector, Jason Bauwens, conducted much of the investigation that identified SAINTILLUS as the person who was shipping the drugs.  Starting with the packages' tracking numbers, Inspector Bauwens used a Postal database to obtain information about the packages SAINTILLUS sent, including the date, time, and location where they were deposited into the mail stream.  Those data – captured in 12 different spreadsheets – are attached as Exhibit 13A-1.  Using information from the postage on those same packages, Inspector Bauwens then ran a separate query in that same Postal database to determine the date, time and location where SAINTILLUS purchased the postage for those parcels, as well as the last four digits of the credit card used to purchase the postage.  Those data, which are captured in another 12 spreadsheets, are attached as Exhibit 13A-2.  Inspector Bauwens had to access a second database to get the entire credit card number for the credit card used to purchase the postage.  Those data, which are captured in still another 7 spreadsheets, are attached as Exhibit 13A-3.  From that investigation, he learned that all 12 parcels were mailed from a self-service kiosk ("SSK") at a post office in Delray Beach, Florida.  Knowing that SSKs snap photographs of the user during a transaction, Inspector Bauwens then used the mailing and postage information to obtain those photographs from a third database.[1]  The SSK captured photos of the mailer on 10 out of 12 occasions.  Though the mailer was wearing a mask on some occasions, it is unmistakably SAINTILLUS in all 10 photos.  In addition to consistent facial features and body type, he wears distinctive jewelry – jewelry agents eventually seized from SAINTILLUS's house during the execution of a search warrant – in many of the photos.  Inspector BAUWENS also used the credit card information from the U.S. Postal databases to subpoena records from the credit card's issuing bank.  On six out of 12 occasions, the credit card used to purchase postage was linked to a Wells Fargo Bank account in SAINITLLUS's name.

Thus, the evidence tying SAINTILLUS to the mailings comes from undercover operations

---

[1] To be clear, the government is not seeking to use the summary chart Exhibit 13A in place of the SSK photos.  The government intends to introduce those photographs separately.  Exhibit 13A captures only the spreadsheet information for each transaction.

MOTION *IN LIMINE* NO. 2 (SUMMARY CHARTS)            2

involving two different agents and information derived from three different U.S.P.S. databases and Wells Fargo Bank records. Though SAINTILLUS refuses to stipulate to the admissibility of the database information or bank records, they are all admissible as business records, and the records have a custodian of records certificate as required under Rule 902(11). The government has produced all of these records and the associated 902(11) certificates to SAINTILLUS.

## II.     Discussion

### A.     The Summary of Postal Database Records

The Rules of Evidence provide for the use of summary charts or tables to prove the content of voluminous writings that cannot be conveniently examined in court. Fed. R. Evid. 1006. The Court has considerable discretion in determining what "voluminous" means. White Indus. Inc. v. Cessna Aircraft Co., 611 F. Supp. 1049, 1070 (W.D. Wis. 1985). On the one hand, "the documents must be sufficiently numerous as to make comprehension 'difficult and inconvenient.' On the other hand, it is not necessary that the documents be so voluminous as to be 'literally impossible to examine.'" United States v. Bray, 139 F.3d 1104, 1109 (6th Cir. 1998). Rather, a summary exhibit "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." United States v. Lemire, 720 F.3d 1327, 1348 (D.C. Cir. 1983).

Indeed, courts have relied on Rule 1006 to admit as evidence charts that consolidated information from multiple sources, where doing so appears to have simplified the presentation to the jury and helped avoid the confusion that might attend leading the jury through multiple spreadsheets to find the same information about each of several transactions. In United States v. Rizk, 660 F.3d 1125, 1130-31 (9th Cir. 2011), for example, the Ninth Circuit affirmed the trial court's decision to admit two summary charts that consolidated information from 96 different real estate transactions.[2] Similarly, in United States v. Renteria, 720 F.3d 1245, 1252-53 (10th Cir. 2013), the Tenth Circuit affirmed a trial court's decision to allow summary charts that compiled information from at least three different sources,

---

[2] The columns in the first chart were: (a) escrow closing date and date reported to lender, (b) actual sale price and sale price reported to lender, (c) amount of loan, (d) commission the real estate agents received, (e) appraisers, and (f) whether deft provided records related to transaction under subpoena. The columns in second chart were: (a) appraisal date, (b) appraisal value, (c) appraiser, (d) addresses of comparable properties used in appraisal. Rizk, 660 F.3d at 1130.

including records from UPS, Money Gram, and Western Union.  And in United States v. Orlowski, 808 F.2d 1283, 1289 (8th Cir. 1986), a tax evasion case, the Eight Circuit affirmed the trial court's decision to admit 10 summary charts detailing the disposition of numerous checks the defendant received.

The government proposes to admit as Exhibit 13A a summary chart, attached hereto, that consolidates data from the three U.S.P.S. databases, attached hereto as Exhibit 13A-1 through 13A-3, that contain the mailing and postage data about the packages with drugs that SAINTILLUS mailed. This exhibit is a table with 12 rows – one for each of the controlled purchases – and 11 columns.  The first column is just the Count in the Superseding Indictment to which the information in that row pertains.  The information in columns 2-5 is from one query in the database.  The information in columns 6-10 is from separate query in the same database.  And the information in the last column (credit card number) is from a second database.  The underlying records are 31 different spreadsheets and over a thousand cells of data.  That is voluminous.  A summary chart will simplify the presentation of the evidence and make the evidence comprehensible and digestible for the jury.  Moreover, there is nothing argumentative about the summary chart.  It is just a consolidation of data taken from those business records.  And where possible, the government has retained the same column headers as in the original databases.

