1  PHILLIP A. TALBERT
   United States Attorney
2  SAM STEFANKI
   FRANK J. RIEBLI
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile:  (916) 554-2900

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,            CASE NO.  2:20-CR-00213-KJM

12                    Plaintiff,         UNITED STATES' MOTION *IN LIMINE* NO. 3 –
                                         REGARDING ADMISSIBILITY OF VENDOR
13           v.                          PAGE SCREENSHOTS

14  CHALONER SAINTILLUS,                 DATE: January 23, 2023
                                         TIME: 9:00 a.m.
15                    Defendant.         COURT: Hon. Kimberly J. Mueller

16

17          The United States of America (the "government") moves *in limine* to admit Government

18  Exhibits 20 and 21, which are screenshots of the internet web pages where defendant Chaloner Saintillus

19  advertised drugs for sale.  The government also moves *in limine* to admit Government Exhibits 1B, 2B,

20  3B, 4B, 5B, 6B, 7B, 8B, 9B, 10B, 11B, and 12B, which are screenshots of the different computer and

21  cellular device screens that undercover agents saw as they completed purchases of drugs on Saintillus's

22  vendor web page.

23              I.       FACTUAL BACKGROUND

24          Saintillus sold drugs over the internet and then shipped the purchased contraband to his

25  customers through the mail.[1]  On twelve occasions, undercover law enforcement agents purchased drugs

26

27          [1] Saintillus operated two different vendor web pages during this investigation, both under the
    same moniker of "chlnsaint."  The first such vendor page was in the online marketplace known as
28  Empire.  The second was in the online marketplace known as DarkMarket.

    MOTION *IN LIMINE* NO. 3 RE SCREENSHOTS            1

1    through Saintillus's web page, including fentanyl, heroin, oxymorphone, and oxycodone.  The

2    superseding indictment charges twelve counts of distribution of controlled substances, in violation of 21

3    U.S.C. § 841(a)(1), arising out of those controlled purchases, each of which Saintillus shipped to a

4    mailbox in the Eastern District of California.  Superseding Indictment, ECF No. 159.

5          As part of the investigation in this case, investigating agents perused Saintillus's vendor web

6    pages and took screenshots of the advertisements he had posted for different drugs he was selling.

7    Those screenshots are marked as Government Exhibits 20 and 21.  In addition, as the agents went

8    through the online purchase process on Saintillus's vendor web pages, they took screenshots of the

9    different stages of each transaction as well as of communications they had with Saintillus regarding

10   those transactions.  These screenshots are marked as Government Exhibits 1B, 2B, 3B, 4B, 5B, 6B, 7B,

11   8B, 9B, 10B, 11B, and 12B.

## II.    LEGAL STANDARDS

### A.    Authentication

14         "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent

15   must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

16   Fed. R. Evid. 901(a).  This rule "requires that the government make only a prima facie showing of

17   authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'"  *United*

18   *States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989) (quoting *United States v. Black*, 767 F.2d

19   1334, 1342 (9th Cir. 1985)).  "Once the government meets this burden 'the . . . probative force of the

20   evidence offered is, ultimately, an issue for the jury.'"  *Id.* (alteration in original).

21         The government may meet this low burden of authenticity by introducing the testimony of a

22   witness with knowledge that "an item is what it is claimed to be."  Fed. R. Evid. 901(b)(1).  For internet

23   evidence, this means that "[e]xhibits depicting online content may be authenticated by a person's

24   testimony that he is familiar with the online content and that the exhibits are in the same format as the

25   online content."  *United States v. Needham*, 852 F.3d 830, 836 (8th Cir. 2017) (citing *Jones v. Nat'l Am.*

26   *Univ.*, 608 F.3d 1039, 1045–46 (8th Cir. 2010)); *see also United States v. Tank*, 200 F.3d 627, 630 (9th

27   Cir. 2000) (affirming admission of printouts of chat room logs).

28   ///

1

**B.**     **Hearsay**

2      The prohibition against hearsay applies to an out-of-court statement that "a party offers in

3  evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  A

4  statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it

5  as an assertion."  Fed. R. Evid. 801(a).  Statements made by a defendant that are offered against that

6  defendant are not hearsay.  Fed. R. Evid. 801(d)(2); *United States v. Romo-Chavez*, 681 F.3d 955, 959

7  (9th Cir. 2012).  This rule applies to statements made online and via electronic messaging applications.

