PHILLIP A. TALBERT
United States Attorney
SAM STEFANKI
FRANK J. RIEBLI
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHALONER SAINTILLUS,<br><br>Defendant. | CASE NO. 20-CR-213 KJM<br><br>UNITED STATES' MOTION *IN LIMINE* NO. 5 (OTHER ACTS EVIDENCE)<br><br>DATE: January 23, 2023<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

The government asks that the Court admit four pieces of evidence under Federal Rule of Evidence 404(b). This evidence tends to show that Chaloner SAINTILLUS was involved in acts of drug distribution other than those charged in the Superseding Indictment. But each of these pieces of evidence tends to identify SAINTILLUS as the person who sold and mailed the drugs to the agents on the 12 charged occasions and the government would use it only for that purpose. Further, the evidence is not inflammatory and would have no tendency to cause the jury to convict for a reason other than its belief that SAINTILLUS committed the charged offenses. The risk of unfair prejudice does not substantially outweigh the evidence's probative value. Accordingly, the government asks that the Court admit it. The evidence at issue is:

1. Testimony, photographic and physical evidence related to an incident on October 8, 2020, when agents conducting surveillance observed SAINTILLUS put a parcel containing drugs into the mail;
2. A 90-second video from SAINTILLUS's phone showing him panning around his vendor page (the same page through which the undercover agents bought drugs) and discussing

    another customer's purchase of more than $2,000 worth of drugs;

3.  A 2-second video from SAINTILLUS's phone showing him logged into the vendor page as "chlnsaint," and,

4.  A 7-second video from SAINTILLUS's phone showing a flat surface with a number of Priority or Express Mail envelopes on it, and showing that one or more of them had the same return address and addressee as the packages in the charged offenses.

## I. FACTS

  SAINTILLUS operated an internet web page through which he sold several different kinds of drugs, including the fentanyl, heroin, oxymorphone, and oxycodone charged in the Superseding Indictment. Two undercover agents bought drugs through this web page on 12 occasions (in total). Within days of placing their orders online, the agents received the drugs in the mail. The drugs were shipped by U.S. Priority or Express Mail, and always from the same post office in Delray Beach, Florida. SAINTILLUS used the screen name "chlnsaint" on his web page in place of his true name. The undercover agents never met SAINTILLUS in person to receive drugs.

  Over the course of the investigation, agents identified SAINTILLUS as the person shipping the drugs through investigation of the mailings themselves. Seven of the twelve packages containing drugs had the same sender information:

> Stephanie Smith
> 301 SW 7th Avenue
> Delray Beach, FL 33444

The other five had a simple variation on that same sender information. Thus, two were from:

> Stephanie Smith
> 218 SW 3rd Ave
> Delray Beach, FL 33444

two were from:

> John Smith
> 218 SW 3rd Ave
> Delray Beach, FL 33444

and one was from:

> Kate Smith
> 218 SW 3rd Ave
> Delray Beach, FL 33444

The parcels were all sent from the same U.S. Post Office at 14280 South Military Trail in Delray Beach,

and all had postage generated at a self-serve kiosk ("SSK") in that post office. Subsequent analysis of bank records shows that SAINTILLUS used his own bank card to purchase the postage from the SSK on six of the 12 occasions. Agents seized from his residence a credit card that was used to purchase the postage on another occasion. And in SAINTILLUS's phone, agents found an order summary indicating that SAINTILLUS had used a credit card with the same final four numbers as one of the cards used to purchase postage on still two more occasions (for a total of 9 out of 12).

Agents finally identified SAINTILLUS's residence, and began conducting surveillance. On October 8, 2020, a surveillance team observed SAINTILLUS leave his residence carrying an Express Mail envelope, go to a post office, purchase postage at a self-serve kiosk, and then hand the envelope to a postal worker. Agents found and seized that envelope. Like the envelopes containing drugs that SAINTILLUS sent to the undercover agents, this envelope was a Priority/Express Mail envelope, and the sender name and address were:

> Stephanie Smith
> 301 SW 7th Ave
> Delray Beach, FL 33444

Inside the envelope, they found a plastic baggie containing white powder. A subsequent lab test revealed that the substance was 5.93 grams of fentanyl. A surveillance picture, a picture of the envelope, and a picture of the substance found inside are attached hereto as Exhibit A.

