DAVID D. FISCHER, SBN 224900
LAW OFFICES OF DAVID D. FISCHER, APC
5701 Lonetree Blvd., Suite 312
Rocklin, CA 95765
Telephone: (916) 447-8600
Fax: (916) 930-6482
Email: david.fischer@fischerlawoffice.com

Attorney for Defendant
CHALONER SAINTILLUS

# UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHALONER SAINTILLUS,<br><br>　　　　Defendant. | Case No.: 2:20-cr-0213-KJM<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO WITHDRAW AS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date: January 9, 2023<br>Time: 9:00 a.m.<br>Judge: Hon. Kimberly J. Mueller |

　　　　PLEASE TAKE NOTICE that Defendant Chaloner Saintillus's counsel, David D. Fischer, will move this Court, as soon as counsel may be heard, for an order granting leave to withdraw as counsel for defendant. This motion is made

pursuant to Eastern District of California Local Rules 83-182 and Rule 1.16 of the Rule of Professional Conduct of the State Bar of California.

This motion is based on this Notice of Motion and Motion, the declaration of David D. Fischer filed herewith and the pleadings and orders on file in the above-captioned matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Without revealing client confidences, the defendant and counsel have suffered irreconcilable differences as well as a breakdown in communication. The irreconcilable differences and breakdown are so significant that it is <u>impossible for counsel to provide adequate representation</u>. For this reason, counsel moves for leave to withdraw. (See Fischer Dec.)

### II.

### FACTUAL BACKGROUND

**Criminal Complaint**

On October 21, 2020, the government filed a criminal complaint charging the defendant with violations of Title 21 U.S.C. § 841(a)(1) and 846. The complaint drafted by U.S. Postal Inspector Jason Bauwens stated that he is an investigator on the Northern California Illicit Digital Economy (NCIDE) Task Force composed of agents from the FBI, DEA, HSI, IRS, and USPIS. Criminals routinely use the dark web to sell controlled substances through the mail. As part of the function of this task force, investigators regularly conduct undercover purchases of narcotics from dark web marketplace vendors, to assist in identifying the suspects operating dark web vendor accounts.

The NCIDE conducted an investigation of the defendant. During this investigation, officers claimed to have personally observed the defendant place

parcels containing controlled substances into the mail system.   In April 2020, case agents began purchasing various quantities of drugs from a particular vendor on the dark web. The government believes this vendor is the defendant. The complaint details 10 separate purchases of controlled substances from the person they believe is the defendant. A summary of some of the evidence that the government purports to have is as follows:

1. The agents purchased drugs from a website on the dark web where the seller's screen name was **chlnsaint**, and the agents argue that this name is shorthand for **Chaloner Saintillus**.
2. The agents have video from a post office showing the defendant personally depositing packages containing controlled substances into the U.S. mail.
3. The defendant used a debit card with his own name on it that is tied to his own bank account to ship the parcels.
4. The defendant used his own name, address, telephone number, and e-mail addresses to establish USPS accounts to pay for postage and to track the packages of drugs sent to the undercover agents.
5. On October 8th 2020, law enforcement conducted surveillance and witnessed the defendant exit his residence carrying a USPS Priority Mail envelope. With the envelope in hand, the defendant entered the passenger seat of a BMW. They followed the BMW to the post office, and watched the defendant enter the post office with the envelope in hand.  The agents ultimately retrieved the envelope they say they defendant deposited into the mail system, and it contained drugs.

The government arrested the defendant at his home Florida and executed a search warrant there, and discovered other evidence that purportedly ties the defendant to the crimes he is being charged with.

**Sovereign Citizen Defense Begins**

On November 20, 2020, the defendant appeared in the Southern District of Florida in case number 20-mj-08364-DLB for his identity hearing in this case (ECF Doc. 22-1, p. 3). The name on the birth certificate the defendant has repeatedly filed as an exhibit with this court in various filings is Chaloner Saintillus. In court, the defendant introduced himself as "Shalam Ali El Bey, and I have power of attorney of the all-capital petitioner straw-man named Chaloner Saintillus, and I am proclaiming my status forever Moorish American." (ECF Doc 22-1, pp 3-4). During the hearing, the defendant disrupted the proceedings, was cautioned that he could be held in contempt, provided explanations about why he was at the post office, and admitted to being the owner of a flash drive containing crypto currency that is relevant to this case. (ECF 22-1, p 5-33). The court in the Southern District of Florida ordered the defendant be detained and transported to the Eastern District of California.

**Apppearance in the Eastern District of California and Eventual Request for Pro Se Status**

The matter was scheduled for March 24, 2021. On that day, the court was informed by the Sacramento County jail that the defendant refused to leave his cell for the hearing. The matter was continued to March 25, 2021. (ECF Doc. 10).

On March 25, 2021, the federal defender appeared and communicated the defendant's request to appear in person, instead of by Zoom, for a detention hearing (ECF Doc. 12).

On March 26, 2021, the court held a detention hearing in ordered the defendant be detained (ECF Doc. 13).

Between March 27, 2021, and May 4, 2021, the issue of detention was further litigated, and the Court ordered the defendant to continue to be detained.

On June 16, 2021, the Court held a status conference. The defendant wished to represent himself. His lawyer expressed concern about competency. Due to

the defendant's continued interruptions during the hearing, the court advised the parties that future scheduling would be addressed in a forthcoming minute order (ECF Doc. 29).

On June 24, 2021, the court ordered the defendant be committed to BOP for a competency evaluation, and on January 7, 2022, the Court found the defendant to be competent. The defendant requested to represent himself, and the Court granted the request (ECF Doc. 69).

