PHILLIP A. TALBERT
United States Attorney
SAM STEFANKI
FRANK J. RIEBLI
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00213-KJM |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS JAIL CALLS |
| v. | |
| CHALONER SAINTILLUS, | DATE: January 23, 2023<br>TIME: 9:00 a.m. |
| Defendant. | COURT: Hon. Kimberly J. Mueller |

## I.   INTRODUCTION

Defendant Chaloner SAINTILLUS has moved to suppress evidence of his own recorded statements in telephone calls he made from the Sacramento County Jail because, he claims, they were obtained in violation of state, federal, and constitutional law governing wiretaps. SAINTILLUS is incorrect. First, the law in the Ninth Circuit is clear: detainees in SAINTILLUS's position have no reasonable expectation of privacy in the calls they make through that system. This is particularly true where, as here, the parties to each call are warned before the call begins that the calls are not private and may be monitored and recorded. Second, the California Electronic Communications Privacy Act ("Cal ECPA") does not apply in federal court, does not impose on either the government or the Sacramento County Jail the limitations SAINTILLUS claims, and does not create an expectation of privacy in calls made over the jail's phone system. Third, the federal wiretap statute does not apply to recorded jail calls

in this situation. For these reasons, the government asks the Court to deny SAINTILLUS's motion.[1]

Granting SAINTILLUS's motion not only would affect the admission of evidence in this case, but would reverberate across the Eastern District of California. SAINTILLUS is asking the Court to make it unlawful for any jail or prison in the Eastern District of California to monitor inmates' outbound calls using the jail's phone system. The consequences for law enforcement and the security of those institutions and the people in them would be far-reaching, and SAINTILLUS has not pointed the Court to a single Ninth Circuit decision that supports such a change. To the contrary, the only case he cites, Van Poyck, reaches the opposite conclusion. He argues that the 2016 Cal ECPA statute undermines Van Poyck's holding. It doesn't. District Courts (including this one) have continued to rely on Van Poyck even after 2016. Indeed, in June 2022, another judge in this district rejected the same arguments SAINTILLUS makes. The Court should reject them again here and deny his motion.

## II.   FACTS

On March 26, 2021, the Court ordered that SAINTILLUS remain detained pending the outcome of these proceedings. Since that time, he has been housed at the Sacramento County Jail. That facility maintains a telephone system for inmates and detainees to use to make phone calls. In order to use the jail's phones, the detainee must register, which involves creating a personal identification number ("PIN") that he uses each time he makes a call. See Decl. of Frank Riebli Ex. A (Test. of Sacramento County Sheriff's Deputy Vyacheslov Kripunov on June 29, 2022 in United States v. Long, 18-CR-256 JAM, ECF 261 at 97-99). And each time he makes a call, the system warns him that his call is not private and that it will be monitored and recorded.

Between March 26, 2021 and June 28, 2022, the jail used a system provided by IC Solutions. Riebli Decl. ¶ 2. That system included the following script at the beginning of every call:

*Press 1 for English.*

*The time is* [time of day].

---

[1] At this point, the government does not intend to use any of SAINTILLUS's jail calls during the presentation of its case in chief. It may use one or more calls to impeach SAINTILLUS if he elects to testify in his own defense.

1     *Please enter your PIN number, followed by the pound sign.*

2     *After the tone, please say* [word or phrase].[2]

3     *Press zero to make a pre-paid call . . .*

4     *For calls within the United States, Canada, and the Caribbean, please enter the area code, prefix, and number.*

6     [the called party answers]

7     *Hello, you have a call at no expense to you from* [name], *an inmate at Sacramento County Main Jail. To accept this call, press or say 'Five.' To refuse this call, hang up now. To block this call and all future calls, press or say 'Nine.'*

10     [if the call is accepted]

11     *This call will be recorded and is subject to monitoring at any time. Thank you for using IC Solutions. You may begin speaking now.*

13 Since approximately June 29, 2022, the jail has used a Securus system, which includes the following script at the beginning of every call:

15     *Press 1 for English.*

16     *For a collect call, press 1.*

17     *For a debit call, enter your PIN number now.*

18     *Please enter the area code and phone number you are calling now.*

19     *You have* [statement of balance of funds remaining]

20     *This call will cost* [statement of cost of call] *per minute, plus any applicable federal, state and local taxes.*

22     *This call is not private. It will be recorded and may be monitored. If you believe this should be a private call, please hang up and follow facility instructions to register this number as a private number.*

25     *You may hear silence during the acceptance of your call. Please continue to hold.*

26     [phone rings]

---

[2] The IC Solutions system used voice-identification, based on words or phrases the detainee recorded when he set up his account, to ensure that it was the correct detainee initiating the call.

