1      UNITED STATES DISTRICT COURT

2      EASTERN DISTRICT OF CALIFORNIA

3                  --oOo--

4  UNITED STATES OF AMERICA,    ) Case No. 2:20-CR-00213-KJM-1
                                )
5                               ) Sacramento, California
                  Plaintiff,    ) April 6, 2023, 10:00 a.m.
6                               )
          v.                    ) Re: Change of Plea Hearing
7                               )
   CHALONER SAINTILLUS,         )
8                               )
                  Defendant.    )
9

10              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE KIMBERLY J. MUELLER
11          CHIEF UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Government:     U.S. DEPARTMENT OF JUSTICE by
                            MR. ROSS PEARSON,
14                          ASSISTANT U.S. ATTORNEY
                            501 I Street, Suite 10-100
15                          Sacramento, California  95814

16  For the Defendant:      LAW OFFICES OF DAVID D. FISCHER by
                            DAVID D. FISCHER
17                          5701 Lonetree Boulevard, Suite 312
                            Rocklin, California  95765

18

19              MARYANN VALENOTI, RMR, CRR
                    Official Court Reporter
20                  501 I Street, Suite 4-200
                    Sacramento, CA 95814
21              MValenotiRMRCRR@gmail.com
                    (916) 930-4275

22

23  Proceedings reported via mechanical steno - transcript produced
    via computer-aided transcription

24

25

1        SACRAMENTO, CALIFORNIA, THURSDAY, APRIL 6, 2023

2                              --o0o--

3        (In open court.)

4              THE CLERK:  All rise.  Court is now in session.

5              Chief Judge Kimberly J. Mueller now presiding.

6              Thank you.  You may be seated.

7              Calling criminal case 20-213, United States versus

8    Chaloner Saintillus.  This is on for a change of plea.

9              THE COURT:  All right.  Good morning.  Appearances,

10   please, for the Government.

11             MR. PEARSON:  Good morning, Your Honor.  Ross Pearson

12   for the Government.

13             THE COURT:  Good morning, Mr. Pearson.  And for

14   Mr. Saintillus?

15             MR. FISCHER:  Good morning, Your Honor.  David Fischer

16   for Mr. Saintillus.  He is present in custody.

17             THE COURT:  Good morning, Mr. Fischer and

18   Mr. Saintillus.

19             So I understand that Mr. Saintillus is prepared to

20   enter a plea of guilty this morning, correct?

21             MR. FISCHER:  That's my understanding.

22             THE COURT:  And I'm looking at the filing on April 3,

23   and I also received a memorandum concerning elements,

24   penalties, factual basis, signed by Mr. Fischer and

25   Mr. Saintillus on April 3.

1          MR. FISCHER:  There should be one that's signed

2    April 3 at 4:16.

3          THE COURT:  Correct, that's the one I have.  You have

4    that as well, Mr. Pearson?

5          MR. PEARSON:  Yes, Your Honor.

6          THE COURT:  So, Mr. Saintillus, are you confirming you

7    are prepared to enter a plea of guilty to all 12 counts in the

8    superseding indictment?

9          THE DEFENDANT:  Can I address the Court?

10          THE COURT:  Well, can you respond to my question?  I

11    see that you signed something suggesting that there's something

12    on the docket saying that you do wish to enter a plea of

13    guilty.  So first answer my question, is that correct?

14          THE DEFENDANT:  My initial view on this was a plea of

15    no contest.

16          THE COURT:  All right.  So I had seen some e-mail

17    correspondence with the courtroom deputy, and so I had

18    understood that.  My understanding is that at this point you

19    are prepared to proceed with the plea of guilty, but I want to

20    make clear the record with respect to a possible no contest

21    plea, which is allowed by Rule 11.  It's in the discretion of

22    the District Court, but in checking the case law, I need to

23    think about the reasons for why I would accept a no contest

24    plea, as opposed to a not guilty plea, and I want to make clear

25    that I don't have a standing policy to not accept nolo pleas,

1   but I do think about whether or not there are compelling

2   reasons to do so and if it would be in the public interest.  I

3   think the case law says that's what I need to be thinking

4   about.  So here I'm not aware of any compelling reason or how

5   the public interest would be served.  I understand the

6   Government's position to be that it would oppose the Court's

7   accepting a nolo plea, correct, Mr. Pearson?

