DAVID D. FISCHER, SBN 224900
LAW OFFICES OF DAVID D. FISCHER, APC
5701 Lonetree Blvd., Suite 312
Rocklin, CA 95765
Telephone: (916) 447-8600
Fax: (916) 930-6482
E-Mail: david.fischer@fischerlawoffice.com

Attorney for Defendant
CHALONER SAINTILLUS

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHALONER SAINTILLUS

Defendant.

Case No.: 2:20-CR-00213 KJM

**DEFENDANT'S SENTENCING MEMORANDUM**

**Date: August 28, 2023**
**Time: 9:00 a.m.**
**Judge: Hon. Kimberly J. Mueller**

## MEMORANDUM OF POINTS AND AUTHORTIES

## I. PRELIMINARY STATEMENT

Chaloner Saintillus stands before the Court having been convicted of multiple counts of distribution of a controlled substance after entering guilty pleas. The fundamental rule governing consideration for the district court in sentencing is known as the "parsimony principle"; it is the directive of Congress that the district court "shall impose a sentence sufficient, *but not greater than necessary*, to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." Dean v. United States, 137 S.Ct. 1170, 1175 (2017) (emphasis added); 18 U.S.C. § 3553(a); Pepper v. U.S. 562 U.S. 476, 491 (2011) ("sentencing

judge's overarching duty under § 3553(a) [is to] to impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)"); Kimbrough v. U.S., 552 U.S. 85, 111 (2007) (district court "may determine...that in the particular case a within Guidelines sentence is 'greater than necessary" to serve the objectives of sentencing"; here district court's below guideline sentence in drug case not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals" of sentencing"); U.S. v. Carty 520 F.3d 984 (9th Cir. 2008) (en banc) (this principle is the "overarching statutory charge.

Further, in Pepper v. U.S. 131 S.Ct. 1229, 1240 (2011), the Court emphasized the need for individualized sentencing, reiterating "the principle that 'the punishment should fit the offender and not merely the crime.'" (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); see Miller v. Alabama, 567 U.S. 460, 470 (2012) ("punishment for crime should be graduated and proportioned to both the offender and the offense").

In U.S. v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory. The other factors set forth in 18 U.S.C. § 3553 (a) must also be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Booker*, 125 S.Ct. at 764; see *Gall v. U.S.*, 552 U.S. 38

(2007); Kimbrough v. U.S., 552 U.S. 85 (2007); *see* Beckles v. U.S., 137 S.Ct. 886 (2017) ("Although the Guidelines remain "the starting point and the initial benchmark" for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court "must make an individualized assessment based on the facts presented" and the other statutory factors…The Guidelines thus continue to guide district courts in exercising their discretion by serving as "the framework for sentencing… but they "do not constrain th[at] discretion." ).

It is true that federal courts understand that they "'*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" *Molina-Martinez v. U.S.*, 136 S.Ct. 1338, 1345 (2016). And it is true that the Guidelines are "the framework for sentencing" and "anchor ... the district court's discretion." *Id.* Nevertheless, the district judge "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." Gall v. U.S., 552 U.S. 38, 39 (2007); see Nelson v. U.S., 129 S.Ct. 890, 891 (2009) (per curiam) (guidelines are "not to be presumed reasonable."**)**; Peugh v. U.S., 133 S.Ct. 2072, 2080 (2013) ("The court may not presume that the Guidelines range is reasonable"). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (guidelines not presumed reasonable). Finally, remind the court that the guidelines "do not constrain the discretion [of the district court] to impose a sentence within statutory limits," Beckles v. U.S., 137 S.Ct. 886 (2017).

"Sentencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime." U.S. v. Harris, 679 F.3d 1179, 1183 (9th Cir. 2012). *Pepper*, *Booker*, *Gall*, and *Kimbrough* "empowered district courts, not appellate courts . . . . [and have] breathe[d] life into the authority of district court judges to engage in individualized sentencing." U.S. v. Whitehead, 532 F.3d 991 (9th Cir. 2008); U.S. v. Vonner, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("The sentencing court must not be "so appalled by the offense that it los[es] sight of the offender" and "the record [must]

reflect the required consideration of "the history and characteristics of the defendant," 18 U.S.C. § 3553(a) (1).

