PHILLIP A. TALBERT
United States Attorney
SAM STEFANKI
ROSS PEARSON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00213-KJM |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | DATE: August 28, 2023<br>TIME: 9:00 a.m. |
| CHALONER SAINTILLUS, | COURT: Hon. Kimberly J. Mueller |
| Defendant. | |

    The United States of America (the "government") recommends that the Court sentence defendant Chaloner Saintillus to 168 months of imprisonment, followed by three years of supervised release. Saintillus distributed significant amounts of fentanyl, opioids, heroin, and other dangerous narcotics on the dark web. He consummated over a thousand illegal drug sales during a relatively short period, using the United States Postal Service to send dangerous and addictive narcotics across the country. Federal agents seized indicia of drug dealing, cryptocurrency, a firearm, and thousands of rounds of ammunition from his room. Saintillus is an obstreperous and unrepentant person who refuses to accept responsibility for his actions. His criminal history is replete with arrests and convictions for drug crimes. A sentence at the high end of the range established by the United States Sentencing Commission Guidelines Manual ("U.S.S.G." or the "Guidelines") would satisfy the federal sentencing criteria by accounting for the nature and circumstances of Saintillus's offense, his history and characteristics, and the importance of deterring Saintillus from future criminal conduct. *See* 18 U.S.C. § 3553(a).

## I. PROCEDURAL BACKGROUND

Saintillus pleaded guilty in April to twelve counts of a superseding indictment charging him with distributing controlled substances such as heroin, oxycodone, and fentanyl, in violation of 21 U.S.C. § 841(a)(1).  *See* Mins., ECF No. 214.  He initially attempted to plead *nolo contendere* before the Court made clear that it would not accept such a plea.  Mins., ECF No. 214.  He subsequently filed and then rescinded a motion to withdraw his guilty pleas.  Mot. to Withdraw Guilty Pleas, ECF No. 219; Not. of Withdrawal of Mot. to Withdraw Guilty Pleas, ECF No. 220.  Based on Saintillus's prolific drug-dealing as "chlnsaint," the Presentence Investigation Report (the "PSR") calculated his guideline sentencing range to be between 135 and 168 months.  PSR ¶ 86, ECF No. 227.  The assigned probation officer recommended that the Court sentence Saintillus to 150 months of imprisonment based on "the breadth of the defendant's drug distribution operation," his "length criminal history of drug-related offenses," and the fact that he "has not been deterred from engaging in such criminal conduct."  Sentencing Recommendation 2, ECF No. 227-1.

Saintillus filed formal objections to the PSR, and the government filed a response setting forth why each of Saintillus's objections is meritless.  The government also requested an evidentiary hearing to present witness testimony demonstrating why the Court should overrule Saintillus's objections.  The government agrees with the PSR's Guidelines calculations and statements of material fact.

## II. GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court sentence Saintillus to 168 months of imprisonment, followed by three years of supervised release.  Such a sentence would achieve the purposes of federal sentencing by accounting for Saintillus's criminal conduct in this case, the lack of any mitigating factors, and the need to protect the public.

### A. The Nature and Circumstances of Saintillus's Offense Were Serious.

A 168-month sentence is merited in this case because the nature and circumstances of Saintillus's offense demonstrate that he was a large-scale drug trafficker.  *See* 18 U.S.C. § 3553(a)(1).

Saintillus operated successful and prolific dark web vendor accounts that sold large amounts of dangerously addictive controlled substances.  PSR ¶ 6.  Saintillus offered heroin, fentanyl, oxycodone, oxymorphone, Alprazolam, Adderall, morphine, cocaine, and other drugs for sale to anyone with an

internet connection and a computer running the Tor browser. PSR ¶¶ 10, 13. He ran a prolific drug distribution operation responsible for a high volume of sales and satisfied customers. PSR ¶ 6 (noting that Saintillus consummated over 1,000 sales during one-year period with customer satisfaction rate of 98%); Sentencing Recommendation 2 (noting "the breadth of the defendant's drug distribution operation").