Further, a summary chart admitted under Rule 1006 is itself evidence.  It stands in for records that are admissible, though not necessarily themselves admitted.  As noted above, the underlying records in this case – the spreadsheets exported from the U.S. Postal databases and the Wells Fargo Bank records – are all business records and are accompanied by 902(11) certificates.  They would be admissible if offered in evidence (and in fact the government will introduce the bank records – that is the subject of Motion in Limine #2).  Working from those documents however, instead of the summary chart, would involve tedious and confusing switches back and forth between the different records multiple times for each charged offense.

The government asks that the Court admit Exhibit A to this motion as evidence under Rule 1006.

B.   **The Summary of Controlled Purchases**

The government also seeks to admit a summary chart, attached hereto as Exhibit 13B, that lists the 12 controlled purchases the undercover agents conducted, subject to a limiting instruction that it is

not independent evidence. Summary charts fall broadly into three categories: summaries of voluminous data (discussed above) that are admitted into evidence under Rule 1006, pedagogical devices that are used under Rule 611(a) but not admitted, and a hybrid of the two that is admitted under Rules 1006 and 611(a). See, e.g., Bray, 139 F.3d at 1110-1112; United States v. Shirley, 884 F.2d 1130, 1133 (9th Cir. 1989); Lemire, 720 F.3d at 1347; Verizon Directories Corp. v. Yellow Book USA, Inc., 331 F. Supp. 2d 136, 142 (E.D.N.Y. 2004). The latter – the hybrid charts – are not independent evidence, but are "so accurate and reliable a summary illustration or extrapolation of testimonial or other evidence in the case as to reliably assist the factfinder in understanding the evidence." Bray, 139 F.3d at 1112. Thus, they are admitted and go with the jury into the jury room, subject to a limiting instruction.

In Shirley, for example, the Ninth Circuit affirmed the district court's decision to allow a summary witness who testified about the relationships between phone numbers associated with the conspirators in a drug case, and "also compiled charts, which were admitted into evidence, detailing information about telephone calls made to and from the various numbers." 884 F.2d at 1133. In Lemire, the D.C. Circuit affirmed the use of a summary witness and charts in a fraud case where the evidence (introduced through other witnesses) involved several shell companies and offshore accounts. 720 F.3d at 1347. The summaries organized the information for the jury. Id. The trial court instructed the jury that the summaries were not independent evidence, but still admitted them to help the jury evaluate the evidence during deliberations. Id.

Here too, Exhibit 13B will organize evidence from at least four different witnesses and 12 different exhibits about the 12 controlled purchases. Exhibit 13B has six columns. The first column is the count of the indictment to which the data in each row pertains. The second column identifies which undercover agent ("UC-1" or "UC-2") participated in the controlled purchase. This information will come from Inspector Bauwens and the two undercover agents themselves. The third and fourth columns indicate the dates the undercover agents ordered drugs from SAINTILLUS, and the substances and quantities they ordered. The information in this column will come from the agents' testimony and the screenshots of their transactions. See Exhibits 13B-1B through 13B-12B, attached hereto.[3] The fifth

---

[3] The transaction dates listed on the screenshots represent the marketplace server date and time, as indicated in the lower right margin of page 3 of Ex. 13B-4B, not the local time where the agents conducted the transactions.

column indicates the date SAINTILLUS deposited the drugs in the mail in Delray Beach, Florida.  This information comes from the postmark on the package itself.  Finally, the sixth column represents the results of a laboratory test on each of the substances.  The information in this column came from the lab reports themselves, all of which the government has produced to SAINTILLUS.  The forensic chemist will testify as to the results of those tests.

The government will not argue that chart 13B itself is evidence of the crimes charged.  Rather, the government will use the chart to help organize the evidence – both testimony and documents – received from other witnesses and aid the jury in identifying the evidence relevant to each of the charged offenses.  And as the Court can see for itself, there is nothing argumentative about the chart.  It simply lists the 12 purchases, the dates of the purchases, the agent who made each purchase, the substance and quantity he ordered, and the substance and quantity the investigators received in the mail.  The column headings are objective and non-argumentative.[4]  For that reason, the government will ask that the Court admit Exhibit 13B and allow it to go with the jury into deliberations, subject to a limiting instruction.

### III.  CONCLUSION

For the foregoing reasons, the government requests that the Court admit Exhibit 13A as evidence under Rule 1006, and admit Exhibit 13B under rules 1006 and 611(a), subject to a limiting instruction that it is not evidence and merely an aid to understanding the evidence.

Dated:  December 9, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ Frank Riebli
FRANK J. RIEBLI
Assistant United States Attorney

---

[4] In United States v. Abbas, 504 F.2d 123, 126 (9th Cir. 1974), the Ninth Circuit held in a tax evasion case that it was error, though not prejudicial error, to admit as evidence summary charts that summarized witness testimony and had argumentative column headings like "Overstatement of Merchandise Purchases," "Overstatement of Delivery Expenses," "Unreported Cash Receipts of Lloyd's Bakery," "Unreported and Undeposited Cash Receipts Invested in United States Savings Bonds," "Unreported Net Income of Mr. E. C. Lloyd," and "Income Tax Unreported and Unpaid by Mr. Lloyd."