8  *See Tank*, 200 F.3d at 630–31 (upholding admission of chat room log printouts following testimony

9  from chat participant who created them); *United States v. Torres*, 742 F. App'x 244, 245 (9th Cir. 2018)

10  ("[T]ext messages also qualify as statements of a party opponent."); *United States v. Burt*, 495 F.3d 733,

11  738 (7th Cir. 2007) (upholding district court's admission of chat logs as statements of party-opponent);

12  *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1109 (D. Or. 2000)

13  (admitting statements made on party's website under Rule 801(d)(2)(A)); *Arista Recs. LLC v. Lime Grp.*

14  *LLC*, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011) (admitting statements made by employees on internet

15  forum posts as statements of party-opponent); *United States v. Standring*, No. 1:04-cv-00730, 2006 WL

16  689116, at *3 (S.D. Ohio Mar. 15, 2006) (admitting statements made by defendant on his website as

17  admissions by party-opponent).

18      Furthermore, offers of sale are not hearsay where their significance lies in the fact that the offer

19  of sale was made.  *See United States v. Arteaga*, 117 F.3d 388, 397 n.16 (9th Cir. 1997) (citing Fed. R.

20  Evid. 801 advisory committee's note to subdivision (c) of 1972 proposed rules) (noting that verbal acts,

21  such as offers of sale, made in course of contractual relationship are not hearsay where their significance

22  lies in fact that verbal acts were made).  Finally, images contained in online printouts or automatically

23  generated by computers are not assertions, and so cannot be hearsay.  *United States v. May*, 622 F.2d

24  1000, 1007 (9th Cir. 1980) (holding that "a photograph is not an assertion, oral, written, or non verbal");

25  *United States v. Welton*, No. CR 09-00153-MMM, 2009 WL 10680850, at *3 (C.D. Cal. July 17, 2009)

26  (holding that information "generated by a computer independent of human observations or reporting . . .

27  does not contain assertions that amount to hearsay").

28  ///

## III.   ARGUMENT

The Court should grant the government's motion because all screenshots of the dark web drug vendor pages run by "chlnsaint" will be properly authenticated and consist entirely of admissible non-hearsay.

### A.   All Screenshots of the "chlnsaint" Vendor Pages Will Be Authenticated by Law Enforcement Witnesses.

At trial, the two undercover agents who conducted the controlled purchases from Saintillus's web pages will testify that they captured screenshots of different stages of the transactions as they went through the purchasing process.  Both witnesses will testify that the screenshots in Government Exhibits 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B, 10B, 11B, and 12B are the screenshots they took, and that those screenshots are true and accurate representations of what they saw as they navigated each purchase. United States Postal Inspector Jason Bauwens will testify that he captured the screenshots of the "chlnsaint" vendor pages that comprise Government Exhibits 20 and 21 as he explored drugs that "chlnsaint" was offering for sale, and that these two exhibits are true and accurate representations of what he saw as he scrolled through the vendor web pages maintained by "chlnsaint."

### B.   The Content of These Vendor Screenshots Is Admissible Because It Does Not Contain Hearsay Statements.

The "chlnsaint" vendor page screenshots are admissible because they consist of statements by Saintillus as well as other statements offered for something other than their truth.[2]  Each of Government Exhibits 1B through 12B contains four categories of information.  The first category consists of statements made by Saintillus about the drugs for sale on his page and about how to contact him regarding potential purchases of those drugs.  *See, e.g.*, Gov't Ex. 1B at 2.[3]  The second category

---

[2] As a threshold matter, the government will introduce substantial evidence that statements made by "chlnsaint" and "showstill" are attributable to Saintillus.  *See* Fed. R. Evid. 104(b).  This evidence will include:  video files that Saintillus recorded of himself filming his computer while logged in to the Empire marketplace as "chlnsaint," images saved to Saintillus's cellular phones that also appear as drug listings on the "chlnsaint" vendor pages, images saved to Saintillus's cellular phones of information about drug orders made by undercover agents from the "chlnsaint" vendor pages, and image and forensic evidence from Saintillus's cellular phones showing that he used the "showstill" Wickr account (the same account that "chlnsaint" claimed as his own).