On October 27, 2020, agents executed a federal search warrant at SAINTILLUS's residence in Delray Beach, Florida. During the course of that search, agents found and seized SAINTILLUS's phone. A search of that phone revealed, among other things, two videos that both implicate SAINTILLUS in drug distribution, and tend to establish that he is the person who distributed the drugs on the 12 occasions charged in the Superseding Indictment.[1]

---

[1] The government will seek to introduce other videos and images from SAINTILLUS's two cell phones. However, as they do not implicate his character or directly relate to other criminal conduct, their use does not trigger Rule 404. See, e.g., United States v. Kupfer, 797 F.3d 1233, 1242 (10th Cir. 2015) ("To fall within the scope of 404(b), an act need not be criminal, so long as it tends to impugn a defendant's character.") (quoting United States v. Kendall, 766 F.2d 1426, 1436 n.5 (10th Cir. 1985)). For example, selfie videos and photos are relevant evidence, under Rule 401, that the phones belonged to SAINTILLUS. And SAINTILLUS used at least one of those phones to communicate with the undercover agents about the charged offenses. The selfie videos and photos thus tend to show that SAINTILLUS was the person generating those communications.

The first of the two videos (relevant here) seized from SAINTILLUS's phone is a narrated tour of the pending-order screen of SAINTILLUS's "chlnsaint" web page. The video is 1 minute, 30 seconds. In it, SAINTILLUS reviews a pending order for 60 Adderall (amphetamine) tablets that another customer placed through his web page. The video does not show SAINTILLUS's face, but it is his voice.[2] As he pans the camera across the screen, he says, "This motherfucker wanted 60, and it comes out at a thousand dollars. I just made a thousand dollars, off this one package." A copy of that video is attached as Exhibit 19K.

The second video seized from SAINTILLUS's phone depicts that same vendor page, but in the last moment, shows that the user is logged in as "chlnsaint." That video is attached as Exhibit 19M.

The third video seized from SAINTILLUS's phone shows a disorganized pile of at least eight Express Mail envelopes lying on a flat surface. The phone user's hand then shuffles the envelopes around and mumbles a few words. The voice is the same as the voice as in the first video and in other selfie videos. Moreover, in the process of shuffling the envelopes, the person reveals the mailing labels on at least four of the eight envelopes. Those four mailing labels appear to have the same sender information (Stephanie Smith at 301 SW 7th Ave. in Delray Beach, FL) as several of the mailing labels on the envelopes containing drugs in this case. A copy of that video is attached as Exhibit 19Q.

## II.  DISCUSSION

### A.  Legal Standard

Evidence of another crime, wrong, or act is not admissible to prove a defendant's character in order to show that he acted in accordance with the character on a particular occasion. Fed. R. Evid. 404(b)(1). But such evidence may be admissible to prove preparation, knowledge, identity, absence of mistake, or lack of accident. Id. 404(b)(2). Rule 404(b) is a rule of inclusion, not a rule of exclusion, meaning that the rule makes evidence admissible except where the evidence only tends to prove criminal disposition. United States v. Bradshaw, 690 F.2d 704, 708 (9th Cir. 1982). The Court considers four factors in determining whether to admit evidence under Rule 404(b). United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002). Thus, evidence may be admitted under 404(b) if: (1) it tends to prove a

---

[2] Other videos on his phone that contain his voice also show his face for comparison.

MOTION *IN LIMINE* NO. 5 (OTHER ACTS)    4

material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and, (4) the act is similar to the offense charged. Id.; United States v. Hinton, 31 F.3d 817, 822 (9th Cir. 1994).

In this case, the government anticipates that SAINTILLUS's defense will be, at least in part, that the government arrested and charged the wrong person, that he is not the one who mailed the drugs. Alternately, he may assert that he was not associated with the "chlnsaint" vendor page, and though he mailed the packages, he didn't know what was in them. The three types of other acts evidence the government proposes to introduce all tend to undermine these defenses.

In a criminal case, "identity is unquestionably at issue unless the defendant admits the commission of the act, but denies the requisite intent." United States v. Baldarrama, 566 F.2d 560, 568 n.5 (5th Cir. 1978). Where other act evidence is offered to prove identity, "the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi." United States v. Miller, 959 F.2d 1535, 1539 (11th Cir. 1992). See also United States v. Powell, 587 F.2d 443, 448 (9th Cir. 1978).

Thus, in Miller, the Eleventh Circuit held that it was not an abuse of discretion to admit evidence in a drug trafficking case that the defendant had distributed drugs on a prior occasion. There, on both the charged occasion and the prior occasion, one of the defendants had referred to his supplier by the same name ("Louis"), the deals took place at the same location, involved the same drug (cocaine), and occurred within several minutes of the dealer calling is supplier by telephone, and the dealer got into the supplier's car to get the drugs before returning to the residence to sell them. 959 F.2d at 1539. "We conclude that similarities between the two transactions provide strong evidence that the supplier in both transactions was the same person," the Eleventh Circuit held. Id. Thus, the evidence of the prior transaction was properly admitted under Rule 404(b) to establish the supplier's identity.

In Baldarrama, the Fifth Circuit upheld the introduction of evidence of a prior conviction for heroin distribution where both the charged offense and the prior offense involved a large amount of heroin, which was "very rare" in San Antonio. 566 F.2d at 567-68.