**Defendant Granted Pro Se Status, Mounts Sovereign Citizen Defense, and Self-Representation Status is Terminated.**

> "During the next few weeks, Mr. Bey filed fifteen motions, notices, and other documents. These documents are difficult to understand. Many include cryptic symbols, oddly juxtaposed legal terms and titles, and repeated references to tenets of a Moorish American belief system. See, e.g., ECF No. 71; see also, e.g., *Bey v. State*, 847 F.3d 559, 559–61 (7th Cir. 2017) (describing this belief system and its origins); *Gravatt v. United States*, 100 Fed. Cl. 279, 282–83 (2011) (same). Among other claims, Mr. Bey contests this court's jurisdiction to hear the criminal charges against him, see, e.g., ECF No. 94, accuses a Magistrate Judge of "Perverting the course of Justice" and "Conspiracy to Defraud" by using an electronic signature, ECF No. 72 at 2–3, requests "to provide the court the ability to Balance its Books and close this Matter in its entirety," ECF No. 73 at 1, and asks the court to return cryptocurrency and an identity card he claims the government has seized, ECF No. 79 at 4. He also names the Assistant United States Attorney and Ms. Crager as defendants or respondents. See, e.g., ECF No. 77 at 1. The United States opposed these motions. See Opp'ns, ECF Nos. 80, 83." (ECF Doc 122).

The Court terminated the defendant's self-representation on May 25, 2022. (ECF Doc. 122).

//

//

**The Undersigned Counsel has Concluded there has been a Complete Breakdown in the Attorney-Client Relationship such that it is Impossible for It to Continue.**

I was appointed to represent the defendant on June 10, 2022 (ECF Doc. 129). Since that date, the defendant has filed documents and stated publicly in court on several occasions that he does not wish for me to represent him (ECF Docs. 135, 138, 140, 163, 165, 176). Without revealing client confidences, I can state that there has now been a complete breakdown in the attorney-client relationship such that it is impossible for me to continue to represent the defendant.

### III.
### LAW AND ARGUMENT

Withdrawal of counsel is governed by the Rules of Professional Conduct of the State Bar of California and the Local Rules of Practice for the United States District Court, Eastern District of California ("L.R."). L.R. 182(d) states:

> Unless otherwise provided herein, an attorney who has appeared may not withdraw leaving the client in propria persona without leave of court upon noticed motion and notice to the client and all other parties who have appeared. The attorney shall provide an affidavit stating the current or last known address or addresses of the client and the efforts made to notify the client of the motion to withdraw. Withdrawal as attorney is governed by the Rules of Professional Conduct of the State Bar of California, and the attorney shall conform to the requirements of those Rules. The authority and duty of the attorney of record shall continue until relieved by order of the Court issued hereunder. Leave to withdraw may be granted subject to such appropriate conditions as the Court deems fit.

Rule 1.16 of the Rules of Professional Conduct of the State Bar of California provides the rules for terminating representation. These include bases for mandatory withdrawal as well as bases for permissive withdrawal. Rule 1.16(b)(4) permits an attorney to withdraw if the client renders it unreasonably difficult for

- 6 -

the lawyer to carry out the representation effectively. Rule 1.16(b)(6) permits an attorney to withdraw if the client knowingly and freely assents to termination of the representation.

### A.     Withdrawal Is Appropriate Pursuant to Rule 1.16.

In deciding whether to allow an attorney to withdraw, courts have considered 1) the reasons why withdrawal is sought; 2) the prejudice withdrawal may cause to other litigants; 3) the harm withdrawal might cause to the administration of justice; and 4) the degree to which withdrawal will delay the resolution of the case." *Canandaigua Wine Co., Inc. v. Moldauer*, No. 1:02-cv-06599 OWW DLB, 2009 WL 89141, at *1 (E.D. Cal. January 14, 2009). The specific facts which form the basis for counsel's request for permission to withdraw pursuant to Rule 1.16 are confidential and required to be kept confidential pursuant to California Business and Professions Code §6068(e), Rule 1.6 of the California Rules of Professional Conduct, and by the attorney-client privilege (Cal. Evid. C., §§950 *et seq.*). However, in this case, it is not only unreasonably difficult but impossible for the undersigned to continue representing Mr. Saintillus. Mr. Saintillus agrees that there has been a breakdown of the attorney client relationship, and he knowingly and freely assents to termination of the representation. (See Fischer Dec.)

In the event that this court desires further information to ascertain the good faith basis for this motion and for withdrawal, it is respectfully requested that the Court have an *in camera* hearing outside of the presence of all other parties so that the specific facts demonstrating good cause for this withdrawal may be demonstrated to the Court. (*See Manfredi & Levine v. Superior Court* (1998) 66 Cal.App.4th 1128, 1136-1137.)

Counsel does not believe that withdrawal will prejudice any party, harm the administration of justice, or unduly delay a potential resolution of the case.  Mr.

Saintillus qualifies for and will request the substitution of appointed counsel if his request to represent himself if denied. (See Fischer Dec.)

## IV.
## CONCLUSION

The defendant has rendered it not only unreasonably difficult but impossible for counsel to carry out the retention effectively. Counsel therefore respectfully requests that the Court grant counsel's leave to withdraw.

Dated:  December 30, 2022     LAW OFFICES OF DAVID D. FISCHER, APC

/S/ David D. Fischer
DAVID D. FISCHER
Attorney for Defendant
CHALONER SAINTILLUS