> *Hello, this is a free call from* [name]*, an incarcerated individual at Sacramento County Main Jail.  This call is not private.  It will be recorded and may be monitored.  If you believe this should be a private call, please hang up and follow facility instructions to register this number as a private number.*
>
> *To accept this free call, press 1.  To refuse this free call, press 2.  If you would like to permanently block your number from receiving calls from this facility, press 6.*
>
> *Thank you for using Securus.  You may start the conversation now.*

Riebli Decl. ¶ 3.

As the prompts indicate, SAINTILLUS had the ability to register certain phone numbers as private, and SAINTILLUS did so – he registered his attorney's number as private – because the government obtained truncated recordings of those calls as well.  The only part that was recorded as to those calls was the call header:

> *For English, press 1*
>
> *For a collect call . . .*
>
> *Enter your PIN number now.*
>
> *Please enter the area code and phone number you are calling now.*
>
> *This is a private call.  It will not be recorded and cannot be monitored.  You may hear silence during the acceptance of your call.  Please continue to hold.*  [end of recording]

Both systems (IC Solutions and Securus) recorded each call, and associated the calls with the inmate who made them through the PIN he used to access the system.  The government obtained SAINTILLUS's calls in batches over time and produced them in batches over time.  According to the call indices – which the government also produced at SAINTILLUS's request – SAINTILLUS made approximately 977 calls using the IC Solutions system, and approximately 623 calls using the Securus system, of which 117 were marked as privileged and appear not to have been recorded.  Riebli Decl. ¶ 2. This means that SAINTILLUS was warned at least 1,483 times that his non-private calls were being recorded, and at least 117 times that certain calls were not being recorded.

SAINTILLUS has not submitted a declaration stating that he subjectively believed that any of his recorded calls were private.

Gov't Opp'n to Mot. to Suppress

4

### III. DISCUSSION

#### A. The Seizure of SAINTILLUS's Jail Calls Did Not Violate the Fourth Amendment.

SAINTILLUS raises state and federal statutory claims and a federal constitutional claim. None has merit. First, the routine recording of SAINTILLUS's outbound calls using the jail's telephone system does not implicate his Fourth Amendment right to privacy. The Fourth Amendment only protects those areas in which a person has an actual subjective expectation of privacy, and in which society is prepared to recognize that expectation. Katz v. United States, 389 U.S. 347, 360 (1967); United States v. Van Poyck, 77 F.3d 285, 290-91 (9th Cir. 1996). Here, SAINTILLUS had neither. There is no way he could have had an actual subjective expectation of privacy in his calls. Every single time he made a phone call using the jail's phone system, he was warned that his call would be recorded and monitored. He received that warning approximately 1,483 times. Even assuming he didn't believe the warning the first time he heard it, he must have begun to believe it the second time he heard it. There could not have been any doubt after the third. Indeed, SAINTILLUS switches from English to Haitian Creole to talk with his family members when the context of those calls indicates that he is discussing his case with them. This indicates that SAINTILLUS understood that his calls were being recorded and monitored, and that he was taking steps to try to evade that monitoring by speaking in a language he thought the monitors wouldn't understand. Moreover, the fact that he registered at least one phone number (his attorney's) as a private number so that calls to that number would not be recorded confirms his understanding that his other calls were being recorded.

Not only did SAINTILLUS not have a subjective expectation of privacy, there would be no objective expectation of privacy in those calls because "no prisoner should reasonably expect privacy in his outbound telephone calls." Van Poyck, 77 F.3d at 290-91. See also Jayne v. Bosenko, 2014 WL 2801198, at *13 (E.D. Cal. Jun. 19, 2014) (Berzon, J.) ("Pretrial detainees and prisoners, however, do not enjoy the same constitutional rights as unincarcerated individuals. The fact of confinement as well as the legitimate goals and policies of the penal institution limit the constitutional rights that detainees and prisoners retain. Consistent with this principle, the Ninth Circuit has held that an expectation of privacy in outbound calls from prison is not objectively reasonable, and that the recording of such calls does not violate the Fourth Amendment.") (internal quotation marks and citations omitted). Inmates'

and detainees' privacy rights are "severely curtailed." Van Poyck, 77 F.3d at 291; Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("Society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell."); United States v. Jackson, 866 F.3d 982, 985-86 (8th Cir. 2017) (holding that a person serving a term of supervised release and living at a residential re-entry center did not have a reasonable expectation of privacy in the contents of his cell phone where a term of his release was that he submit to warrantless searches and the RRC prohibited residents from possessing phones).