8           MR. PEARSON:  Correct, Your Honor.

9           THE COURT:  But ultimately it's up to me.  I have the

10  discretion.

11          Mr. Fischer, are you aware of any compelling reason or

12  a public interest factor that would support the Court's

13  exercising its discretion to accept a nolo plea here?

14          MR. FISCHER:  I don't.  I just know Mr. Saintillus's

15  desire to enter a no contest plea.

16          THE COURT:  I understand that.  So I wanted to make

17  clear I'm not rejecting it out of hand, but I have to think

18  about whether or not I would accept it, and I'm not aware of a

19  reason here.

20          Mr. Saintillus, do you want to confer with Mr. Fischer

21  briefly and let him know if you are saying that there is a

22  compelling reason or a public interest factor, just so it's

23  clear, the compelling reasons can be a medical condition that

24  the trial would be impeded, that there's some complexity in

25  trial that creates challenges.  Some corporate defendants have

1　ultimately persuaded the Court given that no one person in a

2　corporation may be the person to enter a plea of guilty, that a

3　nolo plea makes sense.  Here you will be free to appeal

4　regardless.  Your right to appeal will be completely

5　unfettered.  So is there any compelling reason or public

6　interest factor you want to share with Mr. Fischer at this

7　time, Mr. Saintillus, so that he could make an argument taking

8　account of the applicable law?

9　　　　　　THE DEFENDANT:  Well, Mr. Fischer was advising me to

10　plead guilty, but in my heart I feel that it's not what I

11　really wanted to do.  I wanted to plead no contest.

12　　　　　　THE COURT:  I understand --

13　　　　　　THE DEFENDANT:  That's what I strongly feel.

14　　　　　　THE COURT:  I understand that's what you want.  I have

15　to think about the law that applies to you and to every other

16　person, so that's why I'm asking about the compelling reason.

17　I understand you believed there was a compelling personal

18　reason, but in terms of what the law recognizes, I'm not

19　hearing a compelling reason.  I'm also not hearing that the

20　public interest weighs in favor of a nolo plea.  So courts --

21　other courts before me have considered this question, and when

22　it's purely a defendant's desire, that is not sufficient to

23　support the applicable factors.  I don't have a default policy

24　one way or the other.  So is there anything that you want to

25　share with Mr. Fischer to argue compelling reason or public

1  interest?

2  THE DEFENDANT:  Well, then I would feel out of the

3  need of necessity, then I would plead guilty.

4  THE COURT:  All right.  Under those circumstances,

5  Mr. Pearson, do you believe the Court can proceed with the

6  standard plea colloquy?

7  MR. PEARSON:  I think we should see what his answers

8  to the colloquy are.

9  THE COURT:  Of course, but I mean just start with it.

10  MR. PEARSON:  To start with, yes.  If I could also

11  just add some reasons.

12  I think this is not in the interest of justice or in

13  the public's interest to take a nolo plea.  In addition to all

14  the factors that the Court highlighted, Mr. Saintillus, if he

15  plead nolo, would not actually be admitting his guilt.  His

16  plea wouldn't be able to be used against him in the future

17  proceedings in the Ninth Circuit.  There would be an appearance

18  of someone going to prison having not been found guilty or

19  admitted guilty, which is another factor courts point to in

20  order not to take nolo pleas.

21  As the Court pointed out, there is nothing

22  particularly extraordinary, special, or compelling about this

23  case.  It is a straightforward drug trafficking case.

24  Mr. Saintillus sold drugs on the Internet.  The trial shouldn't

25  be unusually complex or difficult to administer justice, so we

1   would ask the Court to reject Mr. Saintillus's request to plead
2   nolo.

3           THE COURT:  All right.  I understand those arguments.
4   It is the case that a nolo plea would be treated the same as a
5   guilty plea for purposes of sentencing.