Because the guidelines are not binding, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.'" U.S. v. Ranum 353 F.Supp.2d 984, 987 (E.D.Wis.,2005); U.S. v. Menyweather, 447 F.3d 625, 634 (9th Cir. 2006) (9th Cir. 2006)("In the 'broader appraisal,' available to district courts after *Booker,* courts can now ··· have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities."); U.S. v. Williams, 435 F.3d 1350 (11th Cir. 2006) ("After *Booker*, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable."); U.S. v. Castro-Suarez, 425 F.3d 430, 436 (7th Cir. 2005) (a non-guideline sentence need not be supported by unusual circumstances, as a pre-*Booker* departure would; rather, all that is necessary "is an adequate statement of the judge's reasons, consistent with § 3553(a), for thinking the sentence is appropriate for the particular defendant"). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." U.S. v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir.2005); U.S. v. Gorsuch, 404 F.3d 543, 548 (1st Cir. 2005) ("in the post- *Booker* world, the sentencing guidelines are only advisory and the district court may justify a sentence below the guideline level based upon a broader appraisal"); U.S. v. Ortiz 502 F.Supp.2d 712, 715 -716 (N.D. Ohio 2007) (in light of *Rita*, "it is clear that the district courts have tremendous sentencing discretion")

While the court must consider the advisory guidelines initially, no special weight is to be given to them as opposed to the other factors mentioned in the statute. *See* Kimbrough, 552 U.S. 85; *Gall*, 552 U.S. 38 (2007); U.S. v. Amezcua-Vasquez,** 567 F.3d 1050 (9th Cir. 2009) (defendant's 52-month within guideline sentence for an illegal

re-entry after deportation and enhanced by an aggravated felony was substantively unreasonable where defendant had been in this country for almost 60 years, and had become a permanent resident in 1957); U.S. v. Carter (7th Cir. 2008) 530 F.3d 565 ("The guidelines are but one factor among those listed in 18 U.S.C. § 3553(a), and regardless of whether courts have previously recognized public service as a ground for departure from the Guidelines**,** sentencing courts are charged with considering as part of the § 3553(a) factors "the history and characteristics of the defendant," which would include a defendant's public service. § 3553(a) (1)); U.S. v. Carty 520 F.3d 984 (9th Cir. 2008) (*en banc*) ("Nor should the Guidelines factor be given more or less weight than any other. While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence."); U.S. v. Sachsenmaier 491 F.3d 680 (7th Cir. 2007) (post-*Rita*, 2007) ("The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence**.**"); U.S. v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007) ("A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step in the direction of returning to the pre-*Booker* regime."); U.S. v. McBride 434 F.3d 470 (6th Cir. 2006) ("while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant."); U.S. v. Winters, 416 F.3d 856, 860-61 (8th Cir. 2005) ( "[t]he Guidelines range is merely one factor," and any possible sentencing disparity resulting from an outside-Guidelines sentence must not be isolated "to the exclusion of all the other § 3553(a) factors"); U.S. v. Webb, 403 F.3d 373, 385 n. 9 (6th Cir. 2005) ( "[w]hile we decline to indicate what weight the district courts must give to the appropriate Guidelines range, or any other Section 3553(a) factor, we also decline to hold that a sentence within a proper Guidelines range is per-se reasonable. Such a per-se test ... would effectively re-institute mandatory adherence to the Guidelines."")

The district court may impose a below guideline sentence simply because it disagrees with the policy decisions underlying a specific guideline. See *Peugh v. U.S.*, 569 U.S. 530, 552, 133 S.Ct. 2072, 2089 (2013) (Thomas J., dissenting) ("A district court may freely depart from the range recommended by the Guidelines based not only on "an individualized determination that [the Guidelines] yield an excessive sentence in a particular case," but also based on "policy disagreement" with the Guidelines themselves.'"); *Spears v. United States,* 555 U.S. 261, 264 (2009) (when Sentencing Commission fails to fulfill its institutional role district court can vary from guidelines "based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case"); *Pepper v. U.S.,* 562 U.S. 476, 490, 131 S.Ct. 1229 (2011)("[O]ur post- *Booker* decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views…(particularly here in the case of post-sentencing rehabilitation when "the Commission's views [forbidding a departure on this ground] rest on wholly unconvincing policy rationales not reflected in the sentencing statutes Congress enacted."); Spears v. U.S., 555 U.S. 261, 129 S. Ct. 840 (2009) (when the Commission fails to fulfill its institutional role, a district court can vary from the guidelines "based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case" so, here, where defendant convicted of conspiracy to distribute at least 50 grams of crack and where guideline range 324-405 months, district court's below guideline sentence to 240 months proper because district court did not abuse its discretion in refusing to follow the 100-to-1 ratio in the guidelines, and using instead a 20-1 ratio based on policy disagreement with the guideline-Eight Circuit reversed-- the "only fact necessary to justify such a variance is the sentencing court's view that the 100-to-1 ratio creates an unwarranted disparity."); Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," *Kimbrough* 128 S. Ct. at 570, and when they do, the courts of appeals may not "grant greater fact-finding