Clearly, Saintillus's offense conduct merits a sentence at the high end of the guideline range based on the scale of his trafficking operation. But Saintillus's offense conduct was dangerous in more than just its size, because the particular drugs he sold are extremely addictive and harmful in their own right. Heroin is one of the most addictive substances on the planet and contributes significantly to our country's opioid epidemic. *Opioids*, Ctrs. for Disease Control & Prevention (May 23, 2022), https://www.cdc.gov/opioids/basics/heroin.html. Overdose deaths involving the very drugs that Saintillus distributed increased by ten times since the 1990s. *The Drug Overdose Epidemic: Behind the Numbers*, Ctrs. for Disease Control & Prevention (Aug. 8, 2023), https://www.cdc.gov/opioids/data/index.html. Fentanyl, which was involved in eight of the twelve controlled purchases underpinning the superseding indictment in this case, is 50 times stronger than heroin and 100 time stronger than morphine—it contributes significantly to the country's overdose epidemic. *The Facts About Fentanyl*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/stopoverdose/fentanyl/pdf/Fentanyl_Fact_Sheet_508c.pdf (last visited Aug. 23, 2023). Even more concerning is that Saintillus distributed adulterated drugs containing fentanyl to customers who did not know that they were buying such a powerful opioid. *See* PSR ¶ 10 (listing controlled purchases for Counts Two and Three as containing heroin laced with fentanyl). The nature of Saintillus's offense is serious, it should not be understated, and he deserves a high-end sentence for it.

The manner in which Saintillus distributed the drugs he sold also underscores the seriousness of his offense conduct. Saintillus's dark web operation put innocent people in danger because he made postal workers his unwitting accomplices. PSR ¶¶ 7 ("Saintillus mailed each of the controlled purchases from self-service kiosks ('SSKs') at a post office in Delray Beach, Florida."), 9 (describing how agents surveilled Saintillus mailing package of fentanyl from Delray Beach post office). Saintillus's use of the mail to make money selling drugs anonymously expanded the scope of the harm and risk that he created

to include innocent parties who did not choose to involve themselves in the narcotics trade.  *See* PSR ¶ 7 (describing how Saintillus distributed drugs through mail).

Finally, the presence of firearms and thousands of ammunition rounds aggravates Saintillus's offense conduct.  The fact that Saintillus possessed a firearm and large amounts of ammunition inside the same residence where he ran his trafficking operation shows that he understood the dangers inherent in narcotics dealing on the scale in which he engaged in it.  PSR ¶ 11; *see also* U.S.S.G. § 2D1.1 cmt. n.11(a) (U.S. Sent'g Comm'n 2021) ("The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons.").  Rather than choose to minimize the risk he was causing by ceasing his drug-dealing, Saintillus decided to create "additional risk of harm due to the presence of a firearm and ammunition."  Sentencing Recommendation 2.

### B. Saintillus's History and Characteristics Do Not Mitigate His Conduct.

Saintillus's criminal history and personal characteristics weigh in favor of a sentence of 168 months in prison.  *See* 18 U.S.C. § 3553(a)(1).

#### 1. Saintillus's Criminal Conduct Is Worsening.

The Court's sentence should send a message to Saintillus that his escalating criminal behavior must stop immediately.

His criminal history includes no less than seventeen convictions for various crimes, from infractions such as careless driving to felonies such as possessing controlled substances.  *See* PSR ¶¶ 35–51.  While it is true that Saintillus's criminal history contains no convictions that earn more than one criminal history point, the sheer number of his convictions indicates that he refuses to conform his conduct with the law.  *See* PSR ¶¶ 35–51.  Saintillus's criminal history underscores that he does not respect the law or believe that it applies to him, so the Court's sentence must be significant enough to make Saintillus finally understand that his criminal actions have consequences.

Furthermore, Saintillus's criminal history is escalating in severity.  *See* Sentencing Recommendation 2 (noting that Saintillus's "behavior began to escalate with noted incidents of noncompliance in court and during arrest (2013), and in contacts with officers (2016 and 2020)").  His criminal history also indicates that he is a risk to the public due not only to his drug dealing but also his firearm use.  That he previously threatened his own mother with a gun only underscores that Saintillus is

a dangerous person who needs to be incapacitated for a significant period of time. *See* Sentencing Recommendation 2 (describing "a recently documented incident in 2020 between the defendant and his mother in which the defendant's mother told officers he pointed a handgun at her and said he could shoot her"). Saintillus's criminal history shows that it was only a matter of time until he engaged in serious criminal conduct that merits the sentence the government now requests.

### 2. Nothing in His Past or Present Mitigates Saintillus's Conduct.

Unlike many drug cases, there are no mitigating personal, familial, economic, or other circumstances in Saintillus's case that weigh in favor of anything less than a sentence of 168 months. In other words, Saintillus has no excuse for what he did.