[3] Government Exhibits 2B, 6B, and 7B also contain screenshots of Wickr chats in which Special Agent Mann corresponded with "showstill" regarding his undercover purchases.

1  consists of commercial offers of drugs and associated details regarding those offers.  *See, e.g.*, Gov't Ex.

2  1B at 1 (containing, *inter alia*, offer of "Oxymorphone-ONLY ONE ON MARKET CHECK

3  FEEDBACK . . . OVERNIGHT SHIPPING!!!" and indication that it was "Sold by chlnsaint").  The

4  third category consists of information entered into Saintillus's vendor pages by undercover agents as

5  they purchased drugs.  *See, e.g.*, Gov't Ex. 1B at 3 (containing entry of undercover mailing address for

6  oxymorphone purchase).  The fourth category consists of information automatically generated by the

7  marketplaces which hosted the "chlnsaint" vendor pages while agents consummated their controlled

8  substance purchases.  *See, e.g.*, Gov't Ex. 1B at 4 (indicating date and time of oxymorphone purchase as

9  well as fact that transaction was processing).

10        Government Exhibits 20 and 21, on the other hand, are direct evidence that Saintillus controlled

11  the "chlnsaint" vendor pages.  These exhibits display images of the drugs "chlnsaint" was selling, some

12  of the same images of which were also found on Saintillus's cellular phones when agents executed a

13  search warrant at his residence in October 2020.  Government Exhibits 20 and 21 also contain

14  statements showing that the person who ran the "chlnsaint" vendor pages also used the Wickr moniker

15  "showstill."  *See, e.g.*, Gov't Ex. 20 at 2 ("ALSO FOR THIS WHOM NEEDS TO CONTACT

16  OFFLINE ETC. DOWNLOAD THE WICKER APP AND ADD ME SHOWSTILL.").  This evidence

17  helps prove that Saintillus ran the "chlnsaint" vendor pages because both of Saintillus's cellular phones

18  had the "showstill" Wickr account installed on them, and because agents executing a search warrant at

19  Saintillus's residence documented that he was actively using his "showstill" Wickr account to

20  communicate with them and with other drug purchasers.

21                  1.        Statements by a Party-Opponent

22        Assertions made by "chlnsaint" and "showstill" are admissible against Saintillus because they

23  are statements by a party-opponent.  *See* Fed. R. Evid. 801(d)(2)(A).

24        Hence, statements on the vendor page screenshots regarding the types of drugs for sale (for

25  instance, "Oxymorphone-ONLY ONE ON MARKET"), the drugs' provenance (for instance, "ALL

26  LEGIT PHARMACEUTICALS"), and the manner of the drugs' shipment (for instance, "REMIND

27  YOU TRUCKS DON'T PICK UP MAIL TO SHIP UNTILL 5PM"), are admissible against Saintillus.

28  Gov't Ex. 1B at 2.  So are statements on these screenshots in which Saintillus linked his DarkMarket

1   vendor page to his Empire vendor page.  *See, e.g.*, Gov't Ex. 11B at 1 (selling "oxycodone 30mg

2   (Empire's former Legend) more pics coming"); 12B at 1 (advertising "fentynal (Empire Former

3   Legend)").

4        The same is true of statements Saintillus made using chat applications as "chlnsaint" on the

5   Empire marketplace and as "showstill" on Wickr.  *See, e.g.*, Gov't Exs. 2B at 3 (containing message sent

6   by "chlnsaint" to undercover agent that "Your address pgp not working contact my wicker asap NAME

7   Showstill"), 4 (containing Wickr chat in which "showstill" asked undercover agent to resend shipping

8   address for second controlled purchase).  Statements made to Saintillus during these chat exchanges are

9   admissible to demonstrate their effect on him (for example, that Saintillus received the shipping

10  addresses given to him by undercover agents over Wickr) and to provide context for his responses (for

11  example, that Saintillus agreed to ship drugs to those addresses).  *See, e.g.*, Gov't Ex. 6B at 4; *Whitman*,

12  771 F.2d at 1352.