Here, the other act evidence helps establish SAINTILLUS's identity as the person who mailed

the drugs on the occasions charged in the Superseding Indictment. The evidence also tends to establish that SAINTILLUS was behind the "chlnsaint" website, and thus that he knew that he was offering controlled substances for sale and was not shipping drugs by accident or mistake.

### B. The Government's Evidence

#### 1. The October 8, 2020 Surveillance and Seizure

The testimonial and physical evidence regarding the October 8, 2020 surveillance and seizure meet the four criteria for admission. It tends to prove a material point, namely, that SAINTILLUS is the person who mailed the packages charged in the Superseding Indictment, because agents observed him engage in conduct that was identical or almost identical to the charged conduct. All of the charged instances of distribution involved a Priority or Express Mail parcel, mailed from the post office at 14280 South Military Trail in Delray Beach, Florida, using postage purchased at an SSK in that same post office, with the name "Stephanie Smith" at 301 SW 7th Ave. (or a close variation on that combination) listed as the sender. This pattern – location, method of purchasing postage, sender information – constitutes a "signature." It indicates that the same person is responsible for all the mailings. The only piece missing from this signature evidence is a direct observation of SAINTILLUS performing the acts.

On October 8, 2020, agents observed SAINTILLUS do just that. They saw him take an Express Mail parcel to that same post office, purchase postage for it at the SSK, and then hand it to a postal worker in the office. When they subsequently examined the parcel, they saw that it had the same sender information. And inside, they found almost six grams of fentanyl. There is no question that SAINTILLUS engaged in that conduct – agents observed him do it. And their observations of him going through the exact same motions as in the charged offenses tends to establish that SAINTILLUS committed those offenses too. Nor was this incident too remote in time. To the contrary, it occurred while the instant investigation was taking place, and before the final two controlled purchases.

To prove this conduct, the government will offer one of the agents who witnessed these events and seized the mail envelope, the envelope itself, a photo of the drugs seized from the envelope, and the testimony of the chemist who tested the drugs and found them to be fentanyl. Both witnesses – the agent and the chemist – will testify about other aspects of this investigation. Neither would be called solely for the purpose of discussing the October 8, 2020 incident.

For these reasons, evidence of the October 8, 2020 surveillance and seizure is admissible under Rule 404(b).

### 2. The First Vendor Web Page Video

The three videos seized from SAINTILLUS's phone similarly help to identify him as the person sending the packages charged in the Superseding Indictment. The first video (Exhibit 19K) also shows that SAINTILLUS is the person operating the "chlnsaint" web page, through which the undercover agents purchased the drugs, because he has that page up on his computer and he says "I just made a thousand dollars." This indicates that he is "chlnsaint." Further, the video shows that SAINTILLUS is aware that he's distributing drugs, both because it tends to identify him as the person running the "chlnsaint" vendor page,[3] and also because the pending order states that it is for 60 Adderall tablets. Thus, it negates the possibility that SAINTILLUS distributed drugs accidentally or by mistake.

In addition, the video shows that the order SAINTILLUS is discussing took place on or about March 13, 2020, which is just one month before the first undercover purchase in this case and seven months before agents seized SAINTILLUS's phone. It is not remote in time.

And there is sufficient evidence that SAINTILLUS is the person narrating the video. First, the video was found on the phone agents seized from his bedroom on October 27, 2020. Second, the voice in the narration is the same voice as in other selfie videos that show SAINTILLUS's face and have his voice (which the government will also introduce).

Finally, the offense that the video captures is the same as the 12 offenses charged against SAINTILLUS. It is the sale of drugs through the Empire website. In this instance, he sells a different drug from the ones the undercover agents bought. But the agents who conducted the undercover purchases will testify that they saw more drugs offered for sale than they purchased, including Adderall.

For all of these reasons, the first video is admissible under Rule 404(b).

### 3. The Second Vendor Page Video

The second video (Exhibit 19M) is just two seconds long, but it is clear that the video is of the

---

[3] Though the video does not capture the portion of the screen that shows the user ID "chlnsaint," the pending orders are written in the same way and have the same pictures as the ones the agents saw (and took screenshots of) when they visited the "chlnsaint" web page.

MOTION *IN LIMINE* NO. 5 (OTHER ACTS)   7

same vendor page as the first video, and in the final moment, the camera captures the user ID of the person logged into that page. It is "chlnsaint." Like the first video, this tends to show that SAINTILLUS was the person operating the "chlnsaint" web page through which the undercover agents bought drugs. The video was on his phone, and appears to show him memorializing another transaction, similar to the first video. Together, both videos help establish SAINTILLUS's identity as the person conducting the drug transactions charged here, and also show that he knew he was transacting in controlled substances, since the advertisements identify the drugs by name (e.g., fentanyl, heroin, oxymorphone, etc).