In Van Poyck, the Ninth Circuit addressed exactly the issue that SAINTILLUS raises in his motion. There, the defendant asked the District Judge to suppress his jail calls because, he said, they were obtained in violation of the Fourth Amendment and the federal wiretap statute. 77 F.3d at 290. The Ninth Circuit affirmed denial of the motion. First, the court held that Van Poyck couldn't have had a subjective expectation of privacy because he was warned (through intake paperwork and a sign on the wall) before he made his first call that the calls would be recorded and monitored. Id. Second, the court held, "even if Van Poyck believed his calls were private, no prisoner should reasonably expect privacy in his outbound telephone calls." Id. at 290-91. Third, even if recording the calls implicated the Fourth Amendment, institutional security concerns justified the practice and made them a reasonable intrusion on Van Poyck's privacy interest. Id. at 291.

For these same reasons, SAINTILLUS's Fourth Amendment claim must fail. He cannot credibly claim a subjective expectation of privacy, and hasn't done so in any case. Nor is that interest one society would be prepared to accept now. And as Deputy Krupinov testified recently, there are obvious and straightforward institutional security concerns that make recording and monitoring a reasonable practice even if SAINTILLUS had a privacy interest in his jail calls. Riebli Decl. Ex. A at 104-05.

SAINTILLUS argues that Van Poyck is outdated, and that a 2016 California statute, the California Electronic Communications Privacy Act ("Cal ECPA"), Cal. Penal Code § 1546, et seq, creates an objectively- (and thus also subjectively-) reasonable expectation of privacy in jail call. Mot. at 3. He is incorrect. First, California statutes do not create Fourth Amendment rights. In federal court, federal statutes and the federal courts' interpretations of the U.S. constitution govern. And the Ninth Circuit has been clear that prisoners do not enjoy any privacy rights in their jail calls. Van Poyck, 77

F.3d at 290-291.  Contrary to SAINTILLUS's suggestion, Cal ECPA did not abrogate or weaken Van Poyck's holding.  See, e.g., United States v. Cox, 755 F. App'x 720, 721 (9th Cir. 2019) (citing and quoting Van Poyck in a summary affirmance of a denial of a motion to suppress a recorded jail call); Gomez v. Alameda Co. Sheriff's Dept., 2021 WL 431873, at *4 (N.D. Cal. Feb. 8, 2021) (citing Van Poyck and saying, "An expectation of privacy in outbound calls by an inmate is not objectively reasonable, and the recording of such calls does not violate the Fourth Amendment."); Shoop v. Orange Co. Sheriff's Dept., 2019 WL 3312452, at *2 (C.D. Cal. May 17, 2019) (noting that the detainee there had no expectation of privacy in outbound calls from the jail, and citing Van Poyck).  Indeed, in United States v. Long, 2:18-CR-0256 JAM-1, another district judge in this district rejected the same arguments SAINTILLUS is making here.  See id. ECF 159, 178, and 211.

Second, even if Cal ECPA's provisions were relevant in the overall analysis – and they aren't – the statute doesn't say exactly what SAINTILLUS claims.  SAINTILLUS argues, for example, that Cal ECPA "requires the defendant to specifically consent to sharing his jail calls with the government," Mot. at 3:20-22 and 5:1-5, meaning the United States government, but does not cite to any part of Cal ECPA that contains such a requirement.  To the contrary, by its own terms, Cal ECPA's restrictions apply only to State government entities, not to federal government entities.  See Cal. Pen. Code § 1546(i) (defining "government entity" as "a department or agency of the state or a political subdivision thereof").  Cal ECPA thus does not purport to impose on the United States Attorney's Office any obligation to obtain SAINTILLUS's consent prior to receiving or retaining his recorded jail calls.