6           All right, Mr. Fischer, anything else you'd like to
7   say; do you believe I can proceed?

8           MR. FISCHER:  Yes, I believe you can proceed.

9           THE COURT:  All right.  So Mr. Saintillus, I'm
10  prepared to go through the Rule 11 colloquy.  Federal Rules of
11  Criminal Procedure requires that I ask you a number of
12  questions, and there are additional questions based on the case
13  law, so I'll listen carefully to each of your answers.

14          At the beginning of the plea I need to advise you that
15  I'm going to ask all these questions, and if at any point you
16  don't understand the question, or for any reason you wish to
17  take a break, to think twice about what's going on here this
18  morning and what you are doing, if you wish to consult with Mr.
19  Fischer, really for any reason whatsoever, please let me know
20  because it is essential that you understand everything that's
21  happening here today, and that before you answer a question,
22  you feel confident in your answer; do you understand all of
23  that?

24          THE DEFENDANT:  Uh-huh.

25          THE COURT:  I need you to say yes or no so I'm clear

1   on your answer.

2           THE DEFENDANT:  Yes.

3           THE COURT:  All right.  Now, I will also ask the

4   courtroom deputy to administer an oath, and a person can either

5   swear or affirm.  Do you have a preference; do you wish to

6   swear or affirm?

7           THE DEFENDANT:  Affirm.

8           THE COURT:  Affirm.  All right, Ms. Schultz, can you

9   please administer the oath asking Mr. Saintillus to affirm?

10          MR. FISCHER:  Yes, Your Honor.

11          Defendant, affirmed.

12          THE DEFENDANT:  Say it again.

13          Defendant, affirmed.

14          THE DEFENDANT:  I affirm I will tell the truth, the

15  whole truth under the laws of the United States.

16          THE CLERK:  Thank you.  You may put your hand down.

17          THE COURT:  All right.  Now that you've entered that

18  affirmation, do you understand that your answers to my

19  questions could be used against you in a prosecution for

20  perjury or making a false statement if you do not answer me

21  truthfully?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that you are offering to

24  enter what we call an open plea without any agreement with the

25  Government, correct?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Just a few background questions.  What is

3    your full and true name for the record?  I understand that you

4    use another name than what's on the Court's docket, but just

5    help me understand what is your full and true name for the

6    record?

7           THE DEFENDANT:  My birth name is spelled

8    C-H-A-L-O-N-E-R.  Last name is spelled S-A-I-N-T-I-L-L-U-S.

9           THE COURT:  All right.  How old are you?

10          THE DEFENDANT:  Just turned 35 in January.

11          THE COURT:  This past January?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  How many years of school have

14   you completed?

15          THE DEFENDANT:  I did one or two years of college.

16          THE COURT:  What is your occupation when you're

17   working?

18          THE DEFENDANT:  I did security.

19          THE COURT:  Had you ever been treated for any mental

20   illness or psychiatric condition?

21          THE DEFENDANT:  No.

22          THE COURT:  Have you been treated for substance abuse,

23   drug or alcohol abuse?

24          THE DEFENDANT:  No.

25          THE COURT:  Have you consumed any prescription

1    medication in the last 24 hours?

2             THE DEFENDANT:  I had a DUI in the past, that's all,

3    but no.

4             THE COURT:  And you didn't take any program after

5    that?

6             THE DEFENDANT:  Just the usual standard programs that

7    comes with the DUI.

8             THE COURT:  But there's nothing about the use of

9    alcohol that's permanently affected your ability to understand

10   what's going on around you?

11            THE DEFENDANT:  No.

12            THE COURT:  Have you consumed any prescription

13   medication in the last 24 hours?

14            THE DEFENDANT:  No.

15            THE COURT:  Have you consumed any narcotic or alcohol

16   in the last 24 hours?

17            THE DEFENDANT:  No.

18            THE COURT:  Did you receive a copy of the superseding

19   indictment, that's the charging document filed on October 27 of

20   2022?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Did you have a chance to fully review all

23   of the charges in that document?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Have you had a chance to fully consider

1  all of your possible responses to the charges, including any

2  defenses you may have in consultation with Mr. Fischer?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Are you satisfied with the advice,

5  counsel, and representation that Mr. Fischer has given you in

6  this case?

7         THE DEFENDANT:  Not completely.

8         THE COURT:  I understand that, and I understand at

9  times you've asked to revert to representing yourself.  Let me

10 ask you this:  Have you had the opportunity to discuss all of

11 the charges with Mr. Fischer?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Have you had the opportunity to discuss

14 possible defenses to all of the charges with Mr. Fischer?

15        THE DEFENDANT:  Not completely, I don't think so.

16        THE COURT:  All right.

17        THE DEFENDANT:  But I would say yes for the most part.

18        THE COURT:  All right.  Has Mr. Fischer made himself

19 available to you to talk about this matter?

20        THE DEFENDANT:  Pretty -- yes.

21        THE COURT:  And he did -- in terms of this memorandum

22 that was signed on April 3 at 4:16 p.m., it appears that Mr.

23 Fischer talked through that with you.

24        THE DEFENDANT:  Yes.

25        THE COURT:  All right.

1          THE DEFENDANT:  We reviewed it.

2          THE COURT:  Pardon me?

3          THE DEFENDANT:  We reviewed it.

4          THE COURT:  All right.  Do you understand that Mr.

5     Fischer has had discussions with the prosecutor, Mr. Pearson

6     and perhaps also Mr. Stefanki, about your decision to enter a

7     plea of guilty today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you believe that Mr. Fischer has

10    told you everything you need to know about the attorneys's

11    discussions?

12         THE DEFENDANT:  I think so.

13         THE COURT:  What was that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  Let me ask you, the attorneys,

16    this:  I have previously found that Mr. Fischer is able to

17    represent Mr. Saintillus as required, to provide the level of

18    defense required by the Constitution, and so I believe given

19    Mr. Saintillus's answers, that they are sufficient for me to

20    proceed with the Rule 11 colloquy taking account of the prior

21    record, including records created under seal, in camera.  Any

22    concerns, Mr. Pearson?

23         MR. PEARSON:  No, Your Honor.

24         THE COURT:  Mr. Fischer?

25         MR. FISCHER:  No, Your Honor.

1           THE COURT:  Mr. Saintillus, let me ask you this:  Are

2   you pleading today because that's what you want to do?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Has anyone made any promises to you to get

5   you to plead guilty here today?

6           THE DEFENDANT:  No.

7           THE COURT:  Has anyone threatened you, a family member

8   or close friend, in order to get you to plead guilty?

9           THE DEFENDANT:  No.

10           THE COURT:  Do you understand the offenses you are

11   willing to plead guilty to are felony offenses, each count

12   charged as a felony, and based on the statute passed by

13   Congress, the exposure in terms of prison time is at least a

14   year; you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  You probably understand at this point, but

17   I need to review with you here today, a felony conviction

18   carries with it very serious consequences, including the

19   possible deprivation of valuable civil rights.  Upon entry of

20   convictions, which will happen if I accept your pleas, you

21   could be looking at the loss of the right to vote depending on

22   the state in which you reside, the loss of the right to sit on

23   a jury, to run for public office, to carry a firearm ever

24   again, also possibly the right to receive federal benefits.  Do

25   you understand all of those possible consequences?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you currently on probation or parole

3     in connection with any other case?

4          THE DEFENDANT:  No.

5          THE COURT:  I ask everyone this question because I

6     can't make assumptions simply based on seeing you here today.

7     If you're not a citizen, do you understand that a plea of

8     guilty can affect citizenship status resulting in denial of

9     naturalization, exclusion from this country or deportation?

10         THE DEFENDANT:  Yes.

11         THE COURT:  In terms of the penalties associated with

12    the charges, they are covered in the memorandum that you and

13    Mr. Fischer signed.  They are the same on each count, correct,

14    Mr. Pearson?

15         MR. PEARSON:  Yes, Your Honor.

16         THE COURT:  So the maximum sentence per count is 20

17    years incarceration, a fine of up to $1 million or both fine

18    and imprisonment, supervised release of at least three years up

19    to life.  There is also a mandatory special assessment of $100

20    per count.  Do you understand those are the penalties and that

21    is the assessment associated with each charge?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Supervised release is what we call the

24    period of time following incarceration that a person serves

25    subject to conditions with supervision by a probation officer.

1   Any violation of a condition can result in the person being

2   returned to prison to serve additional time.  In this case it

3   appears supervised release is mandatory.  I can't predict that

4   entirely, but that is what the statute says.  And so if during

5   supervised release you were revoked for a violation, you could

6   be looking at up to additional three years per count

7   incarceration; do you understand that?

8               THE DEFENDANT:  Yes.

9               THE COURT:  There is also a forfeiture consequence,

10  and that's reviewed in the memorandum that you and Mr. Fischer

11  signed.  Meaning that upon conviction, you could be looking at

12  the forfeiture of assets or a sum of money equivalent to the

13  amount of proceeds obtained as a result of the offense as a

14  consequence, and that's a question I would address at

15  sentencing, if we get there.  Do you understand that forfeiture

16  of assets or funds is also a possible consequence?

17              THE DEFENDANT:  Yes.

18              THE COURT:  There's no restitution, correct,

19  Mr. Pearson?

20              MR. PEARSON:  Correct.

21              THE COURT:  Agreed, Mr. Fischer?

22              MR. FISCHER:  Yes, Your Honor.

23              THE COURT:  Do you have any question about possible

24  consequences at this point, Mr. Saintillus?

25              THE DEFENDANT:  No.

1     THE COURT:  I want to make certain you understand how

2  sentencing will work very briefly.  Sentencing will occur on a

3  date in the future if I do accept your pleas.  Sentencing is

4  covered by the Sentencing Reform Act, that act has created a

5  body called the U.S. Sentencing Commission.  That commission

6  has published guidelines that I must consult, even though they

7  are advisory.  Have you had a chance to consider how the

8  guidelines may apply to your case in conversation with Mr.

9  Fischer?

10     THE DEFENDANT:  I had a few discrepancies about this.

11     THE COURT:  You and Mr. Fischer had some

12  discrepancies?

13     THE DEFENDANT:  Yup.

14     THE COURT:  You understand generally how the

15  guidelines may apply?

16     THE DEFENDANT:  Yes.

17     THE COURT:  All right.  I think that's the -- so you

18  understand the kind of arguments that Mr. Fischer could make,

19  that you could ask him to make at the time of sentencing?

20     THE DEFENDANT:  Yes.

21     THE COURT:  And I will certainly do my best to

22  understand every person's position.  I'll be working with the

23  report from Probation, but ultimately it will be my job to

24  determine the guideline range as a starting point.  I'll do

25  that independently; you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And then once I calculate the guideline

3    range, then I will independently determine, taking account of

4    the entire record before me.  At that time I'll determine

5    whether or not to go outside the range above or below it, and

6    in making that decision, I'll look at the guidelines

7    themselves, which may provide for something called a departure,

8    and I'll also look at the sentencing factors that Congress says

9    I must consider.  So you understand that's the process I'll go

10   through in deciding whether or not to go outside the guideline

11   range to the extent I can under the law?

12         THE DEFENDANT:  Yes.

13         THE COURT:  The factors that Congress has passed asked

14   me to look at your own history and characteristics, the nature

15   of the offense you're saying you are willing to plead guilty

16   to, the offenses and other factors as well; you generally

17   understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that if I accept your

20   pleas here today and then I impose a sentence you don't like,

21   that won't be a reason for you to come back and try to withdraw

22   your guilty pleas if I accept them here today, understood?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Before I review your constitutional

25   rights, have I covered everything required by Rule 11,

1    Mr. Pearson?

2          MR. PEARSON:  Yes, Your Honor.

3          THE COURT:  Mr. Fischer.

4          MR. FISCHER:  Yes, Your Honor.

5          THE COURT:  Mr. Saintillus, I do want to make certain

6    you are clear on your constitutional rights.  You, of course,

7    have the right to stand by the not guilty pleas you previously

8    entered, and if you did that, you could go to a full jury trial

9    and with Mr. Fischer as your attorney, assist in selecting your

10   jury; do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At a jury trial, you would be able to see,

13   hear, and question the Government's witnesses against you, and

14   you could object to any evidence the Government tries to

15   introduce through witnesses or documents; do you understand

16   that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  At a trial you could take the stand and

19   testify in your own defense, but you also could remain silent,

20   and if you remain silent, the Government could not argue an

21   inference of your guilt based on your silence.  Do you

22   understand that essential right?

23         THE DEFENDANT:  Yes.

24         THE COURT:  If you went to trial you could seek from

25   the Court subpoenas.  Those are formal documents to require the

1  testimony of any person you might want to call in a case in

2  defense.  Do you understand that right?

3           THE DEFENDANT:  Yes.

4           THE COURT:  If you went to trial, you, of course,

5  would have the right to insist the Government prove you guilty

6  beyond a reasonable doubt and by competent evidence; do you

7  understand that right?

8           THE DEFENDANT:  Yes.

9           THE COURT:  If you do go forward in a few moments and

10  enter formal pleas of guilty you will no longer be presumed

11  innocent on each of the counts as you still are in the eyes of

12  the Court because you will be telling me that you were, in

13  fact, guilty of the charge in each count.  Do you understand

14  that presumption of innocence that still attaches to you?

15           THE DEFENDANT:  Yes.

16           THE COURT:  With all of these understandings, are you

17  prepared to go forward in a few moments and enter formal pleas

18  of guilty?

19           THE DEFENDANT:  Yes.

20           THE COURT:  All right.  Before I ask you those

21  questions, I need to make certain you do understand each of the

22  elements of the charged offenses.  They are the same for each

23  charge.  I'm going to ask Mr. Pearson to read those into the

24  record.  Are you prepared to do that, Mr. Pearson?

25           MR. PEARSON:  Yes, Your Honor.

1          THE COURT:  All right.

2          MR. PEARSON:  As to each count the Government would

3    prove the following two elements beyond a reasonable doubt:

4    First, on or around the date alleged in each count of the

5    superseding indictment, the defendant knowingly distributed the

6    controlled substance alleged in each count, and second, the

7    defendant knew that the substance he distributed was the

8    substance alleged in that count or some other federally

9    controlled substance.

10          THE COURT:  Mr. Saintillus, do you understand that

11    those are the elements, each one of them, the Government would

12    have to prove for each count if you did go to trial?

13          THE DEFENDANT:  Yes.

14          THE COURT:  I also need to consider if you are

15    admitting to facts to support each of those elements per count.

16    I'm looking at the memorandum you and Mr. Fischer signed.

17    There is a factual basis starting on Page 3 at Line 18 and

18    going through Page 6, Line 2.

19          Here, Mr. Fischer, do you have an understanding, and I

20    could verify with Mr. Saintillus, would he request to rely on

21    the written document or would he request that it be read here

22    in open court?

23          MR. FISCHER:  I think he would request to rely on the

24    written document.

25          THE COURT:  All right.  So, Mr. Saintillus, you heard

1  me, but I need to make certain I understand your position.  You

2  know what I'm talking about when I refer to the factual basis

3  for the plea that you signed on the 3rd at 4:16 p.m.?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you wish that factual basis read into

6  the record, or are you prepared to rely on the written document

7  here today?

8          The key is you have the entire factual basis in mind

9  as you stand here now.  So do you wish it read out loud or are

10 you prepared to rely on the written document?

11         THE DEFENDANT:  I'll rely on the written document.

12         THE COURT:  So you do have clearly in mind everything

13 it says in the factual basis on Pages 3 through 6?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Does that accurately set forth what

16 happened and what you did?

17         THE DEFENDANT:  Nope.

18         THE COURT:  You said no.  All right, in that case, can

19 you tell me, do you disagree with the entire factual basis or

20 is there a portion with which you disagree?

21         THE DEFENDANT:  Yes, I rely on the factual basis.

22         THE COURT:  Pardon me?

23         THE DEFENDANT:  I will rely on the factual basis for

24 the plea.

25         THE COURT:  But here's what I need you to tell me,

1  does that accurately set forth what happened and what you did?

2  THE DEFENDANT:  Yes.

3  THE COURT:  And you are certain about that?

4  THE DEFENDANT:  Yes.

5  THE COURT:  All right.  Any concerns, Mr. Pearson?

6  MR. PEARSON:  No, Your Honor.

7  THE COURT:  Mr. Fischer?

8  MR. FISCHER:  No, Your Honor.

9  THE COURT:  All right.  Mr. Saintillus, I'm now going

10  to go through each of the 12 counts and ask you as to each

11  count so that the record is clear what your plea is.

12  So Count 1, referencing activity on April 16 of 2020,

13  and the controlled substance oxymorphone, how do you plead;

14  guilty or not guilty?

15  THE DEFENDANT:  Guilty.

16  THE COURT:  Count 2, referencing activity on April 22,

17  2020, and the controlled substance heroin and fentanyl, how do

18  you plead; guilty or not guilty?

19  THE DEFENDANT:  Guilty.

20  THE COURT:  Count 3, activity on April 22, also

21  referencing heroin and fentanyl, how do you plead; guilty or

22  not guilty?

23  THE DEFENDANT:  Guilty.

24  THE COURT:  Did you say guilty?

25  THE DEFENDANT:  Guilty.

1          THE COURT:  All right.  Count 4, referencing activity

2     on April 29, 2020, and I should say these are all violations of

3     21 U.S.C. Section 841(a)(1) distribution of a controlled

4     substance; you understand that, correct?

5          THE DEFENDANT:  Uh-huh, yes.

6          THE COURT:  All right.  So Count 4, activity on

7     April 29, 2020 referencing fentanyl, how do you plead; guilty

8     or not guilty?

9          THE DEFENDANT:  Guilty.

10          THE COURT:  Did I finish Count 3?

11          MR. PEARSON:  Yes.

12          THE COURT:  Thank you.  I'm now turning to Count 5,

13     same charge, activity on May 20, 2020 referencing fentanyl, how

14     do you plead; guilty or not guilty?

15          THE WITNESS:  Guilty.

16          THE COURT:  Count 6, referencing activity on June 1 of

17     2020, referencing fentanyl, how do you plead; guilty or not

18     guilty?

19          THE DEFENDANT:  Guilty.

20          THE COURT:  Count 7, activity on June 17, 2020,

21     referencing oxycodone, how do you plead; guilty or not guilty?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  I need to hear that again.

24          THE DEFENDANT:  Guilty.

25          THE COURT:  All right.  Count 8, referencing activity

1    on July 6, 2020, and the controlled substance fentanyl; how do

2    you plead?

3             THE DEFENDANT:  Guilty.

4             THE COURT:  Guilty recorded.  Count 9, activity on

5    July 7, 2020, referencing fentanyl; guilty or not guilty?

6             THE DEFENDANT:  Guilty.

7             THE COURT:  Count 10, activity on August 20, 2020,

8    referencing the controlled substance oxymorphone, how do you

9    plead; guilty or not guilty?

10            THE DEFENDANT:  Guilty.

11            THE COURT:  Count 11, activity on October 21, 2020,

12   referencing oxycodone; guilty or not guilty?

13            THE DEFENDANT:  Guilty.

14            THE COURT:  And Count 12, activity on October 26, 2020

15   referencing fentanyl, how do you plead?

16            THE DEFENDANT:  Guilty.

17            THE COURT:  Guilty.  Having had this exchange with Mr.

18   Saintillus, listened very carefully to his answers, observed

19   his demeanor throughout, I find that unquestionably he is fully

20   competent and capable of entering an informed plea.  I find

21   that his plea on each count is knowing and voluntary.  It is

22   supported by an independent basis in fact regarding each count

23   and the facts to which he's admitted as reflected in the

24   memorandum filed with the Court on Pages 3 through 6.

25            THE DEFENDANT:  Could I make a note?

1          THE COURT:  Hold on one second.  Let me finish.  I do
2     support each of the essential elements of the charged offenses.
3          What you do you want me to know, Mr. Saintillus?
4          THE DEFENDANT:  Like I said previously from when we
5     started, out of the rule of necessity, that is why I'm pleading
6     guilty.
7          THE COURT:  I understand you said that.
8          THE DEFENDANT:  Okay.
9          THE COURT:  And I did hear that earlier.
10         THE DEFENDANT:  Making sure.
11         THE COURT:  So that's a matter of record.
12         THE DEFENDANT:  Okay.
13         THE COURT:  And I think the Court's consideration of
14    that in the context of the possibility of a nolo plea makes
15    clear how I weighed that.  It could be for another Court to
16    decide.
17         All things considered, given the record now before the
18    Court, Mr. Saintillus's solemn responses to my questions in
19    open court, I'm accepting his plea of guilty with respect to
20    Counts 1 through 12 and hearby adjudging him guilty of those
21    counts as reflected in the superseding indictment filed on
22    October 27 of 2022.  So we'll set this now for sentencing.
23         As I mentioned, Probation, the probation office will
24    assist the Court.  There will be a probation officer assigned
25    to write a Presentence Report.  You may provide information to

1    that probation officer.  Mr. Fischer can assist you in doing

2    that.

3         The probation officer will first prepare a draft

4    report.  You and the Government may file informal objections to

5    the draft.  The probation officer will consider those informal

6    objections and then prepare a final report for me.

7         You and the Government may file formal objections to

8    the final report.  At the time of sentencing I will rule on any

9    objections.  I will hear the arguments of the attorneys and

10   I'll give you a chance to address me before I make a final

11   decision.

12        So what date are we offering for sentencing,

13   Ms. Schultz?

14        MR. FISCHER:  July 10, 2023 at 9:00 a.m.

15        THE COURT:  Is that date acceptable, Mr. Pearson?

16        MR. PEARSON:  Yes, Your Honor.

17        THE COURT:  Mr. Fischer?

18        MR. FISCHER:  Yes, Your Honor.

19        THE COURT:  All right.  May we vacate the trial date?

20        MR. PEARSON:  Yes, Your Honor, and if I could just

21   make one more record for the Court, Mr. Saintillus said twice

22   that he was pleading guilty out of necessity.  It's my

23   understanding from the context of what he was saying is that he

24   was indicating that he wished to plead nolo contendere, but

25   because the Court was not going to consent to that plea, that

1    he was pleading guilty instead.

2           I just want to make clear that he also indicated that

3    he understands he's not being forced to plead guilty.  That if

4    he doesn't want to plead guilty, if he wants to persist in the

5    not guilty plea, we could proceed to trial.  I would just ask

6    the Court to inquire and make sure that's accurate, though.

7           THE COURT:  Well, that's the Government's report.  The

8    Government is creating its record, but my understanding is you

9    do not wish to proceed to trial, correct, Mr. Saintillus?

10          THE DEFENDANT:  I wanted to plead no contest.

11          THE COURT:  I understand that, but you have -- you've

12   plead guilty and that means we -- I'm going to take the trial

13   date off the calendar.  You understand that that's the

14   consequence of my accepting your pleas of guilty, correct?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  You're not requesting that I

17   maintain the trial date?

18          THE DEFENDANT:  No.

19          THE COURT:  All right.  Do you understand my question?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  So my understanding is

22   Mr. Saintillus is not requesting that I maintain the trial

23   date; that his not guilty [sic] pleas are recorded.

24          I find that he knowing and voluntarily proceeded with

25   the not guilty [sic] pleas with the understanding the Court was

1  not prepared in the exercise of its discretion to accept nolo

2  pleas.

3  Anything else to say, Mr. Fischer?

4  MR. FISCHER:  I think you meant to say "guilty" not

5  "not guilty" just now.

6  THE COURT:  Did I say "not guilty"?

7  Yes, I proceeded to accept guilty pleas and did not

8  exercise my discretion to accept nolo pleas.  Thank you for

9  that correction.

10  Anything else?

11  MR. FISCHER:  No, thank you.

12  THE COURT:  All right.  We'll see you at sentencing,

13  then.

14  MR. PEARSON:  Thank you.

15  MR. FISCHER:  Court is in recess.

16  (Proceedings adjourned at 10:33 a.m.)

17

18  C E R T I F I C A T E

19

20  I certify that the foregoing is a true and correct

21  transcript of the proceedings in the above-entitled matter.

22

23

24  MARYANN VALENOTI, RMR, CRR          July 26, 2023
    Official Court Reporter             DATE

25  CA CSR #11266

MARYANN VALENOTI - U.S. DISTRICT COURT - (916)930-4275