leeway to [the Commission] than to [the] district judge." *Rita v. U.S.* 551 U.S. 338 (2007); *U.S. v. Mitchell*, 624 F.3d 1023, 1030 (9th Cir. 2010) ("As the Supreme Court through *Booker*, *Kimbrough*, and *Spears* has instructed, and as other circuits that have confronted the crack/powder variance in the sentence of a career offender have accepted and clarified in their circuit law, sentencing judges can reject *any* Sentencing Guideline provided the sentence imposed is reasonable"); *U.S. v. Pape* 601 F.3d 743, 749 (7th Cir. 2010) ("As we have recently explained, more broadly, '[w]e understand *Kimbrough* and *Spears* to mean that district judges are at liberty to reject *any* Guideline on policy grounds-though they must act reasonably when using that power.'").

## II. THE DRUGS QUANTITY OVERSTATES THE DEFENDANT'S CULPABILITY BECAUSE THE DRUGS WERE DISTRIBUTED OVER A LENGTHY PERIOD OF TIME

The defense has argued in its formal objections that the guidelines should be based on a total offense level of 16 and a CHC OF III based on 6 points, and that the guideline imprisonment range should be 27-33 months. This guideline corresponds to the drug quantity the defendant was charged with and that he entered a guilty plea to. This amount of time corresponds to the same amount of time the defendant has been in custody; accordingly, the defendant is not arguing for less time. The guidelines calculation probation has determined is based on alleged conduct that the defendant did not agree to, and it is based on estimates, and no other evidence.

Even if the Court agrees with probation that the guidelines are higher, they overstate the defendant's culpability because the drugs the government claims are relevant conduct were distributed over a period of time. "Because the guidelines do not consider the relationship between the length of the distribution period and the quantity distributed, court may depart downward where total quantity was distributed over substantial period of time", U.S. v. Genao, 831 F.Supp. 246 (S.D.N.Y. 1993) aff'd in part, U.S. v. Lara, 47 F.3d 60, 66 (2d Cir. 1995) (same at least for offense levels over 36).

**III. THE DEFENDANT'S CRIMINAL HISTORY OVERSTATED BECAUSE DEFENDANT NOT PREVIOUSLY INCARCERATED FOR A SUBSTANTIAL TIME.**

Here, the defendant has never served a significant sentence. It appears he has never served more than 40 days in custody for any offense. In U.S. v. Santoya, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (a drug conspiracy case where defendant career offender, below guideline sentence imposed where "imposition of guideline sentence...would have resulted in a defendant who had not previously spent more than about a year in prison receiving a sentence more than fifteen times that long...an increase of such a magnitude was greater than necessary" and where "the sentencing commission has acknowledged that when career offender status is based on relatively minor drug offenses, the guidelines may create a sentence greater than necessary"); U.S. v. Collington, 461 F.3d 805 (6th Cir. 2006) (in drugs and gun case where guidelines 188 - 235, sentence of 120 months affirmed in part because "the district court found that, despite Collington's criminal history being at a IV, Collington has never been in custody for any substantial period of time," having only been imprisoned for seven months before this crime.").

Here, based on the lack of any significant prior custodial sentence, his criminal history category is overstated.

**IV. CONCLUSION**

The defendant has been in custody since October 28, 2020 in this case. It took approximately 4 months to transport him to Florida to the Eastern District of California. During that 4-month period, he effectively went without representation waiting to get from one place to the other, and he spent months locked-down under COVID-19 quarantine conditions, not knowing what was in store for him. He has been severely punished for the conduct he has entered guilty pleas to in this case. A continued period of incarceration is not warranted and unnecessary for someone who has a lack of prior significant criminal history. For those reasons, the defendant respectfully requests the

court to impose a term of imprisonment of time-served, and to impose a period of supervised release for 3 years.

DATED: August 21, 2023

Respectfully submitted,

*/S/ David D. Fischer*
DAVID D. FISCHER
Attorney for Defendant
CHALONER SAINTILLUS