Saintillus had a good upbringing, the chance to attend college, "no known mental health history or diagnosis," and no substance abuse issues. Sentencing Recommendation 1. His only apparent motivation for selling drugs on the dark web was greed. Sentencing Recommendation 1 (noting that Saintillus's motivation for committing his crime was "so that he could make a profit to support himself"). Even in his written statements to the Court, Saintillus presents no reason for a sentence outside the guideline range. *See* PSR 30. The probation officer cannot find any such reason either. *See* Sentencing Recommendation 2 ("There are no identified factors that warrant a variance . . . ."). Accordingly, the Court should sentence Saintillus at the high end of that range of 168 months because there is nothing in Saintillus's past that excuses what he did by selling drugs on the dark web.

### 3. Saintillus's Lack of Contrition Supports a 168-Month Sentence.

Saintillus clearly does not believe that he did anything wrong by selling illegal drugs thousands of times on the dark web, and this lack of insight into the criminality of his conduct merits a significant sentence.

The PSR, Saintillus's statements to and behavior before the Court, and his numerous handwritten filings make plain that Saintillus will never accept that he is culpable for distributing drugs. *See* PSR ¶ 17 ("'I stand on the fact I plead No-Contest.'"); *United States v. Nguyen*, 465 F.3d 1128, 1130 (9th Cir. 2006) (noting that plea of *nolo contendere* "is, first and foremost, not an admission of factual guilt"). When asked about his offense during his presentence interview with the assigned probation officer, Saintillus insinuated that his crimes are not serious ("'These crimes are Commercial Crimes. .

.'"), and reminded the Court that he views it as a "'fictitious foreign state court'" that has no jurisdiction over him.  PSR ¶ 17.  He did not admit that he was wrong to put people in danger by selling them fentanyl and other opioids.  PSR ¶ 17.  He refuses to accept or understand the seriousness of the crimes of which he now stands convicted, and his stubbornness in this regard merits a sentence at the high end of the PSR's Guidelines calculation.

### C. A 168-Month Sentence Would Deter Saintillus and Other Dark Web Operators From Future Criminal Conduct.

The Court's sentence needs to be significant enough to deter Saintillus and others like him from committing future crimes.  *See* 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C).

Saintillus's obstreperous behavior throughout this case, his escalating criminal history, and his refusal to accept responsibility for his conduct all indicate that he presents a serious risk of reoffending when he is released from custody.  *See* PSR ¶¶ 35–51 (setting forth Saintillus's numerous convictions); Order 2–6, ECF No. 122 (recounting Saintillus's disrespectful and disruptive behavior from date of arrest).  The best tool that the Court has to protect the public from Saintillus is to incapacitate him in custody for a long period of time.  *See* 18 U.S.C. § 3553(a)(2)(C) (requiring sentencing courts to consider how sentences will "protect the public from further crimes of the defendant").  A 168-month sentence would do just that.

The government's requested sentence would also have a desired general deterrent effect.  *See* 18 U.S.C. § 3553(a)(2)(B) (requiring sentencing courts to consider need for sentence to "afford adequate deterrence to criminal conduct").  Criminals who operate on the dark web use various internet forums and bulletin boards to track prosecutions of their cohorts and correspond about how to avoid law enforcement detection.  *See, e.g.*, *Fentanyl Vendor Who Used Abbreviation of Real Name Pleads Guilty*, DarknetOne (Apr. 11, 2023), https://darknetone.com/fentanyl-vendor-who-used-abbreviation-of-real-name-pleads-guilty/ (reporting on Saintillus's guilty pleas and reproducing user post from popular dark web bulletin board advising others to avoid doing business with "chlnsaint" following arrest because that account was likely "an LE setup").  Hence, the Court should impose a serious sentence on Saintillus to send the message to other dark web criminals following this case that distributing narcotics using the internet is treated just as seriously as criminal conduct taking place on the streets.  The Court's sentence

of Saintillus could have a positive deterrent effect on other individuals if it is long enough, and 168 months would meet this test and deter others from selling drugs on the dark web as Saintillus did.

### III. CONCLUSION

The government recommends that the Court sentence Chaloner Saintillus to a term of imprisonment of 168 months, followed by 3 years of supervised release. Such a sentence would account for the large scale of his narcotics trafficking operation, the lack of any remorse on his part or mitigating circumstances, and the need to protect the public from his criminal conduct.

Dated: August 24, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ SAM STEFANKI
SAM STEFANKI
ROSS PEARSON
Assistant United States Attorneys