13               2.        Statements Constituting Verbal Acts

14       Many statements made by Saintillus on the vendor page screenshots are independently

15  admissible because they are verbal acts.  Specifically, these statements are commercial offers of sale that

16  are not hearsay.  *See Arteaga*, 117 F.3d at 397 n.16.

17       Information on the vendor page screenshots providing details about each undercover purchase,

18  such as the drugs offered for sale, the quantity and price of those drugs, and the cost of postage and

19  shipping, all fall into this category of admissible statements.  *See, e.g.*, Gov't Ex. 8B at 1 (displaying

20  data regarding sale of fourteen grams of fentanyl, including item and shipping cost as well as manner of

21  shipment).  These screenshots constitute the first verbal acts in what Saintillus anticipated would be

22  commercial transactions involving the sale of drugs, making them admissible as non-hearsay.  *See* Fed.

23  R. Evid. 801 advisory committee's note to subdivision (c) of 1972 proposed rules ("The effect is to

24  exclude from hearsay the entire category of 'verbal acts' . . . .").

25               3.        Statements Not Offered for Their Truth

26       Much of the content on the vendor page screenshots is admissible because it is not offered for the

27  truth of the matter asserted.  *See* Fed. R. Evid. 801(c)(2).

28  ///

MOTION *IN LIMINE* No. 3 RE SCREENSHOTS                    6

1    This includes, for example, the shipping addresses which undercover agents entered into the

2    "Notes" section of the Empire marketplace purchase screen and the "Address" section of the

3    DarkMarket purchase screen.  *See, e.g.*, Gov't Exs. 4B at 2 (containing undercover shipping address for

4    fourth controlled purchase), 12B at 3 (containing undercover shipping address for twelfth controlled

5    purchase).  The shipping addresses displayed on the vendor page screenshots are offered simply to

6    demonstrate that Saintillus received orders to ship drugs there.  *See Payne*, 944 F.2d at 1472 (admitting

7    out-of-court statements offered "to show the effect on the listener" and "to explain the circumstances

8    under which" listener's actions took place).  Put another way, the vendor page screenshots are relevant

9    regardless of whether the addresses they display are true, because the shipping addresses displayed in

10   those screenshots make it more likely that Saintillus is the person who sent packages containing drugs to

11   those addresses.  *See, e.g.*, Gov't Exs. 1D–12D (containing images of envelopes displaying same

12   undercover addresses provided to "chlnsaint" and "showstill").

### 4. Non-Assertions

14   The remaining portion of the vendor page screenshots is admissible non-hearsay because it does

15   not qualify as assertions at all.  *See* Fed. R. Evid. 801(a) (defining statements subject to hearsay rule).

16   This includes, for example, information automatically generated by the Empire and DarkMarket

17   server computers, such as time stamps, labels and graphics identifying the marketplaces, hyperlinks and

18   drop-down menus displaying the organizational structure of the marketplaces, as well as information

19   about which user accounts were logged onto the marketplaces and making drugs available for sale at the

20   time the screenshots were made.  *See Welton*, 2009 WL 10680850, at *3 (holding that information

21   "generated by a computer independent of human observations or reporting . . . does not contain

22   assertions that amount to hearsay").  It also includes images of the narcotics Saintillus was selling.  *See,*

23   *e.g.*, Gov't Exs. 6B at 1 (displaying image of substance advertised as "CARFENTANIL"), 12B at 1

24   (displaying image of substance advertised as "fentynal").

25   Since none of this information is an oral or written assertion made by a person intending it as

26   such, none of it is subject to the hearsay bar.  *See* Fed. R. Evid. 801(a).

27   ///

28   ///

MOTION *IN LIMINE* NO. 3 RE SCREENSHOTS                           7

1

## IV.    CONCLUSION

2   The government respectfully requests that the Court grant its motion and admit Government

3  Exhibits 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B, 10B, 11B, 12B, 20, and 21.

4

5   Dated:  December 9, 2022                    PHILLIP A. TALBERT
                                                United States Attorney
6

7                                     By:   /s/ SAM STEFANKI
                                            SAM STEFANKI
8                                           FRANK J. RIEBLI
                                            Assistant United States Attorneys
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28