The metadata for the video file indicate that SAINTILLUS recorded it on or about March 16, 2020. Thus, it is not remote in time.

Finally, the video implicates SAINTILLUS in operating the very same website through which the agents purchased the drugs charged in the Superseding Indictment.

For these reasons, the second video should be admitted under Rule 404(b).

### 4. The Envelopes Video

The second video (Exhibit 19Q) is seven seconds long, and also tends to establish that SAINTILLUS was the person who sent the parcels charged in the Superseding Indictment. As discussed above, this is a material issue at trial.

There is sufficient evidence for the jury to find that SAINTILLUS is the one who took the video. First, the video was found on SAINTILLUS's phone. Second, the few mumbled words are in the same voice as the first video and other videos that depict SAINTILLUS's face.

The video is also not remote in time. Metadata associated with the video file itself indicate that it was made on or about March 17, 2020, which is less than one month before the first undercover purchase from "chlnsaint."

Finally, the video depicts conduct that is identical to the charged conduct. The camera only shows the sender information on four of the (approximately) eight envelopes, but those four all have the same sender information, and that sender information is the same as seven of the 12 envelopes the undercover agents received. This video shows that the same person is behind the charged and uncharged mailings, and thereby connects the owner of the phone to the charged offenses. Indeed, it is the

similarity between the charged and un-charged conduct, and the video's connection to SAINTILLUS, that helps identify him as the person responsible for the charged offenses.

The second video thus is also admissible under Rule 404(b).

### C.  Rule 403 Does Not Make the Proposed Evidence Inadmissible.

Even where evidence is admissible under Rule 404(b), the Court must consider whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice.  Fed. Rule Evid. 403; Miller, 959 F.2d at 1538 (calling a Rule 403 analysis a part of the test for admissibility of evidence under Rule 404(b)).  The fact that evidence may tend to cause the jury to convict does not make it unfairly prejudicial – evidence is unfairly prejudicial if it motivates the jury to convict for an improper purpose, like bias.  United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).  Exclusion under Rule 403 is an "extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence."  United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995).

Here, the two videos and the evidence about the October 8, 2020 surveillance and seizure easily meet Rule 403's requirements.  First, none of the evidence is salacious or inflammatory.  It relates to SAINTILLUS conducting additional transactions online and mailing packages.  There is very little action, and no suspense, drama, or gore.  Seeing the videos and hearing testimony about SAINTILLUS mailing a package thus is unlikely to stoke the jurors' passions and motivate them to convict him for an improper purpose.

Second, admitting this evidence will not cause undue delay or needlessly present cumulative evidence.  To begin, the witnesses who will sponsor this evidence are all on the government's witness list and will testify regardless.  For example, the agent who will testify about the October 8, 2020 surveillance will also testify about the October 27, 2020 search of SAINTILLUS's residence and the seizure of his phones.  The witness who will sponsor the two videos will also testify about other items of evidence recovered from SAINTILLUS's phones – the incremental addition of these two videos will be negligible, and will largely consist only of the few additional minutes required to queue up and play the videos.  The chemist who tested the drugs seized on October 8, 2020 will also testify about the tests he conducted on the drugs from the 12 undercover purchases.  Here too, the incremental addition of time needed to discuss the drugs seized on October 8, 2020 is negligible.  Thus, introducing this evidence will

not require any additional witnesses, and only modest increases in the duration of existing witnesses' testimony. The videos are short – less than two minutes in total.

Further, the evidence is not needlessly cumulative. Though there will be ample evidence about the mailings related to the undercover purchases, October 8, 2020 is the only time agents witnessed SAINTILLUS going to a post office, using an SSK to buy postage, and then depositing the envelope into the mail stream. Similarly, the two videos are the only videos that show SAINTILLUS operating the "chlnsaint" web page and putting together envelopes with the "Stephanie Smith" sender information.

Finally, the evidence is damaging, but not unfairly so. If it makes the jury more likely to convict SAINTILLUS, it will be because the evidence convinced the jury that he was "chlnsaint" and that he was responsible for the mailing the parcels. Though the evidence also tends to implicate him in uncharged drug distribution, it only does so because it links SAINTILLUS to the signature elements in the commission of the charged offenses.

Accordingly, SAINTILLUS cannot demonstrate that the danger of unfair prejudice substantially outweighs the probative value of the evidence.

## III.  CONCLUSION

For the foregoing reasons, the Court should admit the two videos attached hereto, as well as testimonial and photographic evidence related to the October 8, 2020 surveillance and seizure.

Dated:  December 9, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ Frank Riebli
FRANK J. RIEBLI
Assistant United States Attorney