SAINTILLUS might claim that, even if Cal ECPA doesn't (and can't) require federal government entities to do anything, it required the Sacramento County Sheriff's Department to obtain his consent prior to sharing the calls with a federal agency.  If this were true – and it's not – a potential violation of state law would not constitute a Fourth Amendment violation for the reasons stated above.  In any case, Cal ECPA appears to be silent on the issue of a State government entity sharing recorded jail calls with a federal agency.  Further, to the extent that Cal ECPA requires a State government entity to obtain consent from the sender or recipient of a communication, that requirement does not apply where the State government entity receiving the communications is a "federal, state, or local prison [or] jail," and the parties to the communication "were informed, prior to the communication, that the service

GOV'T OPP'N TO MOT. TO SUPPRESS                                7

provider may disclose the information to the government entity." Cal. Pen. Code § 1546.1(g)(4). As the automated scripts show, both parties to SAINTILLUS's calls had notice that the calls would be recorded and monitored and were given the option to discontinue the calls. This is consent enough, and Cal ECPA does not require the Sheriff to obtain any further consents.[3]

Federal law is clear. SAINTILLUS did not have a reasonable expectation of privacy in calls he made using the jail's phone system. The 2016 California statute does not create a reasonable expectation of privacy. Nor does the statute prohibit the jail from providing recordings of those calls to a federal agency or limit the federal agency's use of them. Even if it purported to place such limits on the jail's handling of the calls, those limits do not broaden SAINTILLUS's Fourth Amendment protections. For these reasons, the Court should deny his motion.

**B.     The Government Was Not Required to Obtain a Title III Wiretap to Collect Recordings of SAINTILLUS's Jail Calls.**

SAINTILLUS also argues that the government was required to obtain wiretap authority under 18 U.S.C. § 2511 in order to record or receive his jail calls "unless a recognized exception applies, and no such exception applies in this case." Mot. at 2:21-23. That is incorrect. The wiretap statute specifically provides that "[i]t shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). The Ninth Circuit has held that this exception from the wiretap requirement applies to inmates who use jail phone systems, knowing that the jail will monitor or record the calls. Van Poyck, 77 F.3d at 292. See also United States v. Amen, 831 F.2d 373, 379 (2d Cir. 1987) (finding that an inmate's knowing use of monitored prison phones constituted implied consent under § 2511(2)(c), and noting that "Congress intended the consent requirement to be construed broadly"). Here, as noted above, both SAINTILLUS and the persons he called impliedly consented to have their conversations monitored and recorded and when they proceeded with their calls after being notified of the recording and given the option to discontinue the call.

---

[3] SAINTILLUS would fare no better if he were to argue that the Sheriff was a "service provider," as Cal ECPA uses that term. See Cal. Pen. Code § 1546(j). In that instance, the Sheriff did not provide the communications to a "government entity" because federal agencies are not included within that definition.

In addition, the wiretap statute, by its own terms, does not apply to any "electronic, mechanical, or other device" used to intercept communications if that equipment is used by "an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a). Courts have held that this provision exempts jail and prison phone monitoring systems where monitoring phone calls is part of a regular practice at the institution. See Van Poyck, 77 F.3d at 291-92; United States v. Robinson, 2008 WL 5381824, at *12-13 (S.D. Fla. Dec. 19, 2008) (relying on §§ 2511(2)(c) and 2510(5)(a) to deny a motion to suppress based on jail calls); United States v. Noriega, 764 F. Supp. 1480, 1491 (S.D. Fla. 1991) (same). And they have held that, absent evidence to the contrary, a court may presume that recording and monitoring of inmate calls through the jail's phone system is pursuant to routine jail policy. Noriega, 764 F. Supp. at 1491. Here too, the evidence supports the finding that recording is a regular practice at the jail. It is regular enough that the admonitions about it are built into the phone system itself, and the system is designed to allow people to opt out by discontinuing their calls. SAINTILLUS does not contend otherwise. He does not argue or aver, for example, that the jail was monitoring only his calls and not other inmates' calls as well.

For either or both reasons – SAINTILLUS consented to monitoring, and/or the law enforcement exception applied – the government was not required to obtain a Title III wiretap warrant before collecting SAINTILLUS's recorded jail calls. There was thus no federal statutory violation in obtaining them, and accordingly, no basis to suppress them as evidence.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny SAINTILLUS's motion.

Dated: January 13, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ Frank Riebli
SAM STEFANKI
FRANK RIEBLI
Assistant